## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RISE BAUSCH AND JOSEPH BAUSCH,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION No. 1:07-cv-01362 RJL** |
| ) | |
| **vs.** ) | |
| ) | |
| ) | |
| **ELI LILLY AND COMPANY, ET AL.,** ) | |
| ) | |
| ) | |
| **Defendants**. ) | |
| ) | |

### DEFENDANT ELI LILLY AND COMPANY'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER TO THE EASTERN DISTRICT OF NEW YORK

Lilly hereby supplements its Memorandum in Opposition to Plaintiffs' Motion to Transfer to the Eastern District of New York ("Opposition"). This supplement is filed with consent from Plaintiffs' counsel and in response to receipt of plaintiffs' discovery responses which impacts the arguments made in Lilly's original opposition. For the reasons set forth below, Lilly respectfully withdraws its argument made in Section Two of its Opposition to plaintiff's Motion to Transfer to the Eastern District of New York and supplements its arguments in the remaining sections of its opposition.

The information contained within plaintiffs' discovery responses renders moot Lilly's arguments in Section II of its Opposition regarding the prematurity of plaintiffs' Motion to Transfer. This argument was based upon the fact that Lilly had not yet received plaintiffs' discovery responses. Accordingly, Lilly respectfully withdraws its arguments in Section II of its Opposition.

143599v2

However, plaintiffs' discovery responses strengthen Lilly's remaining arguments in its Opposition. Plaintiffs' responses support Lilly's arguments that 1) plaintiffs have indeed engaged in improper forum shopping by filing this case – which has no connection to the District of Columbia – in the District of Columbia and then seeking to transfer it and 2) plaintiffs' motion to transfer should be denied because this case has no more substantial connection to New York than it does to a number of other states. Accordingly, the Court should deny plaintiffs' Motion to Transfer to the Eastern District of New York.

## I.    <u>INFORMATION FROM PLAINTIFFS' DISCOVERY RESPONSES</u>

Plaintiffs' discovery responses provide the following pertinent information:

| | |
|---|---|
| New York | Plaintiff Rise Bausch's place of birth (DOB: 06/08/54) |
| | Plaintiff Rise Bausch's mother's residence during her pregnancy with Rise Bausch and location where she allegedly purchased and ingested DES |
| | Location of physician who allegedly prescribed DES to plaintiff Rise Bausch's mother |
| | Location of pharmacist who allegedly prescribed DES to plaintiff Rise Bausch's mother |
| New Jersey | Plaintiff Joseph Bausch's place of birth |
| | Plaintiff Rise Bausch's residence from 1962-1981 and 1982-1987 |
| | Plaintiff Rise Bausch received treatment from a physician here for injuries allegedly suffered as a result of ingestion of DES |
| Florida | Plaintiff Rise Bausch's residence from 1981-1982 |
| | Plaintiff Rise Bausch received treatment from a physician here for injuries allegedly suffered as a result of ingestion of DES |
| | Location of Plaintiff Rise Bausch's three siblings |

2

| | |
|---|---|
| Utah | Plaintiffs' residence from 1987-Present |
| | Location of Plaintiffs' marriage |
| | Plaintiff Rise Bausch received treatment from a physician here for injuries allegedly suffered as a result of ingestion of DES |

**Exhibit 1**, Plaintiffs' Responses to Defendants' Amended Uniform Preliminary Request for Information, Response Nos. 1, 4, 5, 12, 25, 26, 28, 31, 47, 51; Plaintiffs' Supplemental Answers to Interrogatories by Defendant Eli Lily and Company, Response No. 19.

Plaintiffs' discovery responses state that both of plaintiff Rise Bausch's parents are deceased. Exhibit 1, Response No. 3. Accordingly, the only potential witnesses located in New York would be plaintiff's mother's prescribing physician and the pharmacist at the pharmacy from which plaintiff's mother's prescription for DES was allegedly filled. *See*, Exhibit 1, Response Nos. 5 and 12. However, given that Rise Bausch was born in 1954, there is a reasonable likelihood that these witnesses may be deceased.

## II.    PLAINTIFFS' CHOICES OF FORUM ARE ENTITLED TO LITTLE DEFERENCE.

Plaintiffs' discovery responses confirm one fact very clearly: this case has no connection to the District of Columbia. Certainly plaintiffs' counsel knew very well when this case was filed that there was no connection to this jurisdiction and that it was likely that plaintiffs would ultimately move to transfer this case once it was removed to federal court. Their actions have wasted the Court's and the defendants' time and resources.

Courts do not condone the actions of plaintiffs who initially file suit in one jurisdiction, only to move to transfer to yet another jurisdiction. *See* Opposition, at Section I (citing *Tiffany v. Hometown Buffet, Inc.*, 2006 WL 2792868, *2 (N.D. Cal. Sept. 28, 2006)). In fact, courts frequently award costs against plaintiffs who file suits in jurisdictions with no connection to their cases. *See Laine v. Morton Thiokol, Inc.*, 124 F.R.D. 625, 627-28 (N.D. Ill.

1989) (The court held that plaintiff's counsel's conduct of filing the complaint in a jurisdiction where none of the events giving rise to the cause of action occurred was exactly the type of conduct 28 U.S.C. § 1927 sought to remedy or prevent.  It noted that plaintiff's conduct evidenced "forum-shopping with a vengeance, and it ought to be discouraged with all the vigor at a court's disposal."); *Simeone v. First Bank Nat'l Ass'n.*, 971 F.2d 103, 108 (8th Cir. 1992); *In re: North Am. Oil & Gas, Co.,* 130 B.R. 482, (Bankr. W.D. Tex. 1991).

This is not plaintiffs' counsel's first DES case nor is it the first that they have sought to transfer after filing in the District of Columbia knowing that there was no connection to this jurisdiction.  Plaintiffs' counsel has a long history of engaging in this tactic.  In fact, not one of the DES cases filed by plaintiffs' counsel and defended by the undersigned since 2005 has involved a resident of the District of Columbia.  As of September 2007, eighteen such cases have been transferred out of the District of Columbia and not one of Lilly's motions to transfer have been denied.[1]  Plaintiffs' counsel's continued blatant forum shopping should be halted.

Plaintiffs' counsel's contention at the November 5, 2007, status conference in this case that this case has connections to the District of Columbia because of Lilly's government contacts is without merit and has been solidly rejected by District of Columbia courts.  *See In re AT&T Access Charge Litig.,* Civil Action No. 05-1360, 2005 WL 3274561, *3 (D.D.C. Nov. 16,

---

[1]    *See*, *e.g.*, *Awwad v. Eli Lilly and Company*, Civil Action No. 05-0605 (D.D.C. May 2, 2006) (Urbina, J.) (transferred to Texas); *Corbett v. Eli Lilly and Company*, Civil Action No. 05-1584  (D.D.C. June 6, 2006) (Robertson, J.); *Duseau v. Eli Lilly and Company*, Civil Action No. 05-1583 (D.D.C. March 22, 2006) (Kessler, J.) (transferred to Massachusetts); *Erickson v. Eli Lilly and Company*, Civil Action No. 05-2062 (D.D.C. April 18, 2006) (Walton, J.) (transferred to Massachusetts); *Sugrue v. Eli Lilly and Company*, Civil Action No. 06-0764 (D.D.C. October 10, 2006) (Kessler, J.) (transferred to Massachusetts); *Taliercio v. Eli Lilly and Company*, Civil Action No. 05-0339 (D.D.C. June 27, 2005) (Kessler, J.) (transferred to New Jersey); *Theriault v. Eli Lilly and Company*, Civil Action No. 05-1556 (D.D.C. May 1, 2006) (Collyer, J.) (transferred to Massachusetts).

2005) (Huvelle, J.) (to accept governmental contacts in D.C. as a basis for jurisdiction "would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action."), **Exhibit 2**; *DeLoach v. Philip Morris Co.,* 132 F. Supp. 2d 22 (D.D.C. 2000); *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C. Cir. 1993). This Court has specifically rejected the argument that FDA regulatory action regarding DES established a connection between DES lawsuits and the District of Columbia. *See, e.g., Thompson v. Eli Lilly and Company*, Civil Action No. 03-CV-00122 (D.D.C. June 27, 2003) (Walton, J.) ("[t]his Court is unconvinced that these contacts [to the District of Columbia], which have no direct connection to this case, favor maintaining this case in the District of Columbia."), **Exhibit 3**, at 5; *Abramson v. Eli Lilly and Company*, Civil Action No. 03-CV-2541 (D.D.C. Oct. 25, 2004) (Bates J.), **Exhibit 4**, at 4 n.6; *Dean v. Eli Lilly and Company,* Civil Action No. 06-1375 (D.D.C. June 1, 2007) (Sullivan, J.) (rejecting plaintiff's counsel's arguments that the District of Columbia's contacts were significant, stating, "courts have previously rejected these same contacts…"), **Exhibit 5**, at 5-6; *Lentz v. Eli Lilly and Company*, Civil Action No. 06-1374 (D.D.C. Dec. 18, 2006) (Huvelle, J.), **Exhibit 6**.

Filing this case in the District of Columbia knowing that there is no connection between this jurisdiction and the facts of this case then immediately seeking to transfer it to the Eastern District of New York upon removal is clearly improper forum shopping. Plaintiffs' counsel have demonstrated a course of conduct that wastes the Court's and Lilly's time and resources. Such forum shopping should no longer be condoned and this Court should deny plaintiffs' Motion to Transfer.

143599v2

III.    **TRANSFER TO THE EASTERN DISTRICT OF NEW YORK IS IMPROPER BECAUSE PLAINTIFFS' CASE INVOLVES CONTACTS WITH MANY DIFFERENT STATES**

Plaintiffs' discovery responses confirm that several states have contacts to this matter rendering no single state the most appropriate or obvious jurisdiction. *See* Opposition at Section III. This case involves contacts with many states other than New York, including New Jersey, Florida, and Utah. Moreover, it is likely that more witnesses will be available for trial in these other jurisdictions than in New York given that the witnesses located in New York may be deceased.[2] At least one of plaintiffs' treating physicians is located in New Jersey, Florida and Utah where the plaintiffs currently reside. A New York court will have no subpoena power over the majority of these witnesses. This is not simply a case where there are potentially two jurisdictions who have contacts with the case. There are four in this matter with no clear predominant jurisdiction. In terms of convenience for the witnesses in attending and testifying a trial, the majority of the witnesses will be inconvenienced no matter where this case proceeds.

Courts routinely deny motions to transfer a case when the conduct, injuries, and witnesses at issue are spread out over several states and no one state has the clearest connection to the case. *See*, *e.g.*, *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co., S.A.*, Civil Action No. 1:07-CV-337, 2007 WL 2461817, at *4 (E.D. Tex. Aug. 27, 2007), **Exhibit 7**; *Stevens v. General Motors Corp.*, Civil Action No. 6:06-CV-255, 2006 WL 3375381, at *2 (E.D. Tex. Nov. 21, 2006), **Exhibit 8**; *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 961 (N.D. Ill. 2006); *Tommy Bahama Group, Inc. v. The Walking Co.*, Civil Action No. 1:07-CV-1402, 2007 WL 3156254, at *2-4 (N.D. Ga. Oct. 19, 2007), **Exhibit 9**; *First Nat'l Bank v. El Camino*

---

[2]    Plaintiff Rise Bausch was born in 1954 which is 53 years ago and makes it extraordinarily unlikely that plaintiff's mother's prescribing physician and pharmacist are still alive.

143599v2

*Resources, Ltd.*, 447 F. Supp. 2d 902, 912-14 (N.D. Ill. 2006); *Juarez v. Nat'l R.R. Passenger Corp.*, Civil Action No. 06-CV-3681, 2007 WL 2713357, *2-4 (N.D. Ill. Sept. 12, 2007), **Exhibit 10**; *FC Inv. Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 13-15 (D.D.C. 2006).

   Plaintiffs argue that the place of DES ingestion dictates in absolute terms where the case should be heard but the case law does not provide support for that position. Courts find that the place of the alleged wrong does not carry great weight in the balancing of the relevant case contacts when the other key events and witnesses relating to the claim occurred elsewhere. *Id.* In fact, courts routinely state that "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Pyrocap Intern. Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003). *See also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis.").

<u>CONCLUSION</u>

   This Court should deny plaintiffs' motion to transfer. First, plaintiffs' counsel's forum shopping should not be condoned. Second, there is not one key state to which the balance of relevant factors would support transfer. Accordingly, Lilly respectfully requests that the Court deny plaintiffs' motion to transfer this action to the Eastern District of New York.

         Respectfully submitted,

         SHOOK, HARDY & BACON, L.L.P

         /s/ John Chadwick Coots
         Michelle R. Mangrum, D.C. Bar No. 473634
         John Chadwick Coots, D.C. Bar No. 461979
         SHOOK, HARDY & BACON, L.L.P
         600 14TH Street, N.W., Suite 800
         Washington, D.C. 20005-2004
         Phone: (202) 783-8400; Fax: (202) 783-4211

         and

7

David W. Brooks
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Phone: (816) 474-6550; Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT**
**ELI LILLY AND COMPANY**

143599v2

## <u>CERTIFICATE OF SERVICE</u>

         I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 13th day of November, 2007, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron M. Levine & Associates
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiffs**

Janet K. Coleman
Daniel Whitney
Whitney & Bogris, LLP
401 Washington Avenue, 12th Floor
Towson, MD 21204
**Attorneys for GlaxoSmithKline,
and Mallinckrodt, Inc.**

Sidney G. Leech
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
**Attorneys for Bristol Myers Squibb
Company**

Elizabeth Ewert
Drinker Biddle & Reath, LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
**Attorneys for Merck & Company, Inc.,
Pharmacia and Upjohn Company and
Ortho-McNeil Pharmaceutical, Inc.**

Sarah Keast
Goodwin Proctor, LLP
901 New York Avenue, NW, Suite 900
Washington, D.C. 20001
**Attorneys for Premo Pharmaceutical
Laboratories, Inc.**

Kathleen M. Bustraan
Lord & Whip, P.A.
Charles Center South, 10th Floor
36 South Charles Street
Baltimore, MD 21201-3020
**Attorney for Lannett Company, Inc.**

Jaime Luse
Tydings & Rosenberg, LLP
100 East Pratt Street, Suite 2600
Baltimore, MD 21202
**Attorneys for Elan Pharmaceuticals**

Jennifer G. Levy
Kirkland & Ellis, LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005-5793
**Attorneys for Abbott Laboratories, Inc.**

         /s/ John Chadwick Coots
         **ATTORNEY FOR DEFENDANT
         ELI LILLY AND COMPANY**

143599v2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RISE BAUSCH AND JOSEPH BAUSCH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | CIVIL ACTION No. 1:07-cv-01362 RJL |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| ELI LILLY AND COMPANY, ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AFFIDAVIT OF JOHN C. COOTS IN SUPPORT OF
DEFENDANT ELI LILLY AND COMPANY'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO TRANSFER TO THE EASTERN DISTRICT OF NEW YORK**

I, John C. Coots, being first sworn on oath, say that the following is true and correct:

1.    I am an attorney in the firm of Shook, Hardy & Bacon, LLP, counsel for defendant Eli Lilly and Company ("Lilly") in the above-captioned action.

2.    **Exhibit 1** is a true copy of plaintiffs' responses to Defendants' Amended Uniform Preliminary Request for Information, dated November 6, 2007.

3.    **Exhibit 2** is a true copy of *In re AT&T Access Charge Litig.,* Civil Action No. 05-CV-1360, 2005 WL 3274561, *3 (D.D.C. Nov. 16, 2005) (Huvelle, J.).

4.    **Exhibit 3** is a true copy of *Thompson v. Eli Lilly and Company,* Civil Action No. 03-CV-00122 (D.D.C. June 27, 2003) (Walton, J.).

5.    **Exhibit 4** is a true copy of *Abramson v. Eli Lilly and Company,* Civil Action No. 03-CV-2541 (D.D.C. Oct. 25, 2004) (Bates J.).

143632v2

6.      **Exhibit 5** is a true copy of *Dean v. Eli Lilly and Company,* Civil Action No. 06-1375 (D.D.C. June 1, 2007) (Sullivan, J.).

7.      **Exhibit 6** is a true copy of *Lentz v. Eli Lilly and Company*, Civil Action No. 06-1374 (D.D.C. December 18, 2006) (Huvelle, J.).

8.      **Exhibit 7** is a true copy of *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co., S.A.*, Civil Action No. 1:07-CV-337, 2007 WL 2461817, at *4 (E.D. Tex. Aug. 27, 2007).

9.      **Exhibit 8** is a true copy of *Stevens v. General Motors Corp.*, Civil Action No. 6:06-CV-255, 2006 WL 3375381, at *2 (E.D. Tex. Nov. 21, 2006).

10.     **Exhibit 9** is a true copy of *Tommy Bahama Group, Inc. v. The Walking Co.*, Civil Action No. 1:07-CV-1402, 2007 WL 3156254, at *2-4 (N.D. Ga. Oct. 19, 2007).

11.     **Exhibit 10** is a true copy of *Juarez v. Nat'l R.R. Passenger Corp.*, Civil Action No. 06-CV-3681, 2007 WL 2713357, *2-4 (N.D. Ill. Sept. 12, 2007).

Executed on November 13, 2007.

*John C. Coots*

John C. Coots

DISTRICT OF            )
                       )ss.
COLUMBIA               )


On this 13th day of November, 2007, before me, a notary public in and for said state, personally appeared John C. Coots, to me personally known, who being duly sworn, acknowledged that he had executed the foregoing instrument for purposes therein mentioned and set forth.

*Cherrell Y. Hinnant*

NOTARY PUBLIC

My Commission Expires:

Cherrell Y. Hinnant
Notary Public, District of Columbia
My Commission Expires 5/14/2011

2

143632v2

# Exhibit 1

To

## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RISE BAUSCH, et al., }<br><br>Plaintiffs, }<br><br>v. }<br><br>ELI LILLY AND COMPANY, et al., }<br><br>Defendants. } | Civil Action No. 07-1362 (RJL) |

## DEFENDANTS' AMENDED UNIFORM
## PRELIMINARY REQUEST FOR INFORMATION

I. GENERAL AS TO EACH PLAINTIFF

1.    State the full name, address, social security number and date and place of birth of each plaintiff.

**RESPONSE:**

RISE HARRIET BAUSCH
1030 Coyote Way
Dammeron Valley, UT 84783
SSN: 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
DOB: 6/8/1954
Place of Birth: Glen Cove, NY

JOSEPH F. BAUSCH
1030 Coyote Way
Dammeron Valley, UT 84783
SSN: 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
DOB: 12/30/1945
Place of Birth: Newark, NJ

2.    Identify each individual who the Complaint alleges was exposed to DES *in utero* (the "exposed person").

**RESPONSE:** The Complaint alleges that Plaintiff Rise Bausch was exposed to DES *in utero*.

1

3.    State separately the full name, current residential address, and social security number of the natural mother ("DES mother") and natural father of each exposed person. Identify any deceased parent, the date, place and cause of death.

**RESPONSE:** The exposed person's parents are deceased.  Plaintiff Rise Bausch's mother,

Beatrice Baumgarten (Social Security Number 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), died in Miami, Florida on January

24, 1980 of a myocardial infarction.  Plaintiff Rise Bausch's father, Leonard Baumgarten, died

on January 14, 2006 in Tampa, Florida of emphysema and diabetes.

4. State separately for each DES mother and exposed person all previous addresses, the dates and with whom each person resided at those addresses.

**RESPONSE:**

Regarding the Exposed Plaintiff:

| | |
|---|---|
| Birth-1962: | 135 Horn Lane, Levittown, NY; with parents |
| 1962-1969: | 13 Robin Lane, Oakland, NJ; with parents |
| 1970-1974: | Apartment building on Hinchman Avenue, Wayne, NJ; with parents |
| 1974-1977: | Valley Road, Wayne, NJ; with John Steinhauser |
| 1977-1980: | Off of Hamburg Turnpike, Wayne, NJ; with John Steinhauser |
| 1980-1981: | Clifton, NJ; alone |
| 1981-1982: | Farnham B, Century Village, Deerfield Beach, FL; alone |
| 1982-1987: | 232A Overmount Avenue, West Paterson, NJ; with Joseph Bausch |
| 1987-Present: | 1030 Coyote Way, Dammeron Valley, UT; with Joseph Bausch |

Regarding the DES Mother:

1954-1962:    135 Horn Lane, Levittown, NY; with Leonard Baumgarten, Anton Baumgarten, and Rise Bausch (then Baumgarten)

1962-1969:    13 Robin Lane, Oakland, NJ; with Leonard Baumgarten, Anton Baumgarten, and Rise Bausch (then Baumgarten)

2

1970-1971:    Apartment building on Hinchman Avenue, Wayne, NJ; ; with Leonard Baumgarten and Rise Bausch (then Baumgarten)

1971-1977:    Colfax Road, Wayne, NJ; with Leonard Baumgarten

1977-1980:    Farnham B, Century Village, Deefield Beach, FL; with Leonard Baumgarten.

II. AS TO ALLEGATIONS OF INGESTION

As to the DES ingested by or administered to the DES mother during her pregnancy with an exposed person:

5. State the name and last-known address of each pharmacy or other person or facility from which the DES was obtained. If obtained from a pharmacy, state the name of each pharmacist who sold or provided the DES.

**RESPONSE:** Plaintiff's mother purchased DES from a pharmacy in Levittown, NY.    The

particular pharmacy is unknown; investigations are continuing and Plaintiff reserves the right to

supplement this response as discovery progresses.

6. If the name of the specific pharmacy or other person or place who sold the DES is unknown, set forth the name and the last known address of each pharmacy or pharmacist with whom the person who purchased the DES dealt during the time period of the gestation of the exposed person.

**RESPONSE:** See response to Request No. 6.

7. Identify the source of the DES including, without limitation, the manufacturer or supplier. State the facts which form the basis of this knowledge and identify all documents upon which these facts are based.

**RESPONSE:** Product identification is still under investigation and has not been concluded.

Plaintiff reserves the right to supplement this response as discovery progresses.

8. State the trade and/or generic name of the DES administered to or ingested by the DES mother.

**RESPONSE:** Diethylstilbestrol.

3

9. Describe in detail the physical appearance of the DES administered to or ingested by the DES mother, including its form, shape, color, size, dosage and markings.

**RESPONSE:** At this time, the physical appearance of the DES administered to or ingested by

Plaintiff Rise Bausch's mother is unknown.  Plaintiff reserves the right to supplement this

response as discovery progresses.

10. Describe in detail the container and packaging in which the DES was contained, including the kind, shape, color and size.

**RESPONSE:** At this time, the container and packaging of the DES administered to or ingested

by Plaintiff Rise Bausch's mother is unknown.  Plaintiff reserves the right to supplement this

response as discovery progresses.

11. Describe any labeling affixed to the container or packaging holding the DES and the matter printed, written or typed thereon, including instructions for use, if any, and the locations and dates when any notations and writings were made thereon.

**RESPONSE:** At this time, the existence or content of labeling and/or any other printed

materials provided with the DES administered to or ingested by Plaintiff Rise Bausch's mother

are unknown.  Plaintiff reserves the right to supplement this response as discovery progresses.

12. State the name and last known address of each medical professional who treated, examined or otherwise rendered professional services to the DES mother during her pregnancy with the exposed person. Specify each professional who prescribed, administered and/or provided the DES.

**RESPONSE:** Plaintiff Rise Bausch's mother was treated by June H. Hagedorn, M.D., who also

prescribed DES to Ms. Baumgarten.  Dr. Hagedorn's last known work address is 86 Parkside Dr.

N., Levittown, NY 11756.

13. State how the DES mother obtained the DES, including whether she did so on the authorization of a physician's prescription. If so, identify the physician.

**RESPONSE:** Plaintiff Rise Bausch's mother obtained DES upon the prescription of June

Hagedorn, M.D.  Plaintiff reserves the right to supplement this response as discovery progresses.

4

14. If a prescription for DES was received, identify all words, numerals, symbols, notations and other markings appearing on the prescription.

**RESPONSE:** At this time, Plaintiff is unable to identify the words, numerals, symbols, notations, or other markings on the prescription for DES. Plaintiff reserves the right to supplement this response as discovery progresses.

15. State the dates on which (or, if unknown, the approximate period, week, month or trimester of the DES mother's pregnancy with the exposed person during which) the prescription was made.

**RESPONSE:** Early in pregnancy. Plaintiff reserves the right to supplement this response as discovery progresses.

16. State the complaints and purpose for which the drug was allegedly prescribed.

**RESPONSE:** DES was prescribed to Plaintiff Rise Bausch's mother for the prevention of miscarriage.

17. Describe the written or non-written instructions for use given by the prescribing practitioner on each prescription (written or otherwise) including the regimen to be followed. Identify the custodian(s) and location(s) of the instructions. If available, attach copies thereof.

**RESPONSE:** At this time, the instructions for use given by the prescribing physician on or with the prescription are unknown. Plaintiff reserves the right to supplement this response as discovery progresses.

18. Identify each prescribing practitioner who authorized any respective prescription to be refilled and the date of each authorization.

**RESPONSE:** See Plaintiffs' response to Requests Nos. 12 and 13.

19. State the number of times, and, if known, the dates on which (or, if unknown, the approximate period, week, month or trimester of the DES mother's pregnancy with the exposed person during which) each prescription was filled and / or refilled.

**RESPONSE:** See Plaintiff's response to Request No. 15.

20. State the dates on which (or, if unknown, the approximate period, week, month or trimester of the DES mother's pregnancy with the exposed person during which) the drug was ingested by or administered to the DES mother.

5

**RESPONSE:** Early in pregnancy. Plaintiff reserves the right to supplement this response as

discovery progresses.

21. State the name and last known address of each person who purchased or obtained the drug
for use by the DES mother.

**RESPONSE:** Plaintiff's mother, Beatrice Baumgarten (now deceased) purchased or obtained

her own DES.

22. State, both as to the prescription of DES, and the administration or ingestion of DES, the: (a)
dosage strength of each unit; (b) daily regimen; (c) means of administration; and (d) number of
days of ingestion.

**RESPONSE:** See Plaintiffs' Responses to Requests Nos. 9, 17, and 20.

23. State whether the regimen of DES taken by the DES mother was at any time changed from
that initially recommended by the prescribing practitioner. If so, state:

     (a) the name and last known address of the practitioner who prescribed the change

     (b) each date on which the change was carried out;

     (c) the amount and frequency of dosage on each date; and

     (d) the number of days of the changed regimen

**RESPONSE:** At this time, the exact nature of the DES regimen taken by Plaintiff Rise Bausch's

mother, including any changes, is unknown. Plaintiff reserves the right to supplement this

response as discovery progresses.

24. Identify all prescription drugs which the DES mother consumed or was administered during
her pregnancy with the exposed person. For each drug, identify: (a) the prescribing practitioner;
(b) his/her last known address; (c) the amount, frequency, duration and dates of such
prescription, consumption, and / or administration. Do not include in your answer that you
identified in response to preceding Requests.

**RESPONSE:** None, other than DES.

25. State the name and address of each hospital and the dates of each hospitalization for each
DES mother during her pregnancy with and resulting birth of an exposed person. Identify the
physician attending that birth and the hospital or other place where the birth occurred.

**RESPONSE:**

      a.     North Country Community Hospital, Glen Cove, New York;

      b.     Born: June 8, 1954; and

      c.     June Hagedorn, M.D.

26. (a) State the dates and outcome of each pregnancy of a DES mother (including the pregnancy described above) including those pregnancies not brought to term. Include dates of birth and names of all offspring of those pregnancies, and state whether the DES mother consumed or was administered DES in connection with any of those pregnancies. Also state the names and last known addresses of all medical practitioners seen and facilities visited in connection with those pregnancies. (b) State whether the offspring of those pregnancies have or had any of the conditions which the exposed persons are alleged to have or have had. (c) State whether any of the offspring of the pregnancies has filed a lawsuit related to the mother's use during pregnancy of DES. If so, state the title of the lawsuit, the court in which it was brought, and the current status of the action.

**RESPONSE:**

(a) Anton Baumgarten, born 1/16/1947 in Brooklyn, NY.  DES was not used in

connection with this pregnancy.

(b) Two miscarriages, dates unknown but prior to 1954.

(c) Rise Baumgarten, now Rise Bausch, born 6/8/1954.  Dr. June Hagedorn, North

Country Community Hospital, Glen Cove, NY.  DES prescribed during the pregnancy.

27. State the date when plaintiff learned that his or her mother took DES during the pregnancy that led to the plaintiff's birth, and the circumstances under which plaintiff acquired this information. Provide copies of all documents that confirm the use of DES.

**RESPONSE:** Plaintiff Rise Bausch learned of her DES exposure from Dr. Eugene Bradley in

approximately 1971.  Attached hereto as Appendix No. 1 are copies of Plaintiff Rise Bausch's

medical records.

III. AS TO ALLEGATIONS OF INJURIES TO EXPOSED PERSONS

With respect to any allegations in the Complaint that an exposed person has sustained injury as a result of exposure to DES, as to each such person, identified by name:

7

28. Describe each injury, whether physical or emotional, allegedly sustained and any treatment received therefor.

**RESPONSE:**

    A. Hypoplastic uterus;

    B. Malformed fallopian tubes resulting in:

        a. Ectopic pregnancy requiring removal of right ovary and fallopian tube, November 24, 1982 by Dr. Eliezer J. Livnat at Florida Medical Center, 5000 W Oakland Park Boulevard, Lauderdale Lakes, FL 33313.

        b. Ectopic pregnancy requiring surgery, December 13, 1984 by Dr. Sharokh Akhami at Passaic General Hospital, 350 Boulevard, Passaic, NJ 07055.

        c. Ectopic pregnancy requiring total abdominal hysterectomy, August 13, 1987 by Dr. Gayle Carter at Dixie Regional Medical Center, 544 South 400 East, St. George, UT 84770.

    C. Secondary infertility;

    D. Anger and resentment that reproductive potential is damaged;

    E. Depression and emotional distress; and

    F. Relationship with spouse complicated by anger, resentment, and disappointment.

29. As to each injury, specify the date when that person became aware of the injury.

**RESPONSE:** Plaintiff Rise Bausch became aware of each of her injuries at the times of their occurrence, but not their causal link to DES.

30. Specify the date when that person first sought medical treatment for each injury and the names and addresses of the physicians, other licensed professionals or medical facilities consulted.

**RESPONSE:** See medical records, attached hereto as Appendix 1.

8

31. Specify the date and nature of each consultation with each medical professional listed above, and state the name and professional title and address of each person and facility who was consulted in relation to the alleged injury.

**RESPONSE:**

(a)    Dr. Eliezer J. Livnat, 307 N.E. 23RD Avenue, Fort Lauderdale, FL 33301.

(b)    Dr. Sharokh Akhami, 110 Passaic Avenue, Passaic, NJ 07055.

(c)    Dr. Gayle Carter, 515 South 300 East, Saint George, UT 84770.

Additionally, the following have provided gynecological consulation and/or examination:

(a)    Dr. Eugene Bradley, last known address 330 Ratzer Road, Wayne, NJ 07470.

(b)    McKay Christian, M.D., 736 South 900 East, #203, Saint George, Utah, 84790

32. Specify the names, business addresses, and professional titles of all persons or facilities that provided pharmaceuticals to that person, describing the pharmaceuticals provided for treatment of the injury.

**RESPONSE:** See Plaintiff's Response to Request No. 31.    Plaintiff is not aware of any

pharmaceuticals beyond those listed in her medical records produced.

33. Specify the dates when that person was confined to any hospital, treating facility, bed or house as a result of the said injury.

**RESPONSE:** See Plaintiff's medical records, attached hereto as Appendix No. 1.

34. State which of the injuries, if any, you claim are permanent.

**RESPONSE:** All of Plaintiff Rise Bausch's injuries are permanent.

35. Describe fully what further treatment, if any, will be required as a result of said injury.

**RESPONSE:** No future treatment will be required.

In addition, see Plaintiff's medical records in response to these requests.

36. State what activities, if any, each exposed person claims have been curtailed or ceased by virtue of exposure to DES, including physical, educational and occupational activities.

**RESPONSE:** Plaintiff's ability to carry a pregnancy to term has been compromised due to her

exposure to DES.

9

37. Identify each exposed person who claims to have suffered or claims will suffer a loss of earnings as a result of the injuries alleged. As to each, state the total amount of the alleged loss. For all actions commenced on or after June 28, 1986 state any amounts for which you have been reimbursed, and by who, for loss of earnings as a result of the injuries alleged.

**RESPONSE:** Plaintiff is not making a claim for lost earnings at this time. Plaintiff reserves the

right to supplement this response as discovery progresses.

38. Identify each exposed person who claims incapacitation from employment as a result of DES exposure alleged in this action. As to each, state the nature of such employment as of the dates of incapacitation; the job performed; the name and address of each employer; the salaries or wages earned; the dates of incapacitation; and the amount of compensation claimed not earned by reason of said incapacitation. For all actions commenced on or after June 28, 1986 state any amounts for which you have been reimbursed and by whom.

**RESPONSE:** Plaintiff is not making a claim for incapacitation from employment at this time.

Plaintiff reserves the right to supplement this response as discovery progresses.

39. State separately the total amounts, if any, claimed by plaintiff as special damages for: services provided by any provider of diagnosis, treatment, care therapy, rehabilitation or otherwise including, without limitation, physicians, psychiatrists, psychologists, teachers, rehabilitation therapists, physical therapists, occupational therapists, speech therapists, counselors, social workers, and nurses; hospital services; and medical supplies. For all actions commenced on or after June 28, 1986, state whether payment has been made, the amounts and dates of each payment, amounts outstanding, who made the payments, reimbursements received for any payment made, and the source of the reimbursement.

**RESPONSE:** A listing of Plaintiff's special damages will be provided upon receipt and

compilation.

40. State whether it is claimed that the exposed person's ability to have children has been impaired. If so claimed, also state: any medical test performed to determine that person's fertility and that of his or her spouse; a description of the procedure; the name and address of the place where the test was administered; the name and address of the person who conducted the test; and the results of the test.

**RESPONSE:** See Plaintiff's Response to Request No. 34. In addition, see Plaintiff's medical

records produced in response to these requests.

41. Does the exposed person have any children? If so, identify each such child; state whether the child is adopted or a natural child; and specify the date of that child's birth or adoption.

**RESPONSE:** Plaintiff has no children.

42. State the total number and dates of pregnancies which the exposed person has experienced (or, if the exposed person is male, the pregnancies which he has fathered), whether or not such pregnancies led to the birth of a living child, describe any complications with the such pregnancy; for each pregnancy, state whether the pregnancy was achieved with the assistance of fertility drugs or treatments; state whether or not the pregnancy went to full term, and, if not, when the pregnancy ended; describe the health of the offspring of each such pregnancy at birth; and identify all medical practitioners consulted in connection with each such pregnancy, stating their names and addresses.

**RESPONSE:**

1977:  Pregnancy, ended in miscarriage.

1982:  Pregnancy, ectopic, right ovary surgically removed 11/24/1982 by Dr. Eliezer Livnat.

1984:  Pregnancy, ectopic, surgically treated 12/12/1984 by Dr. Sharokh Akhami.

1987:  Pregnancy, ectopic, hysterectomy on 8/13/1987 by Dr. Gayle Carter.

IV. AS TO ALLEGATIONS OF LIABILITY

43. State whether the plaintiff alleges that any defendants: (i) were negligent, (ii) breached warranties, (iii) made fraudulent representations, (iv) engaged in misbranding or mislabeling, (v) failed to test or warn, and/or (vi) are strictly liable.

**RESPONSE:**  Plaintiff alleges all of the aforementioned.

44. Identify each plaintiff making such claim(s).

**RESPONSE:**  Rise Bausch.

45. Identify each such defendant by name.

**RESPONSE:**

    a.  Eli Lilly and Company;

    b.  Lannett;

    c.  Bristol-Myers Squibb;

    d.  Pharmacia and Upjohn Co.;

    e.  Abbott Labs;

    f.  Dart Drug;

11

g. GlaxoSmithKline;

h. Premo Pharmaceuticals;

i. McNeil Pharmaceuticals;

j. Person & Covey;

k. Merck; and

l. Elan Pharmaceuticals.

46. As to each defendant, separately specify the acts which constitute the basis for the plaintiff's claim that the defendant is liable to that plaintiff, identifying each such defendant by name, and each such allegation.

**RESPONSE:** As to each defendant, the acts which constitute the basis for Plaintiffs' claims

include: a) failure to test for safety or efficacy in humans or animals; b) overpromotion; c) failure

to warn; d) strict liability; e) misrepresentation; and f) breach of warranty.

V. AS TO THE CLAIMS OF EXPOSED PERSONS NOT BORN IN NEW YORK STATE.

47. If the exposed person was not born in the State of New York, state whether the DES was ever purchased or acquired in the State of New York and if so give the dates and places of those purchases or acquisitions; whether the DES mother resided in the State of New York during any time during the exposed plaintiff's gestation, and if so, state the dates and addresses of residence any other contacts that plaintiffs claim either they or the DES mother had with the State of New York during the exposed person's gestation or at any other time.

**RESPONSE:** Plaintiff's mother purchased and ingested DES in the State of New York and

resided in the State during Plaintiff's gestation in 1953 and 1954. See Plaintiff's Response to

Requests Nos. 4 and 5.

VI. OTHER ACTIONS

48. State whether any plaintiff has ever instituted an action in New York or a jurisdiction other than New York claiming injury or potential injury as a result of DES and if so identify which plaintiffs have done so, and set forth the name and index number of each other action and the name of each court and jurisdiction in which the action was or is pending. If the plaintiff used a different name, please specify the name used.

**RESPONSE:** No.

## VII. AS TO PLAINTIFF'S SPOUSE

49. Identify the plaintiff's spouse.

**RESPONSE:** Joseph F. Bausch.

50. Identify the plaintiff to whom that spouse is or was married.

**RESPONSE:** Rise Bausch.

51. State the date and location of the marriage to the plaintiff identified in response to the preceding Request.

**RESPONSE:** May 6, 1989, in Dammeron Valley, Utah.

52. State whether the spouse alleges that he or she cohabited continuously as husband and wife with the plaintiff. If not, give the dates during which they did not cohabit as husband and wife following the onset of the injuries alleged by the plaintiff.

**RESPONSE:** Plaintiff and spouse have cohabited continuously as husband and wife.

53. State when each spouse became aware of the injuries allegedly suffered by the plaintiff to whom he or she is or was married.

**RESPONSE:** See Plaintiffs' Response to Request No. 29.

54. Does the spouse have any children? If so, identify each such child, state whether the child is that person's adopted or natural chid, and the date of that child's birth and (if appropriate) adoption. Identify the child's other parent and state whether the other parent is a plaintiff.

**RESPONSE:** No.

## VIII. AS TO DES MOTHER WHO ALLEGES INJURY

55. If the DES mother is also a plaintiff who alleges injury, answer Requests 28 through 39 with respect to the DES mother.

**RESPONSE:** Plaintiff's mother is not a party-plaintiff to the present lawsuit.

## IX. AS TO CLAIMS MADE AS A REPRESENTATIVE OF DECEASED

56. If any plaintiff brings this action on behalf of a decedent's estate, identify the decedent and the legal representative of the estate, and state the date of death and date on which the court from which letters of administration or testamentary were issued, and the names and addresses of all beneficiaries and/or distributes and their relationships to the decedent.

**RESPONSE:** Not applicable.

13

X. DOCUMENT REQUEST

57. Provide the defendants with a copy of the following:

(a) All bills, canceled checks, receipts and other papers relating to expenses incurred for the medical treatment, hospital care, physicians' or nurses' services, medical supplies, etc., of the plaintiffs in relation to the injuries alleged.

**RESPONSE:** This information will be provided upon receipt and compilation.

(b) All medical reports from health care providers identified in response to the foregoing demands, including all reports from hospitals, clinics or physicians.

**RESPONSE:** Attached hereto as Appendix 1.

(c) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain complete records from all hospitals, clinics and other health care facilities where plaintiff obtained treatment for the injuries alleged, including authorization to obtain all applicable x-ray and technician's reports.

**RESPONSE:** Plaintiffs will execute written authorizations addressed to those relevant health care providers upon receipt from Defendants if Defendants agree to Provide Plaintiffs' counsel with copies of all documents received pursuant to said authorizations.

(d) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain the complete office medical records relating to plaintiff of each health care provider with regard to the treatment plaintiff received for the injuries alleged.

**RESPONSE:** Plaintiffs will execute written authorizations addressed to those relevant health care providers upon receipt from Defendants if Defendants agree to Provide Plaintiffs' counsel with copies of all documents received pursuant to said authorizations.

(e) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain complete pharmacy or drug store records with respect to any drug prescribed to plaintiff as identified in response to the foregoing demands.

**RESPONSE:** Plaintiffs will execute written authorizations addressed to those relevant health care providers upon receipt from Defendants if Defendants agree to Provide Plaintiffs' counsel with copies of all documents received pursuant to said authorizations.

14

(f) Plaintiff's birth certificate, or duly executed and acknowledged written authorization to obtain plaintiff's birth certificate.

**RESPONSE:** Attached hereto as Appendix No. 2.

(g) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain attendance and health records from any school or educational facility plaintiff attended.

**RESPONSE:** Not applicable.

(h) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain salary and attendance records from plaintiff's employer, identified in response to demand no. 38.

**RESPONSE:** Plaintiff is not presently making a claim for loss of wages.

(i) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain the file or records of all insurance companies, governmental agencies or other entities representing any collateral source which was identified in response to demands nos. 37, 38 and 39 in regard to reimbursements made arising from the injuries alleged.

**RESPONSE:** Plaintiffs will execute written authorizations addressed to those relevant insurance

companies, governmental agencies, or other entities upon receipt from Defendants if Defendants

agree to Provide Plaintiffs' counsel with copies of all documents received pursuant to said

authorizations.

(j) Duly executed and acknowledged written authorizations in the form annexed hereto to allow defendants to obtain complete records from all hospitals, clinics, or physicians from whom plaintiff's mother received treatment during her pregnancy with plaintiff, through and including their release(s) from the hospital following plaintiff's birth.

**RESPONSE:** Plaintiffs will execute written authorizations addressed to those relevant hospitals,

clinics, or physicians upon receipt from Defendants if Defendants agree to Provide Plaintiffs'

counsel with copies of all documents received pursuant to said authorizations.

All authorizations must be executed by the plaintiff claiming to have sustained injuries, or by plaintiff's natural guardian, or by the decedent's representative or surviving spouse, or, in the case of records relating to the pregnancy leading to plaintiff's birth, by plaintiff's mother, and if the mother is deceased, by her representative or surviving spouse. If executed by any person other than plaintiff, (or in the case of records relating to the pregnancy leading to plaintiff's birth,

15

her mother) that person's relationship to plaintiff or decedent shall by set forth on the authorization.

XI.    SUPPLEMENTAL ANSWERS TO INTERROGATORIES BY DEFENDANT ELI LILLY AND COMPANY

**INTERROGATORY NO. 4 (TO RISE BAUSCH):**    Please state your educational background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges.

**RESPONSE:** Plaintiff is a high school graduate from Wayne Hills High School, Wayne, NJ (1968-1972).

**INTERROGATORY NO. 5 (TO RISE BAUSCH):**    Please state the name and address of your present and past employers and/or any periods of self-employment, including the job title, nature of duties, length or period of employment or self-employment, average monthly earnings and reason for leaving employ of each such employer or period of self-employment.

**RESPONSE:** Plaintiff makes no claim for lost wages at this time.

**INTERROGATORY NO. 6 (TO RISE BAUSCH):**    Except   for   the   present lawsuit, if you ever made any claim or filed any lawsuit for personal injury or disability, please provide details, including the approximate date each such claim or other lawsuit was filed; the nature of your claimed injury, disability, or condition; the name and address of each person, firm, or corporation against whom such claim or suit was made or filed; the amount received by way of settlement, payment, or judgment for each such claim or suit; the approximate date, location and circumstances of the occurrence causing any injury, disease, or disability for each such suit or claim; and the name and address of the court, commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

**RESPONSE:** Except for the present lawsuit, Plaintiff has never made any claim or filed any

lawsuit for personal injury or disability.

**INTERROGATORY NO. 8 (TO RISE BAUSCH):**    In regard to your menstrual history, please state your age at the onset of menstruation, whether menstruation was regular, and if not, describe such irregularities as well as any cramping, fainting, dizzy spells, or any other difficulties with menstruation (such as excessive or prolonged flow), and if you have consulted a physician or other health care provider regarding any of these irregularities or difficulties, please state the name and address of the physician, the approximate dates consulted and the reason for any such consultation, examination, and treatment.

**RESPONSE:** Plaintiff's age at menarche was approximately age 12.  Plaintiff's menstrual

complaints are contained in her medical records, attached hereto as Appendix 1.

16

**INTERROGATORY NO. 9 (TO RISE BAUSCH):**    If you have ever attempted to become pregnant, but been unable to conceive, please state the number of months or years (give approximate dates) you were unable to conceive, and the name and address of any physician or other health care provider consulted and the date(s) of each consultation.

**RESPONSE:** Not applicable.

**INTERROGATORY NO. 12 (TO RISE BAUSCH):**    Please list the names of all drugs and medications used by you within the last ten (10) years, including, but not limited to, antibiotics, contraceptives, tranquilizers, sleeping pills, antihypertensives, sleep aids or hormones; the inclusive dates each such drug or medication was used; the purpose for which each such drug or medication was used; and the name of the physician or other health care provider, if any, who prescribed such drug or medication for your use.

**RESPONSE:** Plaintiff Rise Bausch objects to this Interrogatory as it is overbroad, unduly burdensome, and not likely to lead to the discovery of relevant information. The only relevant drug Plaintiff has been exposed to is the DES she was exposed to *in utero*.

Subject to and without waiving the above objections, Plaintiff at this time is unable to recall any additional medications used other than those identified in her medical records, attached hereto as Appendix 1. Plaintiff reserves the right to supplement this answer as discovery progresses.

**INTERROGATORY NO. 17 (TO RISE BAUSCH):**    As to your mother, please state her full name and maiden name; her date and place of birth; her present address if living, the date and cause of death if deceased; all residences at which your mother lived for a period of more than thirty (30) days since her pregnancy with you was diagnosed; any and all major illnesses, diseases, and/or conditions your mother has or has had and the approximate dates of such illness, disease and/or condition; the approximate date of each of your mother's pregnancies; what drugs, including diethylstilbestrol (DES), were administered in each of your mother's pregnancies; the name and address of each physician or other healthcare provider your mother consulted during each pregnancy; the name and address of the hospital or clinic where your mother was confined during each pregnancy; your mother's present marital status and, if married, the name and address of her spouse.

**RESPONSE:** See responses to Uniform Requests Nos. 3, 4, 12, 24, 25, and 26. Plaintiff's mother's maiden name was Silber. Furthermore, to the best of Plaintiff's knowledge, Ms. Baumgarten's major illnesses and/or were heart disease and Meniere's disease; onset unknown.

17

**INTERROGATORY NO. 19 (TO RISE BAUSCH):**    As to your brothers and sisters, please state their names at birth; their present names if different from their names at birth and any other names used; their present addresses if living, the date and cause of their deaths if deceased; all major illnesses, diseases and/or conditions which each has or has had and the dates of such illness, disease and/or condition; the date of their births and their relationship to you (natural brother, step-sister, adopted, etc.).

**RESPONSE:**

(a)    Anton Baumgarten is Plaintiff's natural brother; he lives at 15217 Lakes of DelRay, Building C, Apt. 97, DelRay Beach, FL 33484. To the best of Plaintiff's knowledge, he suffers from heart disease and diabetes.

(b)    Jerry Angel, Plaintiff's step-brother on father's side (child of step-mother); he lives at 879 Pinewood Terrace, West Palm Harbor, FL 34683. To the best of Plaintiff's knowledge, he has no major health conditions.

(c)    Alan Angel, Plaintiff's step-brother on father's side (child of step-mother); he lives at 4036 Wellington Parkway, Palm Harbor, FL 34683. To the best of Plaintiff's knowledge, he has no major health conditions.

**INTERROGATORY NO. 22 (TO RISE BAUSCH):**    Please state the date on which you first believed that your mother took DES during her pregnancy with you, the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first believed that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently, or tortiously in the manufacture or distribution of DES or in the warning about the use of DES.

**RESPONSE:** See Response to Uniform Request No. 27. Furthermore:

a.    Plaintiff Rise Bausch was aware of her injuries at the time they were discovered, but not their link to DES.

b.    Plaintiff was never told by anyone that her complained-of injuries were related to DES until April 2007, which was the first date Plaintiff Rise Bausch realized that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently, or

tortiously in the manufacture or distribution of DES or in the warning about the use of DES, to

cause her injuries.

**INTERROGATORY NO. 23 (TO RISE BAUSCH):**    For each document, letter, written statement, memorandum or other written material from Lilly that you, your attorneys or other representatives may have, please state the exact description of each such item, the date appearing on each such item, the location where each such item was obtained, the name and address of the person to whom such written material was directed, the name and address of the person who obtained each such item, the name and address of the person who provided each such item and the name and the address of the person known to Plaintiff to have custody of the written material.

**RESPONSE:** Plaintiff submits that her attorneys possess DES-related materials from Lilly

including labeling, A-forms, brochures, warnings, promotional literature, and state of the art

literature.

**INTERROGATORY NO. 24 (TO RISE BAUSCH):**    If you have ever received, or if you have in your possession any documents, correspondence or publications from the national DESAD Project or any DES action organization please identify each such document, item of correspondence, or publication and indicate the date you received each such item and the source of such item; and if not provided by the above-named organizations, please state the name and the address of the person who gave you the item.

**RESPONSE:** Not applicable.

**INTERROGATORY NO. 25 (TO RISE BAUSCH):**    Please identify all other persons having personal knowledge of any of the facts bearing on your claim, and for each such person state his or her address, telephone number and relationship to you, if any.

**RESPONSE:** None, other than the aforementioned persons.  Plaintiff Rise Bausch reserves the

right to supplement this answer as discovery progresses.

XII.    SUPPLEMENTAL RESPONSES TO DEFENDANT ELI LILLY AND COMPANY'S REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 7 (TO RISE BAUSCH):** All documents, drafts of documents, and medical articles senU by Plaintiff or Plaintiff Rise Bausch's parents to any treating physician, healthcare provider or pharmacist whom Plaintiff or Plaintiff's counsel believes to have information regarding product identification.

**RESPONSE:** None.    Plaintiff reserves the right to supplement this answer as discovery

progresses.

19

**REQUEST FOR PRODUCTION NO. 8 (TO RISE BAUSCH):** All medical and other records concerning any examination and/or treatment of Rise Bausch including, but not limited to, regular examinations, records of hospitalizations, records regarding pregnancy, and any medical, psychological or emotional condition which you claim is related to exposure to the drug identified in your Complaint.

**RESPONSE:** Attached hereto as Appendix No. 1.

**REQUEST FOR PRODUCTION NO. 9 (TO RISE BAUSCH):** All documents, including pill exemplars, sent to or received from Rise Bausch's parents regarding any drugs or medications taken by Rise Bausch's mother during her pregnancy with Rise Bausch.

**RESPONSE:** None.   Plaintiff reserves the right to supplement this answer as discovery progresses.

**REQUEST FOR PRODUCTION NO. 12 (TO RISE BAUSCH):**       All documents, letters, written statements, advertisements and memoranda of any kind written, published or distributed by Lilly or any of its agents, servants, or employees.

**RESPONSE:** Plaintiff objects to this Request as it is overbroad, burdensome, and not likely to lead to the discovery of relevant information.   Subject to and without waiving the above objections, Plaintiff submits that the contents and extent of her counsel's collection of DES materials, including A-forms, brochures, warnings, promotional literature, as well as state of the art literature, are well known to Defendant Eli Lilly and Company.

**REQUEST FOR PRODUCTION NO. 13 (TO RISE BAUSCH):**       All documents which you contend show that the mother of Rise Bausch took the drug identified in your Complaint during her pregnancy with Rise Bausch.

**RESPONSE:** See Plaintiff Rise Bausch's medical records, attached as Appendix 1.   Plaintiff reserves the right to supplement this request as discovery progresses.

**REQUEST FOR PRODUCTION NO. 14 (TO RISE BAUSCH):**       All documents which indicate the identity of the manufacturer of the drug identified in your Complaint which allegedly was taken by the mother of Rise Bausch during her pregnancy with Rise Bausch.

**RESPONSE:** See Response to Uniform Request No. 7.

**REQUEST FOR PRODUCTION NO. 16 (TO RISE BAUSCH):**       Any       pills, capsules, tablets, containers, labels or other materials connected with the drug identified in your

Complaint which was allegedly taken by the mother of Rise Bausch during her pregnancy with Rise Bausch.

**RESPONSE:** Plaintiff does not currently possess such materials. Plaintiff reserves the right to

supplement as discovery progresses.

**REQUEST FOR PRODUCTION NO. 19 (TO RISE BAUSCH):**    A copy of all documents identified by you in response to Eli Lilly and Company's First Set of Interrogatories to Plaintiff Rise Bausch.

**RESPONSE:** None, other than those previously identified and attached to these responses.

**REQUEST FOR PRODUCTION NO. 21 (TO RISE BAUSCH):**    All documents and tangible things, including all tangible reports, physical models, compilations of data and other material prepared by your expert witness or for your expert witness in anticipation of the expert's trial and deposition testimony in this case.

**RESPONSE:** Plaintiff has not yet determined her experts. Plaintiff reserves the right to

supplement this response in the 26(a)(2) disclosures and pretrial statement.

**REQUEST FOR PRODUCTION NO. 22 (TO RISE BAUSCH):**    All statements, written or otherwise, of persons having knowledge of facts relevant to this case.

**RESPONSE:** None. Plaintiff reserves the right to supplement this response as discovery

progresses.

**REQUEST FOR PRODUCTION NO. 23 (TO RISE BAUSCH):**    All documents upon which you rely to support your contention that DES was in a defective condition and was unreasonably dangerous.

**RESPONSE:** Defendants' labeling and brochures, the pertinent medical literature applicable to

the state of the art, and the Defendants' warnings are well-known, previously litigated, and fully

in possession of Defendant Eli Lilly and Company.

**REQUEST FOR PRODUCTION NO. 24 (TO RISE BAUSCH):**    All documents upon which you rely to support your contentions alleged in paragraphs 3 through 25 of your Complaint.

21

**RESPONSE:** Defendants' labeling and brochures, the pertinent medical literature applicable to the state of the art, and the Defendants' warnings are well-known, previously litigated, and fully in possession of Defendant Eli Lilly and Company.

**REQUEST FOR PRODUCTION NO. 25 (TO RISE BAUSCH):**    Copies of any and all adoption documents prepared by or on behalf of Rise Bausch, including, but not limited to, any and all correspondence, applications, requests, questionnaires, notes, agency letters of approval, and any and all attendant documents which in any way relate to or were procedurally requires for the seeking of adoption of a child (children) and was prepared and/or submitted to any private party, agency, association and/or governmental agency at any time by Rise Bausch. These documents may include information about health, such as physical examinations; financial information, including last year's federal income tax return; and any other information submitted concerning adoption such as autobiographies, descriptions of each adoptive parent, background, present job, marital relationship, reasons for adopting, parenting, and experience with children.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 28 (TO RISE BAUSCH):**    All correspondence Plaintiffs' counsel sent to or received from Rise Bausch's parents.

**RESPONSE:** None.

The information contained in these requests, as well as the word usage, sentence structure, and opinions, are not solely that of the declarant; rather, they are the product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING AMENDED UNIFORM PRELIMINARY REQUESTS FOR INFORMATIONARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.


Dated: _____11/4/07_____          _____Rise H. Bausch_____
                                            Rise H. Bausch, Declarant


AARON M. LEVINE & ASSOCIATES


_____
Aaron M. Levine, DC #7864
1320 19th Street, N.W., Suite 500
Washington, DC  20036
(202) 833-8040

23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2007, a true copy of the foregoing Responses

to Defendants' Uniform Requests for Admission was sent via Federal Express to:

John Chadwick Coots, Esq.
Shook, Hardy, & Bacon LLP
600 Fourteenth Street, NW
Suite 800
Washington, DC 20005-2004
*Counsel for Defendant Eli Lilly and Co.*

And mailed, first class postage prepaid, to:

Sidney G. Leech, Esq.
Goodell, DeVries, Leech & Dann LLP
One South Street, 20TH Floor
Baltimore, MD 21202
*Counsel for Defendant Bristol-Myers Squibb*

Sarah S. Keast, Esq.
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
*Counsel for Defendant Premo
Pharmaceuticals*

Kathleen Bustraan, Esq.
Lord & Whip, P.A.
Charles Center South
36 S. Charles Street
10TH Floor
Baltimore, MD 21201
*Counsel for Defendant Lannett Company*

Jaime W. Luse, Esq.
Tydings & Rosenberg, LLP
100 East Pratt Street, 26TH Floor
Baltimore, MD 21202
*Counsel for Defendant Elan
Pharmaceuticals*

Elizabeth Ewert, Esq.
Drinker Biddle & Reath LLP
1500 K Street NW
Suite 1100
Washington, DC 20005
*Counsel for Defendant Pharmacia &
Upjohn*

Janet K. Coleman, Esq.
Whitney & Bogris LLP
401 Washington Avenue
Twelfth Floor
Towson, MD 21204
*Counsel for Defendant GlaxoSmithKline*

_____
Aaron M. Levine

# Exhibit 2

## To
## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)
**(Cite as: 2005 WL 3274561 (D.D.C.))**

C
Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
In re: AT & T ACCESS CHARGE LITIGATION
No. Civ.A. 05-1360 ESH.

Nov. 16, 2005.

*MEMORANDUM OPINION*
HUVELLE, J.

**\*1** This case is a coordinated action relating to defendant AT & T Corp .'s alleged failure to pay required charges for its use of plaintiffs' local telephone network facilities to receive and complete long-distance telephone calls. Before the Court is AT & T Corp.'s and AT & T Communications, Inc.'s (collectively "AT & T" or "defendants") Motion to Transfer Venue to the United States District Court for the District of New Jersey, which is opposed by plaintiffs. For the reasons discussed below, the Court will grant defendants' motion.

BACKGROUND
This coordinated action currently includes eleven complaints brought by seventeen plaintiffs--a number that is likely to grow. [FN1] Each plaintiff claims that AT & T underpaid federal and state mandated switched access charges to local exchange carriers for the use of local exchange facilities to originate and terminate long-distance calls. Plaintiffs allege that defendants began disguising long-distance calls as interexchange calls sometime in 2000 in order to avoid detection and thereby avoid the applicable switched access charges. Plaintiffs contend defendants orchestrated and implemented two fraudulent schemes, one using phone-to-phone Internet Protocol telephony technology and the other using AT & T's prepaid calling cards, through concerted action by employees at AT & T corporate headquarters in New Jersey.

> FN1. The current plaintiffs include: ITC DeltaCom, Inc. ("ITCD"), an Alabama corporation with its principal place of busi-

ness in Huntsville, Alabama; Business Telecom, Inc. and Business Telecom of Virginia, Inc. (collectively "BTT"), a North Carolina and a Virginia corporation, respectively, with their principal place of business in Huntsville, Alabama; Granite Telecommunications, LLC ("Granite"), a Delaware corporation with its principal place of business in Quincy, Massachusetts; RCN Telecom Services of Illinois, an Illinois company with its principal place of business in Chicago, Illinois; RCN Telecom Services, Inc., a Pennsylvania corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Philadelphia, Inc., a Pennsylvania corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Massachusetts, Inc., a Massachusetts corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Washington, D.C., Inc., a District of Columbia corporation with its principal place of business in Princeton, New Jersey; RCN BecoCom LLC, a Massachusetts corporation with its principal place of business in Princeton, New Jersey; Starpower Communications LLC, a Delaware corporation with its principal place of business in Princeton, New Jersey; McClure Telephone Co. ("McClure"), an Ohio company with its principal place of business in McClure, Ohio; Lexcom Telephone Co. ("Lexcom"), a North Carolina company with its principal place of business in Lexington, North Carolina; Supra Telecommunications and Information Systems, Inc. ("Supra"), a Florida company with its principal place of business in Miramar, Florida; Illinois Consolidated Telephone Co. ("ICTC"), an Illinois corporation with its principal place of business in Mattoon, Illinois; Consolidated Communications of Fort Bend Co.

Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)
**(Cite as: 2005 WL 3274561 (D.D.C.))**

("CCFB") and Consolidated Communications of Texas ("CCTX"), both Texas corporations with their principal place of business in West Conroe, Texas; and Prairie Grove Telephone Co. ("Prairie Grove"), an Arkansas company with its principal place of business in Prairie Grove, Arkansas.

Two years after implementing these allegedly fraudulent schemes, AT & T filed two petitions with the Federal Communications Commission ("FCC") requesting that specific types of long-distance calls, calls matching the types alleged by the plaintiffs, be exempt from access charges. The FCC ultimately rejected both of AT & T's petitions on April 21, 2004 and February 23, 2005. *See Petition for a Declaratory Ruling that AT & T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges,* WC Docket No. 02-361, Order, 199 F .C.C.R. 457 (2004); *AT & T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services,* WC Docket Nos. 03-313 and 05-68, Order and Notice of Proposed Rulemaking, 20 F.C.C.R. 4826 (2005). Furthermore, the FCC instructed local exchange carriers to pursue collection actions against AT & T for any unpaid access charges with an appropriate court.

ITCD and BTI initiated this action on July 7, 2005. Several additional plaintiffs subsequently filed identical complaints, causing the Court on September 23, 2005, to issue a Case Management Order coordinating the actions for pre-trial purposes. In response to the Case Management Order, AT & T withdrew the Motion to Transfer Venue it had previously filed on September 12, 2005, in the individual actions and re-filed it ("Defs.' Mot.") on September 30, 2005 as part of the coordinated action. Plaintiffs filed a joint Opposition to the Motion to Transfer Venue ("Pls.' Opp'n") on October 14, 2005, to which defendants filed a Reply ("Defs.' Reply") on October 24, 2005.

## ANALYSIS

*\*2* Defendants seek to transfer this case pursuant to 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing that transfer is proper. *Trout Unlimited v. U.S. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C.1996). Section 1404(a) grants the district court discretion to "adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." ' *Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 50 (D.D.C.2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). Courts retain broad discretion in balancing the asserted convenience and fairness to the parties. *Sheraton Operating Corp. v. Just Corporate Travel,* 984 F.Supp. 22, 25 (D.D.C.1997).

To succeed in a motion to transfer, defendants must make two showings. First, they must establish that this action might have been brought in the proposed transferee district, *i.e.,* the District of New Jersey. *DeLoach v. Philip Morris Co.,* 132 F.Supp.2d 22, 24 (D.D.C.2000). Second, they must "demonstrate that the balance of convenience of the parties and witnesses and the interest of justice are in their favor." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.,* 569 F.Supp. 773, 774 (D.D.C.1983). In analyzing the relative convenience of the competing venues, a court must weigh a number of private and public interest factors. *Reiffin,* 104 F.Supp.2d at 51-52. Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendants' preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. *Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.,* 226 F.Supp.2d 227, 229 (D.D.C.2002) (citing *Trout Unlimited,* 944 F.Supp. at 16). Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *Id.* Courts may also consider the availability of compulsory process to compel the attendance of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)
**(Cite as: 2005 WL 3274561 (D.D.C.))**

unwilling witnesses and other practical aspects of expeditiously and conveniently conducting a trial. *See Reiffin,* 104 F.Supp.2d at 52; *SEC v. Page Airways, Inc.,* 464 F.Supp. 461, 463 (D.D.C.1978); *accord* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3848-3854 (2d ed.1986).

Given the substantial ties of defendants to the District of New Jersey, there can be no dispute that all of the cases that have been coordinated here could have been brought in the District of New Jersey. AT & T maintains corporate headquarters in Bedminster, New Jersey, is subject to personal jurisdiction in that district, and venue is proper there under 28 U.S.C. § 1391(b) and (c) as its relevant entities reside in New Jersey. Plaintiffs do not dispute that venue would be appropriate in the District of New Jersey. Thus, the only question before the Court is whether the public and private factors outlined above weigh heavily enough in favor of New Jersey to warrant transfer to that district.

**\*3** The first private factor, plaintiffs' choice of forum, is a "paramount consideration" in any determination of a transfer request. *Sheraton Operating Corp.,* 984 F.Supp. at 25. Typically, courts accord plaintiffs' choice of forum "substantial deference" when analyzing a transfer motion. *Gross v. Owen,* 221 F.2d 94, 95 (D.C.Cir.1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed ... unless the balance of convenience is strongly in favor of the defendant."); *see also Reiffin,* 104 F.Supp.2d at 52. While a court may not transfer simply because it thinks another forum may be superior to plaintiffs' chosen forum, *Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 24 F.Supp.2d at 66, 71 (D.D.C.1998), such deference is substantially diminished where the chosen forum is neither their home forum nor has any meaningful ties to the controversy. *Trout Unlimited,* 944 F.Supp. at 17. Defendants argue that none of the plaintiffs is located within the District of Columbia and therefore plaintiffs' choice of forum "deserves no deference." (Defs.' Mot. at 7.) Plaintiffs maintain their principal places of business in Alabama, Arkansas, Florida, Illinois, Massachusetts, New Jersey, North Caro-

lina, Ohio, Texas and Virginia. The sole plaintiff that is incorporated under the laws of the District of Columbia, RCN Telecom Services of Washington, D.C. ("RCN DC"), maintains its principal place of business in New Jersey. [FN2] Indeed, a plurality of the plaintiffs maintain New Jersey as their principal place of business. [FN3]

> FN2. The Court notes that RCN DC, as a D.C. corporation, arguably has a stronger claim to venue in the District of Columbia than any of the other plaintiffs. Nevertheless, the Court's Case Management Order instructed that if it was necessary for the Court to consider one party separate from the others with regard to any motion, a pleading should filed with a specialized caption alerting the Court to that party's unique status. (9/23/05 Order ¶ II.B.) None of the plaintiffs requested individualized treatment with respect to the Motion to Transfer. Thus, despite slight variations among plaintiffs with respect to the strength of their claim to venue, the Court will treat the plaintiffs as a collective whole for purposes of determining whether to order a transfer.

> FN3. Plaintiffs RCN Telecom Services, Inc., RCN Telecom Services of Philadelphia, Inc., RCN Telecom Services of Massachusetts, Inc., RCN Telecom Services of Washington, D.C., Inc., RCN BecoCom LLC, and Starpower Communications LLC, all have as their principal place of business Princeton, New Jersey. Plaintiffs assert in their Opposition that RCN's New Jersey offices will be closing next year and will be relocated to Pennsylvania, Illinois, and Northern Virginia. Even accepting plaintiffs' assertions as true, the relocation of offices to these three jurisdictions does not strengthen their ties to D.C. or the argument for deference to their decision to file their complaints in the District of Columbia.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)
(Cite as: 2005 WL 3274561 (D.D.C.))

Plaintiffs' claim to substantial deference is further vitiated by the lack of any meaningful ties between the chosen forum and the substance of the dispute. *See Trout Unlimited,* 944 F.Supp. at 17. First, of the 17 plaintiffs, eight-- ITCD, McClure, Lexcom, Supra, Prairie Grove, ICTC, CCFB and CCTX--provide absolutely *no* services within the District of Columbia. Of the six RCN plaintiffs, only one provides any services in D.C. The remaining plaintiffs maintain what can best be described as only minimal business operations within the District. BTI, which provides local phone service on 53 lines (Pls.' Opp'n at 8 n.9), did not bill AT & T for any services provided in the District of Columbia during the year preceding the filing of its complaint. (Defs.' Mot. at 6.) Between August 2004 and July 2005, Granite billed AT & T only $2670.00 for switched access services, which amounted to only 0.14 percent of Granite's nationwide bill to AT & T during that time. (Defs.' Mot., Decl. of Geri Lancaster Ex. 1.) The one RCN entity to service D.C. accounted for only 5.64 percent of RCN's total nationwide bills to AT & T. (Defs.' Mot., Decl. of Geri Lancaster Ex. 2.)

Lacking substantial financial or business ties to the District of Columbia, plaintiffs attempt to fashion an argument based on regulatory ties: AT & T filed petitions regarding switched-access tariffs with the Federal Communications Commission ("FCC") in the District of Columbia and the FCC issued its rulings, which form the basis for plaintiffs' claims, from its headquarters in the District of Columbia. (Pls.' Opp'n at 5-7, 9-14.) This Court has ruled on several occasions, however, that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the question of venue. *Shawnee Tribe v. United States,* 298 F.Supp.2d 21, 25-26 (D.D.C.2002). Particularly apropos is the case of *DeLoach v. Philip Morris Co.,* 132 F.Supp.2d 22 (D.D.C.2000), where tobacco producers brought suit in the District of Columbia against Philip Morris under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, for allegedly anti-competitive actions. The Court granted defendant's motion to transfer venue, finding that "the only real connection this lawsuit

has to the District of Columbia is that a federal agency headquartered here ... is charged with generally regulating and overseeing" the process Philip Morris was accused of manipulating. *Id.* at 25. Similarly, even if defendants made fraudulent misrepresentations in their FCC filings, as plaintiffs allege, this is not sufficient to create venue since the FCC has not had any "significant day-to-day role in observing, managing, or running" switched access usage or billing within the telecommunications industry, *id.,* as compared to the extensive level of agency involvement in *Wilderness Soc'y v. Babbitt,* 104 F.Supp.2d 10, 13-14 (D.D.C.2000). Moreover, to accept plaintiffs' argument would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action. Such an expansive view of venue finds no support in the law and therefore will not be adopted here. *See Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C.Cir.1993) ("Courts in this circuit must examine challenges to ... venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia" by alleging the involvement of government officials.); *see also Airport Working Group of Orange County,* 226 F.Supp.2d at 230-31 ("Given the lack of any meaningful ties to this jurisdiction, this Court is particularly mindful of the admonition that courts 'must be especially cautious in allowing [cases] to remain in the District of Columbia." ') (alteration in original) (citing *Trout Unlimited,* 983 F.Supp. at 17).

**\*4** Nor does this case rise to the level of "national significance" present in *Wilderness Soc'y.* There, the Court found that the Secretary of the Interior's extensive involvement in the conduct of various environmental studies relating to the development of oil and gas resources in Alaska supported venue in the District of Columbia because of "the national scope of the environmental issues." 104 F.Supp.2d at 14. By contrast, while AT & T's alleged actions may have taken place all over the country, this case does not involve a "national policy decision" or a significant "public interest." *Id.* at 13-14.

Therefore, because the District of Columbia has "no

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)
(Cite as: 2005 WL 3274561 (D.D.C.))

meaningful ties to the controversy and no particular interest in the parties or subject matter," *Chung v. Chrysler Corp.*, 903 F.Supp. 160, 165 (D.D.C.1995) (internal quotation marks omitted), the Court finds that deference to the plaintiffs' choice of forum is not appropriate.

Turning to the other factors relevant to a transfer determination, the Court concludes that New Jersey constitutes a far more appropriate forum. After considering the plaintiffs' and defendants' choice of fora, courts typically look to whether the claim arose in the district in which suit was filed. *Trout Unlimited*, 944 F.Supp. at 16. In this case, plaintiffs accuse AT & T of "orchestrat[ing] and implement[ing] at least two fraudulent schemes in an attempt to avoid plaintiffs' 'access charges'." (Compl.¶ 2.) While the manifestations of defendants' alleged actions were felt by local carriers nationwide, the conduct forming the basis of plaintiffs' suit took place primarily in New Jersey. As plaintiffs' allege: "AT & T coordinates and controls one overarching position concerning all of these issues from its corporate headquarters." (Compl.¶ 14.) It is therefore clear that the conduct that underlies plaintiffs' claims and caused their alleged harms occurred in New Jersey.

Next, courts consider "the convenience of the parties." *Trout Unlimited*, 944 F.Supp. at 16. As none of the individual plaintiffs has the District of Columbia as its principal place of business, and the majority are not located in New Jersey, the two fora appear to be of equal inconvenience for plaintiffs. But as plaintiffs' counsel candidly admitted at the initial scheduling conference, plaintiffs' choice of forum is driven by their counsel's location in the District of Columbia. [FN4] Typically, the "location of counsel carries little, if any, weight in an analysis under § 1404(a)," *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 324 (D.D.C.1991), since this factor can easily be manipulated thereby permitting forum shopping. Nevertheless, where "convenience of counsel bears directly on the cost of litigation, it becomes a factor to consider." *Blumenthal v. Mgmt. Assistance*, 480 F.Supp. 470, 474 (N.D.Ill.1979); *see also Green v. Footlocker Retail,*

*Inc.,* Civ. Action No. 04-1875, 2005 WL 1330686 (D.D.C.2005). Although plaintiffs' argument rests on this cost factor, they do no more than merely assert that a transfer to the District of New Jersey will drive up litigation costs by requiring local counsel to be hired and increasing travel expenses. (Pls.' Opp'n at 16-17.) There is no showing that plaintiffs collectively are not in a position to absorb the difference in cost. [FN5] Furthermore, a substantial amount of pre-trial discovery must be conducted in New Jersey as defendants' documents and witnesses are located there. Thus, travel expenses will be significant whether the case remains here or is transferred. Additionally, since the majority of witnesses and relevant documents are found in New Jersey, the ease of access to the sources of proof will be improved if the case is transferred.

> FN4. At the initial scheduling conference, plaintiffs' counsel stated: "Your Honor, I want to be very up front about this. [Our clients] would like to keep the cost down. *We're here.* It's a case that involves a lot of expertise. There are not New Jersey lawyers that are experienced with respect to these FCC orders.... *I know the cases say the convenience of counsel does not mean anything.* But ... it is a lot more economical for our clients to litigate this case in D.C. than in New Jersey." (9/13/05 Tr. of Initial Sch. Conf. at 22 (emphases added).)

> FN5. Given that the combined revenues of plaintiffs, excluding ICTC, CCFB and CCTX (who filed suit after plaintiffs filed their Opposition), were $1,305,000,000 in 2004 (Pls.' Opp'n at 15), there is no reason to assume that plaintiffs would be unable to absorb the extra cost (if any) of litigating in New Jersey. In addition, the need to hire local counsel is not clear, since it appears from Swidler Berlin's website that it has both a New York office and at least two attorneys who are members of both the New Jersey bar and the bar for the U.S. District Court for the District of New Jersey.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**\*5** Considering the public interest factors, the Court finds that New Jersey has a much stronger interest in resolving this dispute as compared to the District of Columbia. Though the case involves alleged damages in a multitude of states, the actions in question were undertaken by a New Jersey corporation and implemented by New Jersey-based employees. The State of New Jersey has a significant interest in allegations of fraudulent activity by its corporations and certainly has a greater interest than the District of Columbia, where very few of the alleged harms were manifested and most of the parties have virtually no ties.

Plaintiffs had a decision to make when filing their lawsuits: either file in each plaintiff's home district and protect their venue choice or file a multitude of lawsuits in one jurisdiction and conserve costs. Having reaped the benefit of cost-sharing, plaintiffs have less standing to complain that their choice of venue is not being honored. The coordination of these cases in a single venue is no doubt more cost-efficient than trying each of them separately. That New Jersey may not be as cost-efficient a location for plaintiffs because they have chosen to hire D.C. counsel is simply not enough to tip the balance when the remaining factors weigh heavily in favor of transfer.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Transfer Venue shall be GRANTED. An appropriate Order accompanies this Memorandum Opinion.

Not Reported in F.Supp.2d, 2005 WL 3274561 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# Exhibit 3

To

## Affidavit of John C. Coots in Support of Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY THOMPSON and )
MARK A. THOMPSON, )
)
Plaintiffs, )
)
v. )    Civil Action No. 03-122 (RBW)
)
ELI LILLY AND COMPANY, )
)
Defendant. )

## <u>ORDER</u>

The plaintiffs, Nancy and Mark Thompson, have brought this product liability

action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson

alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES ) during

her mother's pregnancy with Mrs. Thompson. The defendant seeks to have this case

transferred to the District of Massachusetts "[b]ecause it would be more convenient for

the parties to litigate this action in the District of Massachusetts -- where the alleged

exposure <u>in utero</u> to (DES) took place, where almost all of the fact witnesses reside -- and

because there is absolutely no connection between the District of Columbia and

plaintiffs' claims. Motion of Defendant Eli Lilly and Company to Transfer Action,

Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to

Transfer ("Def.'s Mem. ) at 2-3. Upon consideration of the parties' submissions and for

the reasons set forth below, the Court will transfer this case to the District of

Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.   A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors.  While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,] Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum,  Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)    Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...  In this case, it is undisputed that this action could have been brought in Massachusetts. This is because the alleged events that gave rise to the plaintiffs' claims ocurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts.  Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3 (Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)). Having concluded that this action could have been brought in Massachusetts, the Court will now evaluate whether the private and public interest factors favor the transfer of this action.

**(B)    Do the Interests of the Parties and the Public Favor of Transferring this Case to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as: "[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial. Boers, 133 F. Supp. 2d at 65 (D.D.C. 2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be transferred to the District of Massachusetts. Massachusetts is the situs where the DES was ingested and therefore the location where any injury resulting from its use occurred. Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs. Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury she allegedly sustained, and Mrs. Thompson's primary care physicians. Def.'s Mem. at 1-2. Furthermore, the ability to access much of the physical proof with the least effort favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located. And, the pharmacies that sold Mrs. Thompson's mother the

DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in

Massachusetts, any concerns regarding the availability of compulsory process and the

expense of securing the presence of the witnesses also favor transfer to Massachusetts.

While the plaintiffs focus on the relative congestion of the two courts' calendars as

grounds for the case not being transferred,[2] the Court notes that this case is at an early

stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to

Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply ) at 4. Therefore, the plaintiffs have failed to demonstrate that calender congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

4

this case to Massachusetts, but it also appears that Massachusetts state law will govern

the plaintiffs' claims.[5]  And a Massachusetts court is better equipped to apply

Massachusetts law, as another member of this Court has commented, the interests of

justice "[a]re best served by having a case decided by the federal court in the state whose

laws govern the interests at stake.   Trout Unlimited v. United States Dep't of

Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

        While this Court finds it significant that Massachusetts has such strong

connections to this case, equally significant is that the District of Columbia has no such

connection to this matter.  The plaintiffs assert that there is a connection between the

District of Columbia and their claims because this jurisdiction is where the original

industry wide promotion of DES occurred and where defendant lobbied and applied for

Food and Drug Administration  approval to sell and promote DES.  Plaintiffs' Opposition

to Defendant's Motion to Transfer ("Pls' Opp'n ) a t 4.  Plaintiffs also argue that the

defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the

District of Columbia and currently employs at least 58 lobbyists in this jurisdiction. Id.

at 5.  Plaintiffs further note that the defendant itself has selected the District of Columbia

as its home forum in litigation against its insurers involving coverage of the DES claims

that have been filed against it.  Id.  This Court is unconvinced that these contacts, which

have no direct connection to this case, favor maintaining this case in the District of

Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern
this litigation.  To determine what law this Court would have to apply, it must use the District of
Columbia's choice of law analysis.  See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129
F.3d 143, 148 (D.D.C. 1997).  And this analysis would seemingly compel this court to apply
Massachusetts law.

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In <u>Ingram v. Eli Lilly & Co.</u>, No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. <u>Id.</u> at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State. <u>Id.</u> Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction. <u>Id.</u> In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction. Therefore, the plaintiffs' reliance on <u>Ingram</u> is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED**. It is

**FURTHER ORDERED** that this case shall be transferred to the District of Massachusetts.

                                        REGGIE B. WALTON
                                        United States District Judge

6

# Exhibit 4

To

## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALERIE ABRAMSON, et al.,

Plaintiffs,

v.

ELI LILLY AND COMPANY,

Defendant.

Civil Action No. 03-2541 (JDB)

## MEMORANDUM OPINION

This in utero diethylstilbestrol (DES) exposure case brought by plaintiff Valerie Abramson and her husband Chett Abramson ("plaintiffs") against defendant Eli Lilly and Company is one of many currently pending in this Court. Following initial discovery, defendant has moved to transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Jersey, which defendant submits is a more convenient forum.[1] The Court agrees based on the specific facts of this case.

## FACTUAL BACKGROUND

There is no dispute as to certain facts central to the disposition of defendant's motion. Plaintiffs reside in New Jersey, as do plaintiff Valerie Abramson's parents. Ms. Abramson's gynecologist during the relevant 1988 to 2001 period practices in New Jersey. The other relevant physicians identified by plaintiffs in interrogatory responses all practice in New Jersey and reside in New York (well within the subpoena power of the District of New Jersey pursuant to

---

[1] Briefing on the motion was completed on August 31, 2004.

-1-

Fed.R.Civ.P. 45(b)(2)). No non-party fact witness resides in the District of Columbia or is within the subpoena power of this Court. None of the events relating to plaintiffs giving rise to this specific action have any connection to the District of Columbia. As plaintiffs expressly agree, this case could have been brought in the District of New Jersey.

Plaintiffs do, however, claim some connection to the District of Columbia by virtue of defendant's lobbying and promotion efforts with the Food and Drug Administration ("FDA") relating to DES, which occurred largely in the District of Columbia, although for the most part long ago. Plaintiffs also point out that defendant has itself brought suit in the District of Columbia against its insurers over DES claims. Moreover, plaintiffs observe that many DES cases have been brought here, and that the judges of this Court, and particularly Magistrate Judge Kay, have developed an expertise in these cases.

## ANALYSIS

Most of the judges of this Court, including this judge,[2] have denied similar transfer motions in DES cases against Eli Lilly. Where there is no connection to this forum and a strong connection to one other forum, however, transfer has been granted. See Thompson v. Eli Lilly and Co., Civil Action No. 03-0122 (RBW) (D.D.C. June 27, 2003).

The Court agrees that this action could have been brought in the District of New Jersey.[3] However, plaintiffs' choice of forum is entitled to some weight, although it is given less deference when (as here) the chosen forum is not the plaintiff's home forum. See Piper Aircraft v. Reyno,

---

[2] See Roing, et al. v. Eli Lilly & Co., Civil Action No. 02-2211 (JDB) (D.D.C.) (Order dated Jan. 28, 2003).

[3] There is no doubt that the District of New Jersey would have jurisdiction over the action and that venue is proper there.

-2-

454 U.S. 235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On

the other hand, defendant has engaged in some lobbying and other efforts related to DES in the

District of Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly,

and even has been the forum of choice by Eli Lilly for its litigation against insurers regarding

coverage for DES claims.[4] Although it does not appear likely that the District Judges of this Court

have developed much real expertise in the substance of these DES cases, certainly Magistrate

Judge Kay has considerable experience in the settlement context. Finally, it is undisputed that

plaintiffs and defendant both have counsel (the latter in the District of Columbia) experienced in

handling this type of litigation, and that those counsel have cooperated in other DES cases in the

District of Columbia with respect to making witnesses and documents (including medical records)

readily available. These relevant factors, taken together, do not weigh clearly in favor of transfer

to the District of New Jersey.

What may be different about this case, however, is the convenience of witnesses factor

under section 1404(a). Indeed, "the most critical factor to examine under 28 U.S.C. § 1404(a) is

the convenience of the witnesses." Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C.

1996). The ease of access to sources of proof, the expenses for willing witnesses, and whether the

claim arose elsewhere are all important considerations in this assessment. See Trout Unlimited v.

United States Dep't of Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996).

Here, all the relevant fact witnesses on exposure, injury and causation are more easily

_____

[4] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the
District of Columbia courts against allegations that it was engaged in forum shopping. Defendant
has explained, however, that the choice of forum there was based in part on the need to
accommodate travelers from around the globe.

-3-

accessed in New Jersey than in the District of Columbia -- plaintiffs, Ms. Abramson's parents, her gynecologist, and other treating physicians. No fact witness appears to be located in or close to the District of Columbia. The subpoena power of the New Jersey court reaches all those witnesses, while this Court's subpoena power does not.[5] The relevant medical records are also more readily obtained in New Jersey from the various physicians. Nor, quite obviously, did the claim, or any events giving rise to the claim, occur here.

Unlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses -- the District of New Jersey. Moreover, that is the forum where most of the operative facts occurred, although some also apparently occurred in other states but not in the District of Columbia.[6] It is simply beyond cavil that transfer to the District of New Jersey will be considerably more convenient (and less expensive) for the witnesses. Importantly, that will also enable the relevant witnesses to be compelled to testify because they will be within the subpoena power of that court, which is not the case were the action to remain in this Court. Finally, given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge

---

[5] Conceivably, then, some of those witnesses could decline to appear if the case went forward to trial in this Court.

[6] The Court does not find persuasive the argument that DES-related lobbying efforts to the FDA tie this case to the District of Columbia. Documents related to those efforts have already been produced to plaintiff's counsel. Likewise, a 1941 meeting of representatives of drug manufacturers in Washington, D.C., is too attenuated a basis for connecting this action to the District of Columbia.

Kay, with this case.[7]

Accordingly, defendant's motion to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses will be granted. A separate order will be issued.


/s/    John D. Bates
JOHN D. BATES
United States District Judge

Dated: October 25, 2004

---

[7] Plaintiffs emphasize the several other cases in this District in which transfer has been denied, including a case brought by Ms. Abramson's sister. The point remains, however, that section 1404(a) transfer motions are extremely fact-dependent, turning largely on the connection of the specific case to the transferee and transferor forums and the convenience and location of the relevant witnesses.

Copies to:

Patricia Martin Stanford
3609 Hendricks Avenue
Jacksonville, FL 32207
(904) 346-4215
Fax: (904) 346-4275
E-mail: pmslaw1@aol.com
          *Counsel for plaintiffs*

Lawrence Hedrick Martin
FOLEY HOAG LLP
1875 K Street, NW
Suite 800
Washington, DC 20006
(202) 223-1200
Fax: (202) 785-6687
E-mail: lmartin@foleyhoag.com

James J. Dillon
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000
Fax: (617) 832-7000
E-mail: jdillon@foleyhoag.com
          *Counsel for defendant*

-6-

# Exhibit 5

## To
## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                  )
LISA M. DEAN, et al.,             )
                                  )
                 Plaintiffs,      )
                                  )
          v.                      )  Civil Action No. 06-1375 (EGS)
                                  )
ELI LILLY & CO.,                  )
                                  )
                 Defendant.       )
_____)
```

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is by the Court hereby

**ORDERED** that defendant's motion to transfer is **GRANTED**; and it is

**FURTHER ORDERED** that this case is **TRANSFERRED** to the United States District Court for the District of Massachusetts.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            June 1, 2007**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LISA M. DEAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 06-1375 (EGS) |
| | ) |
| ELI LILLY & CO., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs Lisa & Jeffrey Dean and Lynn & James Backner bring this products liability action against defendant Eli Lilly and Company ("Eli Lilly"), seeking damages allegedly caused by Eli Lilly's product.  Pending before the Court is defendant's Motion to Transfer Venue to the District of Massachusetts.  Upon consideration of the defendant's motion, the plaintiffs' response, and the reply thereto, the Court **GRANTS** defendant's Motion to Transfer Venue.  For the following reasons, this case shall be transferred to the United States District Court for the District of Massachusetts.

## I.    BACKGROUND

Lisa M. Dean and Lynn Alison Backner, sisters, filed this products liability action in the Superior Court for the District of Columbia, alleging injury stemming from their mother's consumption of DES, a prescription drug manufactured by Eli

Lilly, during pregnancy with the sisters.  The sisters' husbands joined as co-plaintiffs.  The Deans currently reside in New Hampshire, and the Backners currently reside in Massachusetts. The sisters' mother received the prescription for DES from her physician in Massachusetts and then purchased and ingested the DES in Massachusetts during her pregnancies.

Eli Lilly, an Indiana corporation, removed the action to this Court on August 2, 2006, and the case was later referred to Magistrate Judge Kay for mediation.  On December 19, 2006, Eli Lilly filed a motion to transfer the case to the United States District Court for the District of Massachusetts, arguing that this case has no connection to the District of Columbia.

## II.  LEGAL STANDARD FOR TRANSFER UNDER 28 U.S.C. § 1404(a)

The federal venue transfer statute states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The moving party bears the burden of showing that transfer under this statute is proper.  *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 25 (D.D.C. 2001).  The statute provides for a flexible and individualized analysis that "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc.*

2

*v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

To show that transfer would be proper, the defendant must first establish that the plaintiff could have brought the action in the proposed transferee district. *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006) (citing *DeLoach v. Philip Morris Co.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000)). Next, the defendant must show that private- and public-interest factors weigh in favor of transfer. *Lentz*, 464 F. Supp. 2d at 37.

## III. THE CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF MASSACHUSETTS

Before the Court can transfer a case to another venue, it must first determine that the action could have been brought in the proposed transferee district. *Id.* at 36 (citing *DeLoach*, 132 F. Supp. 2d at 24). The defendant has shown – and the plaintiffs do not dispute – that this action could have originally been filed in the United States District Court for the District of Massachusetts because subject matter jurisdiction, personal jurisdiction, and venue would be proper in that forum. Subject matter jurisdiction is proper based on diversity of citizenship under 28 U.S.C. § 1332; the plaintiffs are domiciled in New Hampshire and Massachusetts, the defendant is domiciled in Indiana, and the amount in controversy exceeds $75,000. Personal jurisdiction would be proper based on Massachusetts' long-arm

3

statute, which reaches defendants who cause tortious injury in
Massachusetts. *See* Mass. Gen. Laws Ann. ch. 223A, § 3. Finally,
venue would properly lie in the District of Massachusetts because
a substantial part of the events giving rise to the claim (i.e.,
the prescription, purchase, ingestion, and exposure) occurred in
that district. *See* 28 U.S.C. § 1391(a). As a result, because
the plaintiffs could have properly brought their claim against
Eli Lilly in the District of Massachusetts, Eli Lilly has met the
threshold showing required for transfer under § 1404(a).

## IV.    THE BALANCE OF PRIVATE AND PUBLIC INTERESTS FAVORS TRANSFER

Once the Court has determined that the action could have
properly been brought in the proposed transferee district, the
Court then must weigh several private- and public-interest
factors to determine if considerations of convenience and
interests of justice support transfer. *Lentz*, 464 F. Supp. 2d at
36-37. In the case at bar, these factors weigh in favor of
transfer.

### A.    Private-Interest Factors

The Court considers several private-interest factors when
deciding a motion to transfer, including: (1) the plaintiff's
forum choice, (2) the defendant's forum choice, (3) where the
claim arose, (4) the convenience of the parties, (5) the
convenience of the witnesses to the extent that they may be
unavailable for trial in one of the fora, and (6) the ease of

4

access to sources of proof. *Id.* at 37.

While courts usually defer to a plaintiff's choice of forum with regard to the first factor, the court will afford "substantially less deference" to that choice when the plaintiff does not reside in the chosen forum or when the claim lacks a substantial connection to the chosen forum. *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72 (D.D.C. 2005) (quoting *DeLoach*, 132 F. Supp. 2d at 24). Deference to the plaintiff's forum choice diminishes further when the defendant seeks transfer to a forum where the plaintiff resides. *Lentz*, 464 F. Supp. 2d at 38 (citing *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983)).

In the case at bar, none of the plaintiffs reside in the District of Columbia, and this Court is not convinced that Eli Lilly's "original industry-wide promotion of DES" and "army of lobbyists and salespeople" in the District of Columbia, Pls.' Opp'n at 7, is sufficient to establish any nexus with the plaintiffs' claims. Other courts have previously rejected these same contacts as a sufficient basis to afford deference to the plaintiff's forum choice. *See, e.g., Lentz*, 464 F. Supp. 2d at 37. Furthermore, the plaintiffs' contention that these contacts "will certainly be an issue" in the event of a trial, Pls.' Opp'n at 7, is conclusory and fails to show how Eli Lilly's lobbying, sales, and general promotion of DES within the District of

5

Columbia are substantially connected to these plaintiffs' claims. While Eli Lilly's District of Columbia activities may be related to DES and the subject matter of the action generally, they are not related to the specific claims, defenses, or facts of this particular case and therefore lack the substantial connection required to afford deference to the plaintiffs' forum choice.

On the other hand, Eli Lilly's Massachusetts activities are substantially connected to the plaintiffs' specific claims because the issues of whether the plaintiffs were exposed to Eli Lilly's product, the extent of the plaintiffs' injuries, and causation all center around Eli Lilly's sale of DES *in Massachusetts*. Because Eli Lilly is seeking transfer from a district where no plaintiffs reside to a district where at least some plaintiffs reside and because there is no substantial connection between the plaintiffs' claims and the District of Columbia, the plaintiffs' forum choice warrants little deference.

The second factor that this Court considers is the defendant's forum choice. Eli Lilly seeks transfer to the District of Massachusetts because of the strong nexus between that district and the facts of this case. This Court finds the defendant's reason for seeking transfer to be legitimate since the operative facts in this case have a strong link to the District of Massachusetts and no substantial link to the District of Columbia.

6

Next, the Court considers where the claims arose. In this case, the plaintiffs' claims arose in Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state. Additionally, the discovery of the plaintiffs' injuries, the diagnoses, and the treatments all presumably took place at least in part in Massachusetts since all of the treating physicians are either in Massachusetts or nearby in neighboring states. As a result, this Court finds that this factor weighs in favor of transfer.

As to the fourth factor, the convenience of the parties will be optimized by transferring the case to Massachusetts. While Eli Lilly's representatives presumably will have to fly from the company's headquarters in Indiana regardless of whether the case is transferred, the plaintiffs will have to drive only a short distance if the case is transferred to the District of Massachusetts. However, because the plaintiffs would rather litigate in the District of Columbia rather than in the District of Massachusetts, they appear willing to forego the convenience of a geographically nearby forum. Therefore, this factor is neutral at best or slightly favors transfer.[1]

---

[1]  Both parties are represented by counsel in the District of Columbia, and this fact seems to indicate that convenience of the parties would be optimized by keeping the action in the District of Columbia. However, this fact bears little, if any, weight in a court's determination of whether to transfer under § 1404(a). *See, e.g., McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003).

7

The Court next considers whether the convenience of the
witnesses will be optimized by transferring the case to
Massachusetts. This factor is "the most critical factor to
examine" under a § 1404(a) motion to transfer. *Chung v. Chrysler
Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1996). This Court considers
the extent to which witnesses may be unavailable for trial in
either of the fora as a central component of its analysis in a
motion to transfer. *See Lentz*, 464 F. Supp. 2d at 37; *Devaughn*,
403 F. Supp. 2d at 71. The defendant accordingly argues that all
but two of the fact witnesses are within the subpoena power of
the District of Massachusetts, while none of the fact witnesses
are within the subpoena power of the District of Columbia.

Although the plaintiffs assert that they are willing to
produce the fact witnesses voluntarily, the defendant aptly
responds that the plaintiffs cannot force unwilling fact
witnesses to appear for depositions or trial. This Court finds
that, even if the fact witnesses do agree to travel to the
District of Columbia voluntarily, they will still be
inconvenienced by having to travel, and so will their patients
back in New England. *See McClamrock*, 267 F. Supp. 2d at 40. The
Court is unpersuaded that the location of expert witnesses, who
are scattered in areas inconvenient to Massachusetts, is relevant
in this analysis since the location of fact witnesses is centered
in Massachusetts. *See Froessl v. Expervision*, No. 93-2126 (CRR),

8

1994 WL 149855, at *4 (D.D.C. Apr. 14, 1994) ("[A]lthough the convenience of experts is not irrelevant [in considering a motion to transfer], the Defendant properly points out that their convenience is entitled to little consideration in this context."); *see also Lentz*, 464 F. Supp. 2d at 37 ("[Expert witnesses] by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so . . . ."). Because the vast majority of essential fact witnesses are within the subpoena power of the District of Massachusetts (but not the District of Columbia) and because it will be more convenient for fact witnesses to appear in the District of Massachusetts, this factor favors transfer.

The final private-interest factor the Court weighs is ease of access to sources of proof. Access to proof would be facilitated by transferring this case to the District of Massachusetts because that is where all of the relevant documents (i.e., medical and pharmacy records) are located. While the plaintiffs have already authorized the release of some of their own medical records in response to Eli Lilly's discovery requests, there is no indication that the plaintiffs have been able to provide Eli Lilly with medical records of the mother who ingested the DES or the records of the pharmacy that dispensed the medication. Because the plaintiffs cannot voluntarily provide these remaining documents if the document owners are

9

unwilling to voluntarily provide them, the Court finds that this factor weighs in favor of transfer to the District of Massachusetts, where the document owners can be reached with a subpoena duces tecum if necessary.

### B.    Public-Interest Factors

Having determined that the plaintiffs' forum choice warrants little deference due to the lack of ties between the claim and the District of Columbia and that the other private-interest factors are neutral or favor transfer to the District of Massachusetts, the Court now considers the public-interest factors.  These factors include: (1) the proposed transferee district's familiarity with the governing law, (2) the relative congestion of the transferor and potential transferee courts, and (3) the local interest in adjudicating local controversies at home.  *Lentz*, 464 F. Supp. 2d at 37.  The Court finds that these factors also weigh in favor of transfer.

The first public-interest factor this Court considers is the transferee's familiarity with the governing laws.  Under the District of Columbia's choice of law analysis, the Court must analyze four factors in determining which state's substantive law will apply: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) where the relationship to the events is

10

centered.  *Herbert v. District of Columbia*, 808 A.2d 776, 779

(D.C. 2002) (citing Restatement (Second) of Conflict of Laws §

145 cmt. d (1971)).  This Court finds, and the plaintiffs do not

dispute,[2] that Massachusetts substantive law will likely apply in

this case because (1) the plaintiffs' injuries occurred in

Massachusetts when they were exposed to DES; (2) the conduct

causing the injuries occurred in Massachusetts, where the mother

purchased and ingested the DES; (3) at least two of the

plaintiffs are domiciled in Massachusetts, and a third resided

there for 34 years; and (4) the relationship to the DES exposure

and the resulting injury is centered in Massachusetts.

Because Massachusetts substantive law more than likely

applies to the plaintiffs' claims, this Court finds that a

Massachusetts court is in the best position to adjudicate this

case.  Although the plaintiff asserts that products liability

---

[2] The plaintiffs' statement that "[a] District of Columbia
court is in the best position to interpret the District of
Columbia statute of limitation" is misguided because the
Massachusetts statute of limitations will apply if the case is
transferred.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531
U.S. 497 (2001) (holding that a California statute of limitations
is procedural and not substantive law).  If there were any
difference between statutes of limitations for products liability
actions in the District of Columbia and Massachusetts, this fact
might influence whether the action should be transferred;
however, the statute of limitations would be the same – 3 years
from the date of discovery – regardless of whether this action is
adjudicated in the District of Columbia or Massachusetts.
*Compare Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203, 208-09
(D.D.C. 2005) *with In re Mass. Diet Drug Litig.*, 338 F. Supp. 2d
198, 203 (D. Mass. 2004).

laws in Massachusetts and District of Columbia are "nearly identical," Pls.' Opp'n at 8, the products liability laws of the two jurisdictions are in fact markedly different. For example, while Massachusetts is a modified comparative negligence jurisdiction, *see* Mass. Gen. Laws Ann. ch. 231, § 85, the District of Columbia is a contributory negligence jurisdiction that does not recognize comparative negligence, *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 336 n.3 (D.C. 1998) (en banc).

The Court now turns to the relative docket congestion of the transferor and potential transferee courts. The plaintiff correctly notes that Magistrate Judge Kay, to whom this case has been referred, is extremely skilled at mediating DES claims and fostering settlement. However, it would be unfair to burden this Court's resources with the plaintiffs' claims given the lack of connection between this lawsuit and the District of Columbia. *See Abramson v. Eli Lilly & Co.*, No. 03-2541 (JDB), slip op. at 4-5 (D.D.C. Oct. 25, 2004) ("[G]iven the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge Kay, with this case."). Furthermore, the District of Massachusetts is fully capable of adjudicating these plaintiffs' claims because that district has had exposure to DES litigation; at least five DES cases have been

12

transferred there from this district. *See Thompson v. Eli Lilly & Co.*, No. 03-122 (RBW), slip op. at n.4 (D.D.C. June 27, 2003). Therefore, assuming that the court calendar for the District of Massachusetts is no more congested than this district's calendar, this factor weighs in favor of transfer.

The final factor this Court considers is the local interest in deciding local controversies. Because the plaintiffs' claims arose in Massachusetts, the District of Massachusetts has a local interest in deciding this controversy. Additionally, two of the plaintiffs are currently Massachusetts citizens (and a third plaintiff was allegedly exposed to DES while she was a Massachusetts citizen), and Massachusetts has an interest in adjudicating the claims of its own citizens under its own tort law. *See Lentz*, 464 F. Supp. 2d at 38 ("[The transferee district of] Maine has a greater interest than the District of Columbia in adjudicating the personal injury claims of Maine citizens under its own tort law."). Because there is a local interest in Massachusetts to decide this local controversy in that state, the Court finds that this factor weighs in favor of transfer.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that this case should be transferred to the United States District Court for the District of Massachusetts. Therefore, defendant's motion

13

to transfer is **GRANTED**.  An appropriate order accompanies this

opinion.

**Signed:    EMMET G. SULLIVAN**
**            UNITED STATES DISTRICT JUDGE**
**            June 1, 2007**

14

# Exhibit 6

## To
## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN ANNE LENTZ and<br>GERALD A. LENTZ, Jr.<br><br>            Plaintiffs,<br><br>    v.<br><br>ELI LILLY AND COMPANY,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)    Civil Action No. 06-1374 (ESH)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Anne and Gerald Lentz, who reside in Maine, filed this action in the

Superior Court for the District of Columbia for injuries associated with Mrs. Lentz's *in utero*

exposure to diethylstilbestrol ("DES"). Defendant Eli Lilly, an Indiana corporation, removed the

suit to this Court on the basis of diversity jurisdiction, and now moves to transfer it to the United

States District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a). Defendant

argues that transfer to the District of Maine would serve the interests of justice and the

convenience of the parties because the purchase and ingestion of DES by Mrs. Lentz's mother

occurred in Maine, and the relevant medical records, as well as the key fact witnesses --

including Mrs. Lentz's mother, the doctor who prescribed DES to Mrs. Lentz's mother, and the

doctors who diagnosed and treated Mrs. Lentz's alleged injuries -- are all located in Maine.

(Def. Mot. at 1-2.) Plaintiffs state that they will voluntarily produce the relevant medical records

and make the fact witnesses available for deposition so their live testimony will not be necessary.

They also argue, *inter alia*, that the District of Columbia is the more convenient forum for the

many expert witnesses that are likely to testify in this case, that it is the site of the "original

industry-wide promotion of DES," and that the interpretation of the District of Columbia's statute of limitations will be a central issue in the case. Finally, they assert that their choice of forum is entitled to deference. (Pl. Opp. at 1-6.)

The determination of whether an action should be transferred "is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," and grants the district court discretion to "adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). As both parties point out, there have been numerous transfer motions in DES cases before this Court over the years. Consistent with the fact-specific approach required for deciding motions to transfer under Section 1404(a), the disposition of these cases has varied according to the particular facts present in the case.

To succeed on a motion to transfer, defendant must first establish that the action could have been brought in the proposed transferee district, *i.e.*, the District of Maine. *DeLoach v. Philip Morris Co.,* 132 F. Supp. 2d 22, 24 (D.D.C. 2000). Second, it must "demonstrate that the balance of convenience of the parties and witnesses and the interest of justice are in their favor." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983). It is undisputed that this action could have been brought in the District of Maine. Therefore, it is only the second inquiry that requires examination.

-2-

In evaluating a motion to transfer pursuant to Section 1404(a), a court must weigh a number of private and public interest factors. *See Reiffin*, 104 F. Supp. 2d at 51-52. The relevant private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *See Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002) (citing *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

Applying these factors here, the Court finds that they weigh in favor of transfer to the District of Maine. Plaintiff does not dispute defendant's assertion that all of the fact witnesses who have been identified date, as well as both plaintiffs, reside in Maine. The subpoena power of the Maine court reaches all of those potential non-party witnesses, while this Court's does not. Plaintiffs' argument that the District of Columbia is more convenient for the likely expert witnesses is unavailing in comparison. While these potential expert witnesses, who by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so, are spread out across many states (*see* Pl. Opp. at 5), one single state -- Maine -- is apparently home to all essential fact witnesses. The relevant medical records are also located in Maine. Therefore, convenience of the witnesses and ease of access to the sources of proof both weigh in favor of transfer.

-3-

Maine, the site of the alleged prescription, purchase, and ingestion of DES by Mrs. Lentz's mother, is also the location where plaintiffs' specific claim arose, which further weighs in favor of transfer. Plaintiffs argue that the District of Columbia was the "place of the industry approval efforts for DES" and suggest, without identifying any, that an "army" of DES lobbyists and salespeople who may be potential witnesses reside within this Court's subpoena power. (Pl. Opp. at 6.) However, as Judge Walton noted in another recent DES case, these contacts, which are not directly related to this particular case, do not tip the balance in favor of maintaining this case in the District of Columbia, particularly when compared to the nucleus of facts, witnesses, and documents located in Maine. *See Thompson v. Eli Lilly*, No. 03-122, at 5 (D.D.C. June 27, 2003).

In addition to the private interest factors that decidedly weigh in favor of transfer, the public interest factors also favor transfer. Though the issue has not been decided, it appears that while the D.C. statute of limitations may apply, Maine substantive law will govern this case.[1] And as numerous courts have recognized, the "interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996); *see Trout*, 944 F. Supp. at 19. Similarly, Maine has a greater interest than the District of Columbia in adjudicating the personal injury claims of Maine citizens under its own tort law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

---

[1]The relevant factors to be considered in the District of Columbia's choice of law analysis would seem to favor the application of Maine substantive law in this case. *See Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.D.C. 1997); *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002).

-4-

In contrast, the sole factor that weighs against transfer is the plaintiffs' choice of forum. Ordinarily, a plaintiff's choice of forum is entitled to considerable deference. *See Piper Aircraft*, 454 U.S. at 255; *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991). However, that deference is minimized where "the plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter,"and "the defendant['s] burden in a motion to transfer decreases when the plaintiffs' choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (internal quotation marks and citations omitted); *see Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004); *Airport Working Group*, 226 F. Supp. 2d at 230. The deference owed to plaintiffs' choice of forum is further diminished where "transfer is sought to the forum where plaintiffs reside." *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983); *see Payne v. Giant of Maryland, L.L.C.*, 2006 WL 1793303, at *4 (D.D.C. June 28, 2006); *Turner & Newall, P.L.C. v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1310 (D.D.C. 1987) (noting that the presumption against disturbing plaintiff's choice of forum "may switch to defendants' favor in the District of Columbia when neither party resides in the chosen forum and the cause of action arises elsewhere"). The District of Columbia's ties to this case are minimal, while Maine's interests are considerable, as the plaintiffs reside there, the injuries at issue occurred in Maine, and the doctors who prescribed DES to Mrs. Lentz's mother practiced in Maine. The plaintiff's choice of forum therefore carries little, if any, weight and is insufficient to overcome the factors that weigh in favor of transfer.

-5-

Accordingly, it is hereby **ORDERED** that defendant's motion to transfer [Dkt. # 17] is

**GRANTED**. The Clerk of the Court is ordered to transfer this case to the United States District

Court for the District of Maine.

 **SO ORDERED**.

            /s/
          ELLEN SEGAL HUVELLE
          United States District Judge

Date: December 18, 2006

-6-

# Exhibit 7

## To

## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 2461817 (E.D.Tex.)
**(Cite as: 2007 WL 2461817 (E.D.Tex.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Beaumont Division.
JAMES J. FLANAGAN SHIPPING CORPORA-
TION, Plaintiff,
v.
MEDITERRANEAN SHIPPING COMPANY, S.A.
and Mediterranean Shipping Company, USA,
Defendants.
**Civil Action No. 1:07-CV-337.**

Aug. 27, 2007.
James Eloi Doyle, Christopher Neil Hackerman,
Peter Boyd Wells, IV, Doyle Restrepo Harvin &
Robbins, James Martin Davin, Julian & Seele, Hou-
ston, TX, Jon B Burmeister, Moore Landrey, Beau-
mont, TX, for Plaintiff.

Michael Kennedy Bell, Robert J. Ryniker, Bell
Ryniker Letourneau & Nork, Houston, TX, for De-
fendants.

**ORDER DENYING DEFENDANTS' MOTION
TO TRANSFER VENUE**
RON CLARK, United States District Judge.

**\*1** Defendants ask the court to consider a discre-
tionary transfer of venue for the convenience of the
parties and witnesses to the United States District
Court for the Southern District of Texas, pursuant
to 28 U.S.C. § 1404(a) **[Doc. # 14].** That statute
states that "[f]or the convenience of parties and wit-
nesses, in the interest of justice, a district court may
transfer any civil action to any other district or divi-
sion where it might have been brought." 28 U.S.C.
§ 1404(a). The court finds that a transfer is not war-
ranted in this case.

I. BACKGROUND
On or about March 28, 2007, Plaintiff filed this ac-
tion against Defendants for breach of contract in the
172nd District Court in Jefferson County, Texas. In
his complaint, Plaintiff alleged that Defendants

failed to pay for certain stevedoring services
Plaintiff rendered pursuant to a contract between
the parties. Service of process occurred on May 11,
2007.

On May 31, 2007, Defendants jointly filed a Notice
of Removal in this court pursuant to 28 U.S.C. §
1446(b). In their Notice of Removal, Defendants
did not include a copy of process served upon them
in the state action. On June 14, 2007, Plaintiff
timely filed a Motion to Remand, asserting Defend-
ants' failure to include the copy of the service of
process. In an order entered August 15, 2007, this
court entered an Order denying Plaintiff's motion.

On July 9, 2007, Defendants filed a Motion to
Transfer Venue to the United States District Court
for the Southern District of Texas pursuant to 28
U.S.C. § 1404(a).

II. STANDARD OF REVIEW
The goal of § 1404(a) "is to prevent waste of time,
energy, and money and to protect litigants, wit-
nesses, and the public against unnecessary incon-
venience and expense." *Van Dusen v. Barrack,* 376
U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945
(1964). The first determination to be made under
Section 1404(a) is whether the claim could have
been filed in the judicial district to which transfer is
sought. *In re Volkswagen AG,* 371 F.3d 201, 203
(5th Cir.2004). If so, the court then examines the
convenience of the parties and the witnesses. *Id.*
This determination involves examining several
private and public interest factors, none of which
are given dispositve weight individually. *Id.* The
movant bears the burden of proof in demonstrating
that a transfer is warranted. *See Time, Inc. v. Man-
ning,* 366 F.2d 690, 698 (5th Cir.1966). The
quantum of proof necessary has sometimes been
described to be as stringent as "clear and convin-
cing evidence." *TV-3, Inc. v. Royal Ins. Co. of
America,* 28 F.Supp.2d 407, 411 (E.D.Tex.1998).
Consequently, Defendants must carry a heavy bur-
den to prove that these factors clearly favor such a
change.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

III. DISCUSSION OF TRANSFER FACTORS

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.' " *In re Horseshoe Entm't,* 337 F.3d 429, 433 (5th Cir.2003).

**\*2** Under 28 U.S.C. § 1391(a)(2), a civil action based on diversity jurisdiction may be brought in any district where a "substantial part of the events or omissions giving rise to the claim occurred ..." Where, as here, the action involves breach of contract, federal courts should consider, "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred. *PI, Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, (S.D.N.Y.1995); *see also Am. Carpet Mills v. Gunny Corp.,* 649 F.2d 1056, 1059 (5th Cir.1981) (in a breach of contract action, "venue is proper at the place of performance.").

In this case, the contract at issue was negotiated on behalf of Plaintiff by Tom Flanagan from his office in Beaumont, TX, which lies in the Eastern District. Mr. Flanagan states that he was the primary contact with Defendants for the purposes of dealing with issues regarding that contract and that disputed invoices, for which the failure of Defendants to pay forms the basis of Plaintiff's breach of contract claim, were sent to Beaumont. *See* Ex. A, Affidavit of Tom Flanagan, Plaintiff's Response to Defendant's Motion to Transfer Venue, ¶¶ 5, 7; Ex. A-1, Letter from John Mullaney to Tom Flanagan, Plaintiff's Response to Defendant's Motion to Change Venue. At the same time, the stevedoring work Plaintiff contracted with Defendant to do took place entirely in Barbours Cut, TX, which is located in the Southern District. *See* Ex. 1, Affidavit of Chris Parvin, Defendants' Motion to Transfer Venue, ¶ 3. Since Plaintiff's performance of the contract occurred entirely within the Southern District, the court finds that a substantial part of the events surrounding this claim occurred in that District, making venue in the Southern District in the first instance appropriate under § 1391(a)(2). With this

threshold issue resolved, the court's analysis turns to the ten factors governing this Circuit's § 1404(a) analysis.

In determining whether an action should be transferred under § 1404(a), the court must consider several private and public interest factors. *In re Volkswagen AG,* 371 F.3d at 203. The private interest factors include: (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and availability of compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *See Dominguez-Cota v. Cooper Tire & Rubber Co.,* 396 F.3d 650, 653 (5th Cir.2005); 17 James Wm. Moore et al., Moore's Federal Practice § § 111.13, *et seq.* (3d ed.1997). The public interest factors consist of (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *See Dominguez-Cota,* 396 F.3d at 653-54.

**A. Private Interest Factors**

*1. Plaintiff's Choice of Forum*

**\*3** As a general rule, the plaintiff's choice of forum is entitled to substantial deference. *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989). However, the significant weight given to a plaintiff's choice of forum is diminished when the plaintiff does not reside in his chosen forum and no operative facts occurred within the forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Plaintiff's choice of forum alone is neither conclusive nor determinative. *In re Horseshoe Entm't,* 337 F.3d at 434.

In this case, Plaintiff chose Beaumont as his forum. Plaintiff has demonstrated that its main office is located in Beaumont and that significant negotiations and correspondence concerning the contract at issue in this case took place from that office. *See*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Ex. A, Affidavit of Tom Flanagan, Plaintiff's Response to Defendant's Motion to Transfer Venue, ¶¶ 4-5, 7. Under these circumstances, the court finds that it cannot lightly disregard Plaintiff's choice of forum.

*2. The Convenience of the Parties and Material Witnesses*

The convenience of the witnesses is an important factor in deciding whether a case should be transferred pursuant to § 1404(a). It can obviously be a convenience to have the trial where a majority of the witnesses are located. However, evaluation of the convenience factors is not a battle of numbers, but should consider the content and quality, rather than quantity of their testimony. *Young v. Armstrong World Industries, Inc.,* 601 F.Supp. 399, 401- 2 (N.D.Tex.1984) *citing* 15 Wright, Miller, and Cooper, Fed. Prac. & Proc. § 3851 (1976). "[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993). "Moreover, it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *State Street Capital Corp. v. Dente,* 855 F.Supp. 192, 198 (S.D.Tex.1994). Whether transfer is sought for key party or non-party witnesses, the moving party must make more than a general allegation that the key witnesses are inconveniently located. *Dupre,* 810 F.Supp. at 825. The moving party must specifically identify key witnesses and outline the substance of their testimony. *Id.*

Here, Defendants state that virtually all the relevant fact witnesses in this case are employed and/or reside in the Southern District. However, Defendants fail to specifically identify these witnesses beyond the general categories of "stevedore personnel," and "longshoremen, truck drivers, supervisors, employees," and provide no guidance as to the testimony these witnesses might provide. In addition, the category of witnesses Defendants identify presumably work at Barbours Cut, the location

where Plaintiff's performance occurred. Since Barbours Cut is located in Laporte, TX, about seventy-five (75) miles from Beaumont, the inconvenience for these witnesses would be minimal. On balance, the court finds that this factor does not weigh in favor of transfer.

*3. Place of the Alleged Wrong*

**\*4** As discussed *supra,* the negotiation of the contract at issue in this case took place on Plaintiff's end from its office in Beaumont. Communications from Defendants concerning the contract and its alleged breach were directed to Plaintiff's Beaumont office. *See* Ex. A-1, Letter from John Mullaney to Tom Flanagan, Plaintiff's Response to Defendant's Motion to Change Venue. Although performance of the contract did take place in the Southern District (Barbours Cut), key events relating to contract formation and breach took place in Eastern District. The court finds that this factor weighs slightly against transfer.

*4. The Cost of Obtaining the Attendance of Witnesses and Availability of Compulsory Process*

With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated. This is especially true for witnesses whose credibility cannot seriously be challenged, or a witness with background information needed to establish a basis for more crucial testimony by an expert.

As already discussed, Defendants have failed to specifically identify any witnesses who might have to travel to this District for trial. In any case, the cost of obtaining the attendance of witnesses from the general class Defendants have identified, and whom Defendants state reside in or around the Port of Houston, is negligible. The court finds this factor weighs against transfer.

*5. The Accessibility and Location of Sources of Proof*

The accessibility and location of sources of proof weigh only slightly in this court's transfer analysis.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 2461817 (E.D.Tex.)
**(Cite as: 2007 WL 2461817 (E.D.Tex.))**

These factors have been given decreasing emphasis due to advances in copying technology and information storage and the ease of transportation and communication.

As Plaintiff has stated that its Beaumont office is its principal place of business, documents and other evidence it will present in this case are likely located here in the Eastern District. Defendants have stated that their documents relevant to the case at issue are located in Houston. The court finds that this factor is neutral, but again notes the limited importance of the location of documents in its overall analysis.

### 6. The Possibility of Delay and Prejudice if Transfer is Granted

The court has already entered its Order Governing Proceedings in this case. In addition, the parties have conducted the Rule 26(f) Scheduling Conference, filed initial disclosures, and produced documents. Given the standard timetable used in the Eastern District and the fact that the parties have already completed several of these events, a delay caused by transferring the case to another court would seem inevitable. As Plaintiff points out, the number of pending cases in the Southern District is on average about three times that of the Eastern District. *See* Ex. B, Judicial Caseload Profile, Plaintiff's Response to Defendant's Motion to Change Venue. Transferring the case to a venue with a higher caseload would only invite delay. The court therefore finds that this factor weighs against transfer.

### B. Public Interest Factors

#### 1. Administrative Difficulties Caused by Court Congestion

**\*5** Defendant offered no evidence to suggest that this case would present any administrative difficulty and that a timely resolution could not be reached. The court concludes that this factor does not weigh in favor of transfer.

#### 2. Local Interest in Adjudicating Local Disputes

Given that some of the alleged actions giving rise to this suit occurred in Beaumont, and Plaintiff has its principal place of business in Beaumont, there exists some local interest in adjudicating this dispute. This factor weighs in favor of not transferring the case.

#### 3. The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Because the court finds that the citizens of the Eastern District of Texas have an interest in adjudicating this suit, it follows that the jury pool in this District will not be unduly burdened in deciding this matter. Consequently, this factor does not weigh in favor of transfer.

#### 4. The Avoidance of Unnecessary Problems in Conflict of Laws

This is not a problem where, as in this case, the two courts in question are located within the same state. This factor is neutral, and does not weigh in favor of or against transfer.

### IV. DEFENDANTS' CONTENTION THAT VENUE WAS IMPROPER IN THE FIRST INSTANCE

While Defendants have moved to transfer venue pursuant to 28 U.S.C § 1404(a) [FN1], they also argue that this Court was the improper venue in the first instance. Defendants previously removed the action to this District from state court in Jefferson County, Texas, pursuant to 28 U.S.C. § 1446(a), but argue that venue in the originally filed state court action was improper under Texas state law.

> FN1. Since Defendants argue that the Eastern District is the improper venue for this case, the court questions Defendants' choice of removal under 28 U.S.C. § 1404(a), which "presupposes that the action has been brought in a proper venue ..." 28 U.S.C. § 1404, Commentary on 1996 Amendment of Section 1404, rather than Section 1406, which is "addressed to a case in which venue has been laid in an improper district." 28 U.S.C. § 1406, Com-

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

mentary on 1996 Amendment of Section 1406.

Venue in the originally filed state court action was governed by Texas Civil Practice and Remedies Code § 15.002(a). Section 15.002(a)(1) provides that lawsuits shall be brought "in the county in which all or a substantial part of the events or omissions giving rise to the claims occurred." The state statute was amended in 1995 and is patterned after the federal statute governing venue in diversity cases, 28 U.S.C. § 1391. Texas courts have therefore interpreted the state statute in line with Section 1391, finding that under the federal statute "there may be more than one district in which a substantial party of the events giving rise to a claim occurred, allowing a choice of more than one proper venue for a certain cause of action." *S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 459 (Tex.App.2000). The state courts have applied the federal construction to the state statute, finding that in breach of contract cases, contract formation, performance, and breach are all key parts of the cause of action, which "accrue[s] in any county where one of these events occurred." *Id.*

Therefore, Plaintiff's original choice of Jefferson County as their state court venue was proper so long as a substantial part of the acts giving rise to Plaintiff's claims occurred there. As discussed *supra,* Plaintiff's president, Tom Flanagan, conducted business with Defendant from his Beaumont office throughout the parties' relationship. He also negotiated the contract at issue in this case and communicated with Defendants regarding the contract's performance and resulting disputes concerning them from Beaumont. *See* Ex. A, Affidavit of Tom Flanagan, ¶¶ 4-5 [Doc. # 18].

*6 Since Plaintiff's original choice of state court venue was proper, the court finds Defendants' argument that this District is an improper venue in the first instance to be without merit.

### V. CONCLUSION
On balance, neither the "convenience factors" nor the "public interest" factors weigh in favor of trans-

fer. Plaintiff's choice of forum, therefore, will not be disturbed.

IT IS THEREFORE ORDERED that Defendant's Motion to Transfer Venue **[Doc. # 14]** is **DENIED.**

So **ORDERED.**

Slip Copy, 2007 WL 2461817 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# Exhibit 8

To
Affidavit of John C. Coots in Support of
Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 3375381 (E.D.Tex.)
**(Cite as: 2006 WL 3375381 (E.D.Tex.))**

C
Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Tyler Division.
Leonard David STEVENS, Jr., Plaintiff,
v.
GENERAL MOTORS CORPORATION, Defendant.
**No. 6:06-CV-255.**

Nov. 21, 2006.
Andrew Galen Counts, E. Todd Tracy, Tracy & Carboy, Dallas, TX, for Plaintiff.

J. Karl Viehman, Holly Joy Draper, Jose M. Luzarraga, Hartline Dacus Barger Dreyer & Kern, Dallas, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER ON MOTION TO TRANSFER VENUE*
MICHAEL H. SCHNEIDER, District Judge.

\*1 Defendant General Motors moves the Court to transfer venue for this case to the Dallas Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Having considered the Defendant's Motion and the Plaintiff's Response, it is the opinion of this court that the Defendant's motion should be denied for the reasons set out below.

### I. Background
This is a personal injury case that arises out of a one-vehicle automobile accident that occurred on February 13, 2006, when Plaintiff was driving a 2000 Chevrolet S 10 traveling eastbound in the right lane on U.S. Hwy 80, four miles west of Terrell, Kaufman County, Texas. Plaintiff states that the accident occurred when he hit a slick spot in the road, lost control of the vehicle, and it ultimately rolled over. Plaintiff alleges he was injured in the accident, and that defects in the 2000 Chevrolet S 10 caused his injuries and damages.

Defendant General Motors Corporation ("GM") argues that none of the relevant witnesses in this case reside in the Eastern District of Texas, and that it would be more convenient for the parties to try this case in the Dallas Division of the Northern District of Texas. The Plaintiff contests the Defendant's motion.

### II. Analysis
Title 28 U.S.C. § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where [the case] might have been brought." 28 U.S.C. § 1404(a). It is within the sound discretion of the court to decide whether to transfer venue under § 1404. *See* 28 U.S.C. § 1404(b); *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988). "The moving party bears the burden of demonstrating why the forum should be changed and the burden is a strong one as to proving that the convenience factors clearly favor such a change." *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001).

Under 28 U.S.C. § 1404(a), the Court must first consider where this case "might have been brought." 28 U.S.C. § 1404(a). In diversity cases, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, [or] (2) a judicial district in which a substantial part of the events or omissions occurred, or a substantial part of property that is subject to the action is situated." 28 U.S.C. § 1391(a). Though it is undisputed that the Northern District of Texas is a proper venue under § 1391(a)(2) because the events that gave rise to the Plaintiff's claim occurred in the Northern District of Texas, General Motors does not contest wether venue is also proper under § 1391 in the Eastern District of Texas. Indeed, the defendant admits that it does business in Texas. [FN1] Accordingly, the Court assumes that this action "might have been brought" in either the Northern District or the Eastern District of Texas.

FN1. Venue is proper in the Eastern Dis-

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3375381 (E.D.Tex.)
(Cite as: 2006 WL 3375381 (E.D.Tex.))

trict of Texas if General Motors is found to reside in this district. *See* 28 U.S.C. § 1391(a)(1). Under 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." General Motors does not argue that venue is improper in or that GM is not subject to personal jurisdiction in the Eastern District of Texas. Indeed, GM has admitted that it does business in the state of Texas. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.2000) (holding that the Texas long-arm statute's scope extends to the limits of due process); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that personal jurisdiction is consistent with due process if defendant has sufficient "minimum contacts" with forum). Absent any argument or evidence that this court lacks personal jurisdiction over General Motors, the Court assumes that GM resides in this district and venue in the Eastern District of Texas is proper. *See* 28 U.S.C. § 1391(a).

**\*2** The court must next consider whether a transfer is warranted "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). In considering whether transfer under § 1404 is appropriate, courts generally balance (a) the convenience of the litigants and (b) the public interests in the fair and efficient administration of justice. *Hanby*, 144 F.Supp.2d at 676 (citing *Robertson v. Kiamichi RR Co., L.L.C.*, 42 F.Supp.2d 651, 655 (E.D.Tex.1999)); *Singleton v. Volkswagen of America, Inc.*, No. 2:06-CV-222, 2006 WL 2634768, at \*1 (E.D.Tex. Sept. 12, 2006). Convenience factors often include: (1) plaintiff's choice of forum; (2) convenience of parties and witnesses; (3) place of the alleged wrong; (4) location of counsel; (5) cost of obtaining the attendance of witnesses; (6) accessibility and location of sources of proof; and (7) possibility of delay and prejudice if transfer is granted. *See Hanby*, 14 F.Supp.2d at 676-77. Public interest factors often

include: (1) administrative difficulties caused by court congestion; (2) local interest in adjudicating local disputes; (3) unfairness of burdening citizens in an unrelated forum with jury duty; and (4) avoidance of unnecessary problems in conflict of laws. *See id.* at 677.

To begin, the Court notes that the "[p]laintiff's choice of forum is ordinarily given great deference unless the facts of the case clearly militate for trial in an alternative forum." *Emrick v. Calcasieu Kennel Club, Inc.*, 800 F.Supp. 482, 484 (E.D.Tex.1992). In this case, the convenience factors do not weigh heavily in favor of transfer. Though the location of events giving rise to the suit occurred outside of the Eastern District of Texas, the Defendant's argument that this lawsuit "has no reasonable relation to the Tyler Division of the Eastern District of Texas" is not entirely accurate. Because this is a products liability case, the complaint is about a defective product, and not just an individual automobile accident. As such, the subject matter is as of much interest to citizens of this district as it is to those of any other district where the Defendant's vehicles are sold. *See Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 776-77 (E.D.Tex.2000). What is more, GM has not argued that the vehicle at issue was designed or manufactured in the Northern District of Texas--indeed, GM has not stated *where* the vehicle was designed or manufactured. *See id.* (observing that "location of the *accident* revealing the allegedly defective product is a red herring for transfer analysis in cases where the plaintiff is suing for the allegedly defective *design and manufacture* of the product"). Finally, to the extent that the location of the alleged wrong impacts the parties' ability to gain access to sources of proof, the added burden of transporting evidence from locations in Terrell or Dallas to court in Tyler rather than Dallas is negligible. Accordingly, factors relating to the location of the alleged wrong do not weigh in favor of transfer.

**\*3** As for the convenience of parties and witnesses, GM argues that every potential fact witness in this case either resides or works in a county within the Dallas Division of the Northern District. GM has

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3375381 (E.D.Tex.)
**(Cite as: 2006 WL 3375381 (E.D.Tex.))**

provided affidavits of two individuals GM identifies as key witnesses--the officer responsible for investigating the traffic accident and a Terrell resident who was the first to arrive on the scene of the accident--both of whom state that testifying in Tyler would be inconvenient. The precise nature of their inconvenience, however, is unclear from the witnesses' affidavits, and as such it is difficult for the Court to determine whether the inconvenience includes any factor other than distance. [FN2] *See Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.,* 331 F.Supp.2d 567, 576 (E.D.Tex.2004) (finding that transfer not warranted for witness convenience where witnesses offered no explanation of how they would be inconvenienced).

> FN2. GM's Motion fails to specify how much farther Terrell is from Tyler than from Dallas. The Plaintiff's Response, however, indicates that Terrell is only forty miles closer to Dallas than it is to Tyler.

GM also identifies other possible witnesses who may be called, including a tow-truck driver and medical personnel. "If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied." *Young v. Armstrong World Industries, Inc.,* 601 F.Supp. 399, 401-02 (N.D.Tex.1984) (citing 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE ¶ 3851 at 270-71 (1976)). Here, GM has not stated why these witnesses testimony is necessary or what their testimony will likely be, much less why the appearance of any of these individuals will be necessary at trial. *See Z-Tel Commc'ns,* 331 F.Supp.2d at 576 (vague description of the witnesses' potential testimony unhelpful in determining which witnesses should receive attention as to possible burdens in traveling to forum). On the whole, the convenience factors relating to the convenience of witnesses and parties do not warrant transfer.

As to the public interest factors, court congestion is not a substantial problem for this court, thanks in part to this district's broad discovery rules and other factors that are conducive to a relatively speedy docket. Furthermore, due to the nature of this case--product liability--the citizens of this district have as keen an interest in the issues before this court as do citizens of the Northern District of Texas. Public interest factors do not, therefore, weigh in favor of transfer.

### III. Conclusion

For the above stated reasons, the Court finds that the Defendant's Motion to Transfer Venue should be, and hereby is, denied.

**It is SO ORDERED.**

Not Reported in F.Supp.2d, 2006 WL 3375381 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# Exhibit 9

To

## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

Slip Copy                                                                                      Page 1
Slip Copy, 2007 WL 3156254 (N.D.Ga.)
**(Cite as: 2007 WL 3156254 (N.D.Ga.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Georgia,
Atlanta Division.
TOMMY BAHAMA GROUP, INC., Plaintiff/
Counter-Plaintiff,
v.
THE WALKING COMPANY, Defendant/
Counter/Defendant
The Walking Company, Third Party Plaintiff
v.
Phoenix Footwear Group, Inc, Third Party Defend-
ant.
**Civil Action No. 1:07-CV-1402-ODE.**

Oct. 19, 2007.
Charlena L. Thorpe, Robert L. Lee, Ryan W. Kop-
pelman, Alston & Bird, LLP, Atlanta, GA, for
Plaintiff/Counter-Plaintiff.

Jacqueline A. Criswell, Tressler Soderstrom Malo-
ney & Priess, Chicago, IL, for Defendant.

Brian W. Kasell, Rod S. Berman, Jeffer, Mangels,
Butler & Marmaro, LLP, Los Angeles, CA, Jeffrey
Brickman, Lawrence K. Nodine, Robin L. Gentry,
Needle & Rosenberg, Atlanta, GA, for Defendant/
Counter/Defendant/Third Party Plaintiff.

Mark Alan Kelley, Kitchens Kelley Gaynes, At-
lanta, GA, Warren B. Rosenbaum, Woods Oviatt
Gilman, LLP, Rochester, NY, for Third Party De-
fendant.

*ORDER*
ORINDA D. EVANS, United States District Judge.

*1 This civil action is before the Court on Defend-
ant's, The Walking Company's, motion to transfer
this action to the United States District Court for
the Central District of California [# 21]. Plaintiff,
Tommy Bahama Group, Inc., opposes such a trans-
fer. For the reasons discussed below, the Court
finds that The Walking Company has met its bur-

den of showing that a transfer would best promote
the interests of justice and judicial administration.
Therefore, this action will be transferred to the
United States District Court for the Central District
of California.

I. *BACKGROUND*
Tommy Bahama Group Inc., ("Tommy Bahama") a
Delaware corporation, is in the business of design-
ing and marketing "upscale island-inspired men's
and women's apparel and accessories." (Pl.'s com-
plaint at 3). Tommy Bahama's principal place of
business is in Seattle, Washington. The Walking
Company ("TWC") is a footwear retailer, with
stores located around the country. TWC is a also a
Delaware corporation, but its principal place of
business is located in Westlake, California.

Tommy Bahama enters into license agreements to
promote the sale of its trademarked goods and trade
dress. One such authorized licensee is Phoenix
Footwear Group, Inc. ("Phoenix Footwear");
Phoenix Footwear is the exclusive licensee for
Tommy Bahama brand footwear, and a Delaware
corporation, with its principal place of business in
Carlsbad, California. Phoenix Footwear entered in-
to an agreement with TWC around November 2006
for TWC to become a retail distributor of Tommy
Bahama brand footwear. Under the agreement
between Phoenix Footwear and TWC, Phoenix
Footwear provided TWC with advertising materials
to promote the Tommy Bahama brand. TWC, ac-
cordingly, used these advertisements in its stores,
catalogs and website.

Tommy Bahama authorized TWC to use its Spring
2007 advertising and promotional materials, but
claims that it did so "only to the extent that [TWC]
used such materials solely in the promotion of
Plaintiff's Tommy Bahama products." (Pl.'s com-
plaint at 9). Tommy Bahama claims that TWC used
Tommy Bahama's advertisements in an impermiss-
ible and deceptive manner--namely, by advertising
TWC's own products and services. TWC contends
that Phoenix Footwear had specifically approved

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 3156254 (N.D.Ga.)
(Cite as: 2007 WL 3156254 (N.D.Ga.))

the manner in which TWC used Tommy Bahama's advertisements.

Tommy Bahama filed suit against TWC on June 15, 2007, seeking both injunctive relief and damages. In its complaint, Tommy Bahama alleged claims for false advertising, trade dress infringement, unfair competition, unfair and deceptive trade practices, and conversion. A few days later, Tommy Bahama also filed a motion for a temporary restraining order and permanent injunction to enjoin TWC from the allegedly unlawful conduct set forth in the complaint. On June 29, 2007, the Court entered an order denying Plaintiff's request for a temporary restraining order, and deferred the remaining aspects of the Plaintiff's motion. On July 10, 2007, TWC responded to the complaint and filed a counterclaim against Tommy Bahama, seeking--among other things--a declaration that TWC did not violate Tommy Bahama's alleged trade dress rights. That same day, TWC also filed a third party complaint against Phoenix Footwear. It is TWC's motion to transfer the case to the U.S. District Court for the Central District of California, filed on July 12, 2007, that is the subject of this order.

*2 TWC moves the Court to transfer the action, under 28 U.S.C. § 1404(a), to the Central District of California for the convenience of the parties, the convenience of the witnesses, and in the interests of justice. TWC submits the following facts in support of its motion to transfer venue: (1) none of the parties to the instant action reside in Georgia; (2) all of TWC's key witnesses reside and work in California; (3) the Phoenix Footwear witnesses, with knowledge of the matters at issue, also reside in California (with the exception of Dan Butler, who resides in Seattle, Washington); (4) most, if not all, of the documents relating to this action are located in Westlake Village and Santa Barbara, California; (5) any documents possessed by Phoenix Footwear are likely located in its Carlsbad, California headquarters.

In response, Tommy Bahama opposes transferring the action to California for the following reasons: (1) Tommy Bahama's parent company, Oxford In-

dustries, Inc. ("Oxford") is headquartered in Atlanta, and thus Tommy Bahama claims to reside in Georgia by virtue of this relationship; (2) the alleged wrongdoing occurred in this forum; (3) many of Tommy Bahama's witnesses reside in Atlanta, with others residing in Washington state and New York state; (4) "TWC has failed to establish that many of its witnesses are 'key witnesses,' and that their testimony is necessary or cannot be presented via deposition;" (Pl.'s Response in Opp'n to Transfer at 11); (5) TWC failed to show that it would be substantially more convenient for the parties to produce documents in California; (6) a transfer would shift the inconvenience from TWC to Tommy Bahama; (7) TWC failed to show that the interest of justice motivates transfer; and (8) TWC's own action of availing itself of the forum rebuts any allegations of inconvenience.

## II. DISCUSSION

Initially, the Court must determine whether the present action could have been brought in the proposed transfer venue. Here, the parties agree that venue would have been proper in either the Northern District of Georgia or the Central District of California. The Court concurs in this assessment, and therefore turns to the central issue in this case: whether the Central District of California would be a more convenient forum in which to litigate than the Northern District of Georgia.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Generally, the plaintiff's choice of forum is given great deference when considering a motion to transfer. *Haworth, Inc. v. Herman Miller, Inc.,* 821 F.Supp. 1476, 1479 (N.D.Ga.1992). That said, it has also been noted that "[t]he plaintiff's statutory privilege of choosing his forum is a factor, held in varying degrees of esteem, to be weighed against other factors in determining the convenient forum. That factor is not controlling. Ultimately the trial judge must use his [or her] discretion." *Garner v. Wolfinbarger,* 433 F.2d 117, 119 (5th Cir.1970) (internal citations

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

omitted) [FN1]; *see also Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). For example, "where the forum is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." *Haworth*, 821 F.Supp. at 1479. When considering a motion to transfer, trial judges are afforded considerable discretion in weighing the three criteria under 28 U.S.C. § 1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *See England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1519 (11th Cir.1988).

> FN1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the United States Court of Appeals for the Eleventh Circuit adopted decisions of the former Fifth Circuit--as of September 30, 1981--as binding precedent on all federal courts within the Eleventh Circuit.

A. *Convenience of the Parties*

**\*3** Here, none of the parties are incorporated in Georgia, nor do any of the parties operate their principal places of business in Georgia. All of the parties are incorporated in the state of Delaware, and all of their principal places of business are located on the West Coast of the United States--namely, in California and Washington. As the court noted in *Ramsey v. Fox News Network, LLC*, 323 F.Supp.2d 1352, 1355 (N.D.Ga.2004), "[i]t is significant that none of the parties in this case currently reside in Georgia." Tommy Bahama attempts to claim residence in Georgia because its parent company, Oxford Industries, Inc., ("Oxford") is headquartered in Atlanta. Tommy Bahama's bald assertion of "Georgia residence" ignores the corporate form, and the fact that it is neither headquartered or incorporated in Georgia. While the Court recognizes that Tommy Bahama may rely upon Oxford for legal and executive support, the convenience of counsel is not a factor weighed in the Court's determination. *Ramsey*, 323 F.Supp.2d at 1356. TWC's connections to California significantly outweigh Tommy Bahama's marginal connec-

tion to Georgia.

B. *Convenience of the Witnesses*

The convenience of the witnesses is another significant consideration in the determination of whether to transfer an action under 28 U.S.C. § 1404(a). As the court in *Ramsey* pointed out, non-party witnesses and "key witnesses" with information regarding the defendant's liability weigh heavily in the balance. 323 F.Supp.2d at 1356-57. Here, TWC has satisfied its burden of showing that many of its key witnesses reside and work in California, and that transferring venue to California would be significantly more convenient for those witnesses. The Court's finding is not based on a "numbers-game" of which party could cite to more witnesses, but rather on the determination that the witnesses with knowledge of the events preceding TWC's alleged wrongdoing reside in California with the exception of Dan Butler, who works out of Seattle, Washington. The Court is also mindful of the fact that TWC has a small executive staff, and requiring these witnesses to travel to Georgia for a trial would significantly disrupt the company's operations. While Tommy Bahama refers to its own witnesses who reside in Georgia, New York, and Washington, the Court finds that--on the whole--the witnesses who will shed light on TWC's liability reside in California.

C. *Interests of Justice*

Finally, courts have enumerated several factors to consider when assessing whether the interests of justice counsel in favor of venue transfer, "Access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view, and all other practical problems that make trial of a case easy, expeditious and inexpensive," are to be considered. *Moore v. McKibbon Bros., Inc.*, 41 F.Supp.2d 1350, 1357 (N.D.Ga.1998) (internal quotations and citations omitted). Here, the interests of justice are best served by transferring the case to the Central District of California. TWC's documentary evidence, including documents related to the marketing and development of the allegedly tor-

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 3156254 (N.D.Ga.)
(Cite as: 2007 WL 3156254 (N.D.Ga.))

tious promotional materials, are located in California. Similarly, the core of the action itself arises out of these materials that were discussed and created in California. Accordingly, Tommy Bahama's argument that TWC's allegedly illegal conduct in Georgia does not weigh heavily in favor of maintaining the action in this district. Given that TWC has retail stores across the nation, and the allegedly wrongful conduct occurred in all of those places where the advertisements were displayed, the Court does not find that Georgia has a strong connection to this case. Having considered both parties' arguments for and against transfer, the Court finds that this case should be transferred to California in the interests of justice.

### III. CONCLUSION

*4 In short, the Court finds that transferring the action to the Central District of California would best serve the policy behind 28 U.S.C. § 1404(a), and would not merely shift inconvenience from one party to another. For the reasons outlined above, Defendant, The Walking Company's motion to transfer venue to the Central District of California [# 21] is GRANTED.

SO ORDERED, this *18* day of October, 2007.

Slip Copy, 2007 WL 3156254 (N.D.Ga.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# Exhibit 10

To

## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Rise Bausch, et al. v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 07-cv-01362-RJL

Slip Copy                                                                Page 1
Slip Copy, 2007 WL 2713357 (N.D.Ill.)
(Cite as: 2007 WL 2713357 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Luis F. JUAREZ, Plaintiff,
v.
NATIONAL RAILROAD PASSENGER COR-
PORATION, d/b/a Amtrak, a Corporation,
Defendant.
No. 06 C 3681.

Sept. 12, 2007.

David R. Jones, Pratt & Tobin, P.C., East Alton, IL,
William Briskin Kohn, Law Offices of William B.
Kohn, Chicago, IL, for Plaintiff.

Susan Kay Laing, Aaron P. Ryan, Anderson, Rasor
& Partners, LLP, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

JOHN W. DARRAH, United States District Court
Judge.

*1 Plaintiff, Luis F. Juarez, filed suit, alleging viol-
ation of the Federal Employers' Liability Act
("FELA"), against National Railroad Passenger
Corporation, d/b/a Amtrak ("Amtrak"). Currently
before the Court is Amtrak's Motion to Transfer
pursuant to 28 U.S.C. § 1404(a).

**BACKGROUND**

A reading of the Complaint and other materials
submitted by the parties pursuant to Amtrak's mo-
tion supports the following summary of the alleged
operative conduct of the parties.

Juarez was employed by Amtrak as a utility worker
on and prior to January 5, 2005. On that date,
Juarez was aboard an Amtrak train, traveling from
Chicago, Illinois to Los Angeles, California. He
was injured, while in the course of his employment,
when the train stopped suddenly and without warn-
ing near Mendota, Illinois. Plaintiff detrained in
Kansas City, Missouri, following the incident, to
receive medical treatment. Negligence on the part

of the train's crew is not the suspected cause of the
sudden stop, and there are no indications that any
defect in the train or the track contributed to the in-
jury.

Robert Medina and Rosemarie Terry were each
working aboard the train with Juarez at the time of
his injury. Both saw Juarez immediately after the
train's sudden stop and are expected to testify as to
Juarez's condition after the stop. Dr. Jason Graham
provided Juarez's initial medical treatment in the
emergency room of North Kansas City Hospital in
North Kansas City, Missouri. Dr. Graham is expec-
ted to testify about Juarez's condition at the time of
his initial treatment and his injury and prognosis.
Dr. Clive Segil, Dr. Ezequiel Suarez, Dr. Sue
Tusiri, Dr. Joey Co, and Dr. Yao Yu have all
provided medical treatment to Juarez since his in-
jury and are expected to testify in similar capacit-
ies.

None of the individuals expected to testify in this
case, including Juarez, reside in Illinois. Juarez,
Medina, Terry, and five of the six physicians with
discoverable information currently reside in the
State of California. Dr. Graham resides in the State
of Missouri.

**ANALYSIS**

Amtrak moves for the transfer of this case to the
United States District Court for the Central District
of California, pursuant to 28 U.S.C. § 1404.

"Where a suit is filed in a proper venue, a federal
district court may "for the convenience of the
parties and witnesses, [and] in the interest of justice
... transfer any civil action to any other district or
division where it might be brought." 28 U.S.C. §
1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d
217, 219 (7th Cir.1986) (*Coffey* ). Although §
1404(a) limits consideration for transfer to three
factors--convenience of the parties, convenience of
the witnesses, and the interest of justice--district
courts have broad discretion in the interpretation
and weighing of these factors, which serve more as

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 2713357 (N.D.Ill.)

(Cite as: 2007 WL 2713357 (N.D.Ill.))

guideposts for analysis than as rigid requirements. *See Coffey,* 796 F.2d at 219-20; *Chicago R.I. & P.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955), *cert. denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955); *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (*Van Dusen* ). A lesser showing of inconvenience is required under § 1404(a) than under the traditional doctrine of *forum non conveniens. Coffey,* 796 F.2d at 720; *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The movant bears the burden of establishing, by reference to particular circumstances, that the alternative forum is clearly more convenient, *Coffey,* 796 F.2d at 219-20.

*Convenience of the Parties and of the Witnesses*
*2 In evaluating the convenience of the parties, the district court considers five factors: (1) plaintiff's initial choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of me witnesses to be called to testify in the case, and (5) the convenience of the parties themselves. *Plotkin v. IP Axess, Inc.,* F.Supp.2d 899, 902 (N.D.Ill.2001) (*Plotkin* ); *Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 960 (N.D.Ill., 2000) (*Amoco* ); *see also Georgeous v. NaTec Resources, Inc.,* 963 F.Supp. 728, 730 (N.D.Ill.1997); *APV North America, Inc. v. Transindustrial Development Co.,* No. 05 C 2936, 2006 WL 51169, at *4 (N.D.Ill. Jan.3, 2006) (*APV* ).

The plaintiff's choice of forum is generally entitled to substantial weight, especially when it is the plaintiff's home forum. *Plotkin,* 168 F. Supp, 2d at 902; *Vandeveld v. Cristoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995) (*Vandeveld* ). However, where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened. *Plotkin,* 168 F.Supp.2d at 902; *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 831 (N.D.Ill.1999); *Von Holdt v. Husky Injection Molding Systems, Ltd.,* 887 F.Supp. 185, 188 (N.D.Ill.1995); *APV,* 2006 WL 51169 at *5.

Juarez insists that his decision to file suit in the Northern District of Illinois must be given substantial deference. While his choice of forum is certainly relevant, it is not as strong a counterbalance to other factors as he argues. First, the forum is not his home forum. For this reason alone, the weight of Juarez's choice is decreased. Second, the forum has very little connection to the operative facts of the case.

Juarez does not argue that the alleged negligence of the train operators was in any way related to the location of the train at the time of the abrupt stop. While the Northern District of Illinois is the situs of the material event in this case, the location of the train's abrupt stop is only superficially relevant and will not be a significant factor in litigation. The alleged negligence could just as easily have occurred at any point on the train's path across the United States. This weak connection between the forum and the operative facts further decreases the weight of Juarez's choice of forum.

The relative ease of access to sources of proof clearly weighs in favor of transferring this case to the California court. No evidence is claimed to be located in Illinois. Most of the medical records relevant to this case are located in California, and those not located in California are located in Missouri.

For consideration of the convenience of the witnesses, the party seeking transfer must specify the key witnesses to be called and establish that the nature and quality of their testimony with respect to the issues in the case warrant the case's transfer, *Vandeveld,* 877 F.Supp. at 1167-68; *APV,* 2006 WL 51169 at *5. Here, Amtrak has listed all witnesses it expects to testify. Nearly all non-party witnesses involved in this case reside in California, except for one physician, who resides in Missouri. While Amtrak's employees could be compelled to testify regardless of forum, only the proposed transferee forum would be able to compel testimony from any of the five physicians residing in California. The Central District of California would be a far more convenient forum than the Northern District of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 2713357 (N.D.Ill.)
(Cite as: 2007 WL 2713357 (N.D.Ill.))

Illinois. As such, the convenience of the witnesses weighs in favor of transfer.

**\*3** Finally, when considering the convenience to the parties themselves, the court may consider where the parties reside and their respective abilities to bear the expense of the trial in a particular forum. *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1130 (N.D.Ill.1989); *APV,* 2006 WL 51169 at \*6. As previously noted, Juarez resides in California, as do the Amtrak employees involved in this matter. Traveling to and litigating in Illinois appear to be equally inconvenient to both parties, and the proposed California forum clearly presents a more convenient alternative.

On balance, the factors considered in determining the convenience of the parties and witnesses weigh in favor of transfer.

*Interest of Justice*

In addition to considering the convenience of the parties, witnesses, and evidence in relation to the proposed forum and the present forum, the court must also consider which forum best serves "the interest of justice." *Coffey,* 796 F.2d at 220; *Van Dusen,* 376 U.S. at 625. The interest of justice rubric focuses on the efficient administration of the courts, not the merits of the underlying dispute. *Coffey,* 796 F.2d at 221; *Plotkin,* 168 F.Supp.2d at 904. This analysis includes considerations such as "(1) the speed at which a case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the desirability of resolving controversies in their locale." *Plotkin,* 168 F.Supp.2d at 904; *APV,* 2006 WL 51169 at \*6; *see Macedo v. Boeing Co.,* 693 F.2d 683, 690 (7th Cir.1982) (discussing public interest factors of transfer analysis). Even where the convenience of the parties and witnesses may call for a different result, the "interest of justice" component may be determinative in a particular case. *Coffey,* 796 F.2d at 220; *see e.g., Lemke v. St. Margaret Hosp.,* 594 F.Supp. 25 (N.D.Ill.1983).

The most relevant statistics for the determination of

the speed at which a case will proceed to trial are (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases. *Plotkin,* 168 F.Supp.2d at 904; *Amoco,* 90 F.Supp.2d at 962. For the period ending September 30, 2006, the median time from filing to disposition for civil cases was 6.5 months in the Northern District of Illinois and 7.2 months in the Central District of California, The median time from filing to trial for civil cases was 26.4 months in the Northern District of Illinois and 21.3 months in the Central District of California. *See* Admin. Office of the U.S. Courts, FEDERAL COURT MANAGEMENT STATISTICS (2005), *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl. These figures suggest that any difference in time from filing to disposition is negligible and that the time from filing to trial for civil cases is actually slightly faster. This factor weighs in favor of transfer.

**\*4** Because Juarez's claim for relief is based upon FELA, a federal law, neither District Court is better situated to interpret the law; the factor weighing the courts' familiarity with the applicable law is neutral in this case. As previously noted, the State of Illinois does not have a strong connection to the occurrence from which this case arises. The instant suit does not involve a single resident of the State of Illinois. Furthermore, the alleged negligent acts occurred on a train and are not related in any meaningful way to the community which Juarez insists should be allowed to resolve the dispute. Neither the relation of the community to the occurrence at trial nor the desirability of deciding the controversies in their locale weigh against transfer.

**CONCLUSION**

For the foregoing reasons, Amtrak's Motion to Transfer is granted. The case is transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404.

Slip Copy, 2007 WL 2713357 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.