UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ }
RISE BAUSCH, et al.,                }
                                    }
              Plaintiffs,           }
                                    }
       v.                           }        Civil Action No. 07-1362 (RJL)
                                    }        Next Event:    Status Conference
ELI LILLY AND COMPANY, et al.,      }                       January 10, 2008
                                    }
              Defendants.           }
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ }

**PLAINTIFFS' REPLY TO DEFENDANT ELI LILLY AND COMPANY'S
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTFFS' MOTION TO
TRANSFER TO THE EASTERN DISTRICT OF NEW YORK**

## I.    INTRODUCTION

Plaintiffs filed the instant case in the Superior Court of the District of Columbia.  The

Superior Court was a proper venue and forum for this case; in the long history of

diethylstilbestrol ("DES") litigation in District of Columbia Superior Court, the named

Defendants have never successfully challenged venue or forum.  Many cases with as few or

fewer connections to the District of Columbia as this case have been successfully litigated to

conclusion in Superior Court; there is no question that the Superior Court for the District of

Columbia is an appropriate place to file DES cases.

As Defendant Eli Lilly and Company ("Lilly") notes, since 2005 it has sought and has

been granted transfer, many times with the consent of plaintiffs, upon removal of many DES

cases in this District.  Plaintiffs' counsel had argued in the past against such transfers, but, as

Lilly sets forth in its Supplemental Memorandum, that argument has of late been less successful.

Plaintiffs therefore wished to take advantage of the removal to federal court to move this case to

a more convenient forum – one where there is a public interest in the outcome of the case and the

majority of key witnesses fall under the subpoena power of the court – as Plaintiffs expected that Lilly or another Defendant would seek transfer to that forum, or the nearby District of New Jersey, regardless.  Despite agreeing that the present forum is less convenient and insinuating that, if it were moving for transfer, it would be granted, Lilly opposes transfer in this case on the allegation that Plaintiffs have engaged in misconduct.  Such an allegation is meritless and does not outweigh the significant benefits to the interests of justice provided by transfer.

## II.     THE EASTERN DISTRICT OF NEW YORK IS THE JURISDICTION WHICH FULFILLS THE MAJORITY OF THE PUBLIC AND PRIVATE INTEREST FACTORS

"The idea behind § 1404 (a) is that where a 'civil action' to vindicate a wrong -- however brought in a court -- presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."  Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27 (1960).

The Eastern District of New York is a more convenient court.  While the geographical nature of the proof in this case means that no one district will be convenient for all witnesses, difficulty caused to some witnesses by transfer can be outweighed by the policy interests. Jackson v. Venture Dep't Stores, Inc., No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *9 (N.D. Ill. Nov. 3, 1998).  As stated in Plaintiffs' original Motion to Transfer, the Eastern District of New York, as the place of purchase, the place of exposure, and the place of injury for Plaintiff Rise Bausch, has the strongest policy interest in this case.

The Eastern District is also the most convenient district for the witnesses in this case. More witnesses and documents are available within the subpoena power of the Eastern District of New York than the relevant District Courts in Florida or Utah, and equal to the number of witnesses available to the District of New Jersey.  Plaintiff Rise Bausch lived for over thirty years and sought medical care within the Eastern District or in parts of New Jersey within the

subpoena power of the Eastern District of New York; those contacts will be the most critical to both Plaintiffs' and Defendants' examination of the issues in this case.  See Plaintiffs Responses to Defendants' Uniform Preliminary Requests for Information Nos. 4, 5, 12, 26, 28, 31; pgs. 2-4, 7-9; attached as Exhibit 1 to Def's Supp. Mem., Docket No. 47-3.

Lilly admits in its opposition that few, if any, witnesses are convenient to this forum.  See Supplemental Memorandum, pg. 3, Docket No. 47.  Movement to New York would significantly increase the number of convenient witnesses as some witnesses and documents would come into the subpoena power of the court.  Lilly may claim that certain as yet unlocated witnesses in the Eastern District of New York are likely deceased, but should they be found alive, the Eastern District of New York would be the most convenient location.

Previous cases from courts in this District support Plaintiffs' Motion to Transfer.  In Albin v. Eli Lilly and Co., Civil Action No. 04-986 (D.D.C. July 30, 2004), attached as Appendix 1, the District Court for the District of Columbia granted a DES plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although Plaintiff was Canadian and the contacts were diffuse.  In Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89 (D.D.C. 2005), an Arizona domiciliary was injured in a train accident in Maryland.  See 403 F. Supp. at 91. While evidence was required from Maryland, the District of Columbia, and Florida, the Brannen court ruled in favor of transfer to Maryland as it was the place of the accident and that, since some witnesses would be beyond a forum's subpoena power regardless, the easiest location for sources of proof.  See 403 F. Supp. at 93-94.

Even Lilly's authorities support transfer in this case.  Illustrative of the appropriateness of transfer to New York is Tommy Bahama Group, Inc. v. The Walking Co., Civil Action No.

1:07-CV-1402, 2007 U.S. Dist. LEXIS 83136 (N.D. Ga. Oct. 19, 2007), attached to Def's Supp. Mem. as Exhbit 9, Docket No. 47-11.  In Tommy Bahama, a case was filed in Georgia despite no significant connections to that jurisdiction.  Transfer to California was held appropriate despite a gathering of other witnesses in jurisdictions across the country because California had the strongest connection, both in witnesses and events, to the case.  See id. at *10-11.  A similar transfer to California was granted in Juarez v. National R.R. Passenger Corp., Civil Action No. 06-CV-3681, 2007 U.S. Dist. LEXIS 68113 (N.D. Ill. Sept. 12, 2007), attached as Exhibit 10 to Def's Supp. Mem., Docket No. 47-12.  While contacts were distributed between California and Missouri, the District Court found that the greater California contacts militated in favor of transfer.  See id. at *6-7.

In cases cited by Lilly such as First National Bank v. El Camino Resources, Ltd., 447 F. Supp. 2d 902 (N.D. Ill. 2006) the existence of multiple locations of witnesses militates against transfer because the factors are so closely aligned.  See 447 F. Supp. at 912-913 (finding only slight benefit in moving from the transferor forum).  There is a significant benefit to transfer in this case as most witnesses are elsewhere.

**III.    IT WAS PROPER FOR PLAINTIFFS TO FILE THEIR CASE IN THE DISTRICT OF COLUMBIA AND SUCH FILING SHOULD NOT MILITATE AGAINST TRANSFER**

A.    THE DISTRICT OF COLUMBIA IS A PROPER FORUM

"A party has the right to file suit in any district where jurisdiction and venue are proper." Roadmaster Corp. v. NordicTrack, Inc., Civil Action No. 93 C 1260, 1993 U.S. Dist. LEXIS 13090 at *9 (N.D. Ill. Sept. 21, 1993), attached as Appendix 2.  "Attorneys are not under an affirmative obligation to file an action in the most convenient forum; their only obligation is to file in a proper forum."  Newton v. Thomason, 22 F.3d 1455, 1463-1464 (9th Cir. 1994).  Even when a case can be dismissed on the grounds of *forum non conveniens*, such a case may have

been filed in a proper venue.  See Sussman by & Through Guilden v. Bank of Israel, 56 F.3d 450, 458 (2d Cir. 1995).

Plaintiffs stand by their counsel's contention that the District of Columbia is a proper forum.  The District of Columbia is the location of the original industry-wide promotion of DES.  See "Trip Report, Meeting of Representatives of a Group of Drug Manufacturers Interested in Stilbestrol," attached as Appendix 3.  Separate from the mere fact of FDA submissions and approval, Defendants sought out the District of Columbia as a location to engage in private acts that in part form the basis of this suit.  As such, the District is an appropriate forum and the location of some evidence relevant to this case.

Lilly, in the DES cases it cites, has tacitly agreed that jurisdiction and venue are proper in the District; all of the successful motions to transfer it cites are motions under 28 U.S.C. § 1404, a transfer of convenience, rather than under 28 U.S.C. § 1406, which establishes a lack of venue.  See Bentz v. Reed Elsevier, Inc., No. C-3-00-350, 2000 U.S. Dist. LEXIS 20370 at *25 (S.D. Ohio Dec. 5, 2000) (finding a transfer under § 1404 a concession of venue), attached as Appendix 4.  Stevens v. General Motors Corp., Civil Action No. 6:06-CV-255, 2006 U.S. Dist. LEXIS 84958 (E.D. Tex. Nov. 21, 2006), cited by Lilly, states that "[b]ecause this is a products liability case, the complaint is about a defective product, and not just an individual automobile accident. As such, the subject matter is as of much interest to citizens of this district as it is to those of any other district where the Defendant's vehicles are sold." Id. at *6, attached as Exhibit 8 to Def's Supp. Mem., Docket No. 47-9.  Stevens involved a car accident in the Northern District of Texas where suit was brought in the Eastern District, despite no witnesses within the Eastern District.  Like Stevens, this is a products liability case; there is sufficient interest in the District of Columbia to allow one to file one's case here.

Furthermore, Lilly cannot contend that there is any sort of settled law regarding the connection of the District of Columbia to other DES cases. A significant number of District Court decisions in this District have found that Lilly's actions, as well as the actions of others, in the District of Columbia are relevant factors. See, e.g., Dimanche v. Eli Lilly and Co., Civil Action No. 03-0236 (D.D.C. Oct. 17, 2003), mem. op. at 2, App. 5; Roing v. Eli Lilly and Co., Civil Action No. 02-2211 (D.D.C. Jan. 2003), mem. op. at 2, App. 6; Blank v. Eli Lilly and Co., Civil Action No. 02-1976 (D.D.C. Dec. 13, 2002), mem. op. at 5, App. 7; Fastino v. Eli Lilly and Co., Civil Action No. 02-02210 (D.D.C. Oct. 8, 2003), mem. op. at 5, App. 8. Even in Abramson v. Eli Lilly and Co., Civil Action No. 03-2541 (D.D.C. Oct. 25, 2004), cited by Defendant, the court considered Defendant's actions in the District of Columbia a contact in support of continued jurisdiction. Abramson, mem. op. at 3, attached as Lilly's Exhibit 4, Docket No. 47-6. To the extent that Thompson v. Eli Lilly and Co., Civil Action No. 03-122 (D.D.C. June 27, 2003), attached Exhibit 3 to Def's Supp. Mem., Docket No. 47-5, and Lentz v. Eli Lilly and Co., Civil Action No. 06-1374 (D.D.C. Dec. 18, 2006), attached as Exhibit 6 to Def's Supp. Mem., Docket No. 47-8, are to the contrary, it is because Judge Walton and Judge Huvelle made specific findings with regard to the facts of those cases. See Thompson, mem. op. at 5 ("no direct connection to *this case*"); Lentz, mem. op. at 4 ("not directly related to *this particular case*") (emphasis added).

B.    PLAINTIFFS' ACTIONS DO NOT CONSTITUTE "FORUM SHOPPING"

"Forum-shopping" is a dirty word; but it is only a pejorative way of saying that, if you offer a plaintiff a choice of jurisdictions, he will naturally choose the one in which he thinks his case can be most favourably presented: this should be a matter neither for surprise nor for indignation.

Freidrich K. Juenger, "Forum Shopping, Domestic and International," 63 Tul. L. Rev. 553, 571 (1989).

There is no standard definition of "forum shopping." <u>See</u> Richard Maloy, "Forum Shopping: What's Wrong With That?" 24 <u>Quinnipac L. Rev.</u> 25, 26 (2005). Another commentator has found that "the policy against forum shopping is not a principled distinction between legitimate and illegitimate actions, but rather a discretionary tool by which a court may constrain actions or motives it finds distasteful." Note: "Forum Shopping Reconsidered," 103 <u>Harv. L. Rev.</u> 1677, 1683-84 (1990). As one federal court has stated:

> Undoubtedly, where the law permits a plaintiff to optionally select from more than one district, plaintiff will select that district which he deems most advantageous to himself, either by reason of convenience or, more frequently, because he anticipates a better prospect of a favorable or larger verdict. The law permits and encourages, by reason of the option, this type of "forum shopping" (if such expression is appropriate). Similarly, if defendant can show that the ends of justice would best be served by trial in some district other than that in which it was instituted, and action in such other district is otherwise permissible, the defendant is also permitted such limited "forum shopping." The selection by either of opposing counsel and the application for transfer is seldom, if ever, premised on purely altruistic motives of judicial efficiency.

<u>Alleyne v. Nippon Yusen Kaisha</u>, 328 F. Supp. 30, 33 (E.D. Pa. 1971). The Fourth Circuit similarly held:

> There is nothing inherently evil about forum-shopping. The statutes giving effect to the diversity jurisdiction under the Constitution . . . are certainly implicit, if not explicit, approval of alternate forums for plaintiffs . . . . Thus, complaints about forum shopping expressly made possible by statute are properly addressed to Congress, not the courts. It would require but a short logical step to conclude that the present case is in reality an attack on the venue statutes, a point we do not consider because not raised in the briefs. In any event, we note that state borrowing statutes guard against forum shopping. But that, too, is a legislative matter, but for the States.

<u>Goad v. Celotex Corp.</u>, 831 F.2d 508, 513 n. 12 (4th Cir. 1987).

The United States Supreme Court has sanctioned "forum selection," stating that a "successful search for a state with a lengthy statute of limitation is no different from the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations." <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S.

770, 779 (1984).  Lower federal courts have implied that suing in the most favorable forum is the

*obligation* of counsel:

> The existence of [forum choices] not only permits but indeed invites counsel in an
> adversary system, seeking to preserve his client's interests, to select the forum
> that he considers most receptive to his cause.  The motive of the suitor in making
> his choice is ordinarily of no moment; a court may be selected because its docket
> moves rapidly, its discovery procedures are liberal, its jurors are generous, the
> rules of law applied are more favorable, or the judge who presides in that forum is
> thought more likely to rule in the litigant's favor.

Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 772 (E.D. Tex. 2000) (citations omitted).

Lilly has made this very argument against penalties for "forum shopping" in DES-

related litigation.  In 1982, Lilly came from its headquarters in Indianapolis to the District of

Columbia to sue fourteen of its insurance companies over DES coverage, see Eli Lilly v. Home

Ins. Co., 794 F.2d 710 (D.C. Cir. 1986).  Just as Lilly alleges of Plaintiffs, there were little

connection between the insurance transaction and this jurisdiction.  Eli Lilly could have sued

where it resides and where all the contracts in dispute were written.  All the defendants in the

case were non-District of Columbia residents.  There was no natural connection to the District of

Columbia.  Nonetheless, Eli Lilly filed in the District of Columbia, and when its insurers filed a

motion to transfer to Indianapolis, alleging that Lilly was forum shopping, Eli Lilly opposed by

stating:

> Forum shopping is no more evil than any other tactical determination a party
> makes in its behalf.  Any competent lawyer chooses a forum with his or her
> client's interests in mind. . . .

Eli Lilly's Memorandum in Opposition to Motion to Transfer in Eli Lilly v. Home Ins. Co., p.

14, pertinent parts attached as Appendix 9.

> . . . Their accusations of 'forum shopping' . . . hope to divert the Court's attention
> from the relevant considerations of convenience and justice to the irrelevant
> matter of Lilly's reason for bringing suit in this District . . . Contrary to
> defendants' assertions, courts have not penalized plaintiffs for selecting forums
> with favorable laws.  The relevant policy considerations are established by Van

> Dusen v. Barrack [citation omitted], the leading case on the subject, which *actually protects the plaintiff in his right to bring his action in the state in which the law is most advantageous to him.*

Id. at pg. 14 (emphasis partly in original, partly added).  The Supreme Court in its wisdom has blessed forum selection by plaintiffs looking for a favorable statute of limitations, see Ferens v. John Deere Co., 494 U.S. 516, 527-28 (1990); Keeton, supra.  Regardless of why Plaintiffs' counsel brought suit in District of Columbia Superior Court, it remains that such filing was within Plaintiffs' legal rights and should not penalize Plaintiffs for seeking, upon further discovery, the most convenient forum to hear this case.

To the extent that there is an agreed-upon sin of "forum shopping" that must be deterred, such crime is "seeking out a forum *solely* on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another." Roadmaster Corp. v. NordicTrack, Inc., 1993 U.S. Dist. LEXIS 13090 at *9 (emphasis added), App. 2.  This Circuit has described the acts that result in forum shopping as "a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." Pain v. United Technologies Corp., 637 F.2d 775, 784 (D.C. Cir. 1980) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)).  This is not the present case; here, Plaintiffs' actions were not solely for the basis of achieving favorable law, and transfer will be more convenient for all parties.

Lilly grossly misstates the sanctions ruling in Laine v. Morton Thiokol, Inc., 124 F.R.D. 625 (N.D. Ill. 1989) in order to support its position that Plaintiffs' actions are improper.  In Laine, the plaintiff sued in Illinois despite there being no personal jurisdiction over the defendants and apparently fabricated a federal claim to bring the case into federal court despite a lack of diversity.  See 124 F.R.D. at 627.  The plaintiff's counsel then the "nonsensical" argument that there was appropriate personal jurisdiction.  See 124 F.R.D. at 628.  Sanctions in

<u>Laine</u> were not for selecting an inconvenient but proper jurisdiction, which is, at worst, the circumstance of the present case.

Similarly, Lilly's invocation of <u>Tiffany v. Hometown Buffet, Inc.</u>, No. C 06-2524, 2006 U.S. Dist. LEXIS 73568 (N.D. Cal. Sept. 28, 2006) does not establish that Plaintiffs' Motion to Transfer in this case is improper.  In <u>Tiffany</u>, the plaintiffs stated that the jurisdiction they moved to transfer to was not more convenient.  <u>See</u> 2006 U.S. Dist. LEXIS 73568 at *7.  The court in <u>Tiffany</u> also found that the transferee forum was not more convenient for witnesses or evidence. <u>See id</u>.  In addition, the plaintiffs actively litigated against transfer to the same forum in state court.  <u>See id</u>. at *3.  None of the above factors are present here; this is a transfer to a forum where Plaintiffs and Lilly admit is more convenient than the current forum and Plaintiffs have not tried to prevent the movement of this case to New York or any other jurisdiction.[1]

Lilly's general citations to <u>Simeone v. First Bank Nat'l Ass'n</u>, 971 F.2d 103, 108 (8th Cir. 1992) and <u>In re North Am. Oil & Gas Co.</u>, 130 B.R. 482, 484 n. 1 (Bankr. W.D. Tex. 1991) are to decisions containing dicta which deride "forum shopping" but do not involve the procedural stance in this case.  <u>Simeone</u> involved whether fees were allowed by Fed. R. Civ. P. 41(d) in light of a federal court loss by the plaintiff following a previous state court nonsuit against the same defendant.  <u>See</u> 971 F.2d at 107-8.  <u>In re North Am. Oil & Gas Co.</u> involves a bankruptcy court determining which of two functionally identical but procedurally different actions in two different bankruptcy courts had precedence.  <u>See</u> 130 B.R. at 483.  The principles of these cases are wholly inapposite to this situation and even the methods of "forum shopping" are far from what Lilly has accused Plaintiffs' counsel of doing.  Neither case sheds light on whether this transfer is proper.

---

[1] Plaintiffs will also consent to transfer to the District of New Jersey as, although it does not possess the public interest factors that make the Eastern District of New York the best jurisdiction, it has the same subpoena power over the critical witnesses and evidence that the Eastern District of New York has.

As Lilly points out, most DES cases with limited contact to the District of Columbia are transferred.  See Supp. Mem. at 4, Docket No. 47.  Lilly has argued, and won, a transfer on facts similar to the present case.  In Dean v. Eli Lilly and Co., another DES case, Lilly argued that the potential inability of several witnesses was not fatal to its motion to transfer as the transferee district was, regardless, more convenient than the District of Columbia.  See Reply in Support of Defendant Eli Lilly and Company's Motion to Transfer to the District of Massachusetts, Dean v. Eli Lilly and Co., pg. 4, attached as Appendix 10; Order in Dean v. Eli Lilly and Co., No. 06-CV-1375 (D.D.C. June 1, 2007), attached as Exhibit 5 to Def's Supp. Mem., Docket No. 47-7. Plaintiffs assumed that, based on Lilly's past litigation regarding transfer, the motion in the instant case would be appropriate and convenient for all parties.

It is also inaccurate for Lilly to describe a denial of transfer as some sort of sanction against Plaintiffs.  The inconvenience of this jurisdiction exists for all parties, not just Plaintiffs, and by working to maintain the case in this jurisdiction, Lilly seeks to maintain the inconvenience for all parties, including the five defendants (Bristol-Meyers Squibb, Premo Pharmaceuticals, Elan Pharmaceuticals, Pharmacia & Upjohn Co., and GlaxoSmithKline) who have not opposed Plaintiffs' motion.

## IV.    CONCLUSION

The Eastern District of New York is a more appropriate venue for this case.  It has subpoena power over more witnesses and documents relevant to Plaintiff Rise Bausch's exposure to DES and has more experience with the governing law.  Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,


 /s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
Tel:     202-833-8040
Fax:     202-833-8046

Counsel for Plaintiffs

## LCvR 7.1(f) REQUEST FOR ORAL HEARING

Pursuant to Local Rule 7.1(f) and in light of Lilly's Supplemental Memorandum, Plaintiffs respectfully request an oral hearing on this motion so that Plaintiffs and Lilly may satisfy the Court as to the relevant contacts and law in this case.

/s/ Aaron M. Levine
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ }
RISE BAUSCH, et al.,                            }
                                                }
                    Plaintiffs,                 }
                                                }
            v.                                  }        Civil Action No. 07-1362 (RJL)
                                                }        Next Event:    Status Conference
ELI LILLY AND COMPANY, et al.,                  }                       January 10, 2008
                                                }
                    Defendants.                 }
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ }

**AFFIDAVIT OF AARON M. LEVINE, ESQ.**
**AUTHENTICATING DOCUMENTS**

I, Aaron M. Levine, declare under penalty of perjury that the following is true and correct:

1. Attached as Appendix 1 is a true copy of the order in <u>Albin v. Eli Lilly and Co.</u>, Civil Action No. 04-986 (D.D.C. July 30, 2004).

2. Attached as Appendix 2 is a true copy of <u>Roadmaster Corp. v. NordicTrack, Inc.</u>, Civil Action No. 93 C 1260, 1993 U.S. Dist. LEXIS 13090 (N.D. Ill. Sept. 21, 1993).

3. Attached as Appendix 3 is a true copy of selected pages from American Drug Manufacturers Association, "Trip Report: Meeting of Representatives of a Group of Drug Manufacturers Interested in Stilbestrol" dated January 28, 1941.

4. Attached as Appendix 4 is a true copy of <u>Bentz v. Reed Elsevier, Inc.</u>, No. C-3-00-350, 2000 U.S. Dist. LEXIS 20370 (S.D. Ohio Dec. 5, 2000).

5. Attached as Appendix 5 is a true copy of the order in <u>Dimanche v. Eli Lilly and Co.</u>, No. 03-0236 (D.D.C. Oct. 17, 2003).

6.   Attached as Appendix 6 is a true copy of the order in <u>Roing v. Eli Lilly and Co.</u>, No. 02-2211 (D.D.C. Jan. 2003).

7.   Attached as Appendix 7 is a true copy of the Memorandum Opinion and Order in <u>Blank v. Eli Lilly and Co.</u>, No. 02-1976 (D.D.C. Dec. 13, 2002).

8.   Attached as Appendix 8 is a true copy of the Memorandum Opinion and Order in <u>Fastino v. Eli Lilly and Co.</u>, No. 02-02210 (D.D.C. Oct. 8, 2003).

9.   Attached as Appendix 9 is a true copy of selected pages from Eli Lilly's Memorandum in Opposition to Motion to Transfer in <u>Eli Lilly v. Home Ins. Co.</u> dated July 1, 1982.

10.   Attached as Appendix 10 is a true copy of selected pages from Eli Lilly and Company's Reply in Support of Defendant Eli Lilly and Company's Motion to Transfer to the District of Massachusetts, <u>Dean v. Eli Lilly and Co.</u>, No. 06-CV-1375 (D.D.C.), dated January 30, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

   /s/  Aaron M. Levine
         Aaron M. Levine

Dated: November 20, 2007

# Appendix 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MYRA D. ALBIN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-986 (RBW) |
| ELI LILLY AND COMPANY, et al., | ) |
| Defendants. | ) |

**ORDER**

This matter came before the Court on July 30, 2004, for a hearing on Plaintiff's

Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). Upon consideration of this motion

and for the reasons expressed by this Court at the July 30, 2004 hearing, it is hereby

this 30th day of July, 2004

**ORDERED** that the above-captioned case shall be **TRANSFERRED** to the

United States District Court for the Eastern District of New York.

**SO ORDERED.**

REGGIE B. WALTON
United States District Judge

# Appendix 2

**LexisNexis®** *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ ? Help

*My Lexis™* ▼ Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's®* ▼ Alerts ▼ Total Litigator ▼   Dossier ┊ History ┊ ⛶

Service: **Get by LEXSEE®**
Citation: **29 U.S.Q.2D (BNA) 1699, 1701**

✔Select for FOCUS™ or Delivery
☐

*1993 U.S. Dist. LEXIS 13090, \*; 29 U.S.P.Q.2D (BNA) 1699*

ROADMASTER CORPORATION, Plaintiff, v. NORDICTRACK, INC., Defendant.

Civil Action No. 93 C 1260

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1993 U.S. Dist. LEXIS 13090; 29 U.S.P.Q.2D (BNA) 1699

September 20, 1993, Decided
September 21, 1993, Docketed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Motion to dismiss, or in the alternative transfer or stay plaintiff's declaratory judgment action, by defendant competitor, in plaintiff's action which requested a declaration that defendant's patent was invalid or not infringed by plaintiff and for a declaration that plaintiff did not unfairly compete with plaintiff.

**OVERVIEW:** Plaintiff manufactured an exercise machine similar to one patented by defendant. The parties' products competed in the marketplace. Defendant sent plaintiff a letter asserting defendant's advertisement and sale of the machine infringed defendant's patent. Subsequently, plaintiff commenced this declaratory judgment action against defendant requesting a declaration defendant's patent was invalid and/or not infringed by plaintiff's exercising machine and a declaration that plaintiff did not unfairly compete with defendant in violation of common law or federal unfair competition law. Defendant then filed an infringement action against plaintiff in another circuit and filed a motion in the instant action to dismiss or in the alternative to transfer venue. The court denied defendant's motions, reasoning under 28 U.S.C.S. § 1404, defendant failed to prove that the other forum would be clearly be more convenient for the parties and, therefore, the venue of the first-filed action controlled.

**OUTCOME:** Defendant's motion to dismiss, or in the alternative transfer or stay plaintiff's declaratory judgment action denied, because plaintiff's action was filed first and changing venue would merely shift the inconvenience of trial from defendant to plaintiff, and that was not a permissible reason for changing venue.

**CORE TERMS:** declaratory judgment action, venue, convenience, choice of forum, convenient, infringement, shopping, machine, inconvenience, interest of justice, patent, recommend, patentee, flight, patent cases, substantial weight, declaratory, infringed, resident, weigh, reasons stated, principal place of business, suit filed, actual controversy, advertising, appearance, nonparty, invalid, travel, drive

cause than in another. On the other hand, filing suit in a forum that is convenient to the party filing is not the type of forum shopping denounced in Genentech. A party has the right to file suit in any district where jurisdiction and venue are proper. If filing in a district that is more convenient to the plaintiff than to the defendant is enough to open the plaintiff up to a charge of forum shopping, then the exception would swallow the rule. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties
*HN8* ± 28 U.S.C.S. § 1404(a) provides that a federal district court may transfer a suit filed with proper venue to another district court where venue is proper for the convenience of the parties and witnesses, in the interest of justice. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses
Civil Procedure > Venue > Motions to Transfer > Interests of Justice
*HN9* ± 28 U.S.C.S.C. § 1404(a) requires the district court to weigh three factors when considering a transfer of venue: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. The party requesting the transfer must show the balance of factors weighs strongly in its favor. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN10* ± The movant for a change of venue pursuant to 28 U.S.C.S. § 1404, has the burden of showing the transferee forum is clearly more convenient in total, not just that it is more convenient to itself. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN11* ± The plaintiff is entitled to choose any proper forum and the court should not upset that choice merely to shift rather than eliminate inconvenience. In balancing the conveniences of each forum, the plaintiff's choice of forum is entitled to considerable weight unless none of the challenged conduct occurred in the forum. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Venue > Corporations
Civil Procedure > Venue > Motions to Transfer > Choice of Forum
*HN12* ± The venue statute, 28 U.S.C.S. § 1391, defines the residence of a corporation as including districts where it is subject to personal jurisdiction. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN13* ± Convenience of counsel is not a factor properly considered under 28 U.S.C.S. § 1404 (a). More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN14* ± A party seeking transfer of venue under 28 U.S.C.S. § 1404 must clearly specify the key witnesses to be called and the general nature of their testimony. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN15* ± In determining which forum will best serve the interests of justice courts look to many factors: which forum will be able to compel nonparty witnesses' testimony; whether the plaintiff's choice of forum bears any connection to events underlying the suit; which

forum will best conserve judicial resources; and which forum can best insure a timely trial date. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview
HN16 Federal courts as a principle of sound judicial administration give priority to the first suit filed, absent a balance of convenience in favor of the second action or special circumstances compelling priority for the second case. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Eligibility, Circumstances & Factors
HN17 The availability of the alternative courts for trial is a consideration to be weighed in the balance of factors when determining whether to grant a motion to change venue. More Like This Headnote

**COUNSEL:** **[*1]** For Plaintiff: JEROME GILSON, MELVIN F. JAGER, William, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, IL.

For Defendant: JAMES T. FITZGIBBON, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, IL. ROBERT T. EDELL, D. RANDALL KING, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN.

**JUDGES:** BUCKLO

**OPINION BY:** ELAINE E. BUCKLO

**OPINION**

**REPORT AND RECOMMENDATION**

Roadmaster Corporation ("Roadmaster") commenced this declaratory judgment action against Nordictrack, Inc. ("NordicTrack") requesting a declaration that NordicTrack's United States Patent 4,023,795 ("the '795 patent") is invalid and/or not infringed by Roadmaster's Vitamaster Northern Trails exercising machine. Roadmaster also asks for a declaration that Roadmaster has not unfairly competed with NordicTrack in violation of common law or federal unfair competition law and that it has not falsely advertised under state deceptive trade practices law or violated any rights of Nordictrack under state dilution law. Jurisdiction is based upon the Declaratory Judgment Act, 28 U.S.C. § 2201; the Patent Laws of the United States, 35 U.S.C. §§ 1-376, the Federal Trademark **[*2]** Act, 15 U.S.C. §§ 1051-1127; and on 28 U.S.C. 1338, 1367, 1331 and 1332. NordicTrack now moves the court to dismiss the declaratory judgment action. In the alternative, NordicTrack requests this court to transfer the action to the United States District Court for the District of Minnesota or stay the proceedings pending the outcome of the case filed in that district by NordicTrack covering the same legal issues. For the reasons stated below, I recommend the motions be denied.

**Background**

Roadmaster is a Delaware corporation with its principal place of business in Olney, Illinois. It manufactures exercise machines that incorporate visible wood components. One of these machines is the Vitamaster Northern Trails skier ("Vitamaster").

NordicTrack is a Minnesota corporation with its principal place of business in Chaska, Minnesota. It produces exercise machines that incorporate the '795 patent, some of which have visible wood components. Some of these machines compete in the marketplace with the Vitamaster.

On February 15, 1993, NordicTrack wrote to Roadmaster asserting that Roadmaster's advertisement and **[\*3]** sale of the Vitamaster machines infringed NordicTrack's '795 patent. In addition, Nordictrack charged Roadmaster with violating its trade dress rights by using wood components and with false advertising. The letter demanded that Roadmaster cease and desist making and selling the Vitamaster. The letter insisted on a response by February 19, threatening to "aggressively contemplate and undertake other courses of action" if a satisfactory response was not received by that date. Letter from NordicTrack to Roadmaster of 2/15/93 at 2.

On February 18, 1993, Roadmaster responded by letter denying Nordictrack's claims. On February 26, 1993, Roadmaster brought this action for declaratory judgment. [1]

### FOOTNOTES

1 Roadmaster waited eight days after sending a responding letter to Nordictrack before filing for declaratory judgment. NordicTrack complains that Roadmaster "without waiting for a response from NordicTrack . . . brought this declaratory judgment action.", Def's Mem. in Resp. to Pl's Supplemental Mem. at 2. However, NordicTrack had given Roadmaster only four days from the date of its letter to respond to its demand. Thus, neither side showed much patience.

**[\*4]**  On March 23, 1993, NordicTrack filed suit against Roadmaster in the United States District Court of Minnesota, raising the same issues contained in the declaratory judgment action.

NordicTrack now moves for dismissal or transfer of venue or a stay.

### Motion To Dismiss

*HN1* The Declaratory Judgment Act gives federal courts, upon the filing of an appropriate pleading, the power to declare the rights of interested parties when an actual controversy exists within its jurisdiction. 28 U.S.C. § 2201. Whether or not to exercise that power is left to the discretion of the court. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 747 (7th Cir. 1987). Notwithstanding this, the court's discretion is not absolute, and a refusal to hear a declaratory judgment action "must be based in sound reason." *Genentech, Inc. v. Eli Lilly and Co.,* 1993 U.S. App. LEXIS 16127, 1993 WL 236563 at \*2 (Fed. Cir. July 1, 1993).

*HN2* The actual controversy requirement is satisfied when a case is "of sufficient immediacy and reality" to warrant relief. *Id.* at \*3 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941). **[\*5]**

*HN3* In patent cases, an actual controversy exists if (1) the declaratory plaintiff acted, or is preparing to act, in a way the patentee alleges is an infringement; and (2) the patentee has created a reasonable apprehension of an infringement suit in the declaratory plaintiff. An explicit assertion of infringement by the patentee creates an actual controversy. *Id.* at \*8.

In this case, the requirements of the Declaratory Judgment Act are met. NordicTrack has explicitly accused Roadmaster of infringing its '795 patent. Letter from NordicTrack to Roadmaster of 2/15/93. The issue to be resolved is whether the first filed declaratory judgment action should be dismissed in favor of the later filed infringement action. *HN4* The Federal Circuit has exclusive appellate jurisdiction over cases such as this one which are based, in whole or in part, on 28 U.S.C. 1338(a) and that circuit's law controls the resolution of this issue. *Chemical Eng'g Corp. v. Marlo, Inc.,* 754 F.2d 331, 333 (Fed. Cir. 1984); *In re Mahurkar Double Lumen Hemodialysis Catheter*

*Patent Litigation,* 750 F. Supp. 330, 334 (N.D. Ill. **[\*6]** 990).

The Federal Circuit recently addressed this issue in *Genentech,* holding that **HN5**the general rule which favors the forum of the first-filed action should be followed in patent cases. This is true regardless of whether the first-filed action is a declaratory judgment action or an infringement action. *Genentech, Inc. v. Eli Lilly and Co., supra,* 1993 U.S. App. LEXIS 16127, 1993 WL 236563 at \*4.

In *Genentech,* Genentech, Inc. ▾ ("Genentech") filed a declaratory judgment action against Eli Lilly and Company ▾("Lilly") and the University of California ("the University") in the Southern District of Indiana. Genentech's action asked the court to declare, *inter alia,* the defendants' patent invalid and not infringed. *Id.* at \*1. The next day, the University filed an infringement suit in the Northern District of California. Subsequently, the University moved the Indiana court to dismiss the declaratory action as to the University. The district court granted the motion on the grounds that the University's immunity barred the suit or, alternatively, by exercising its discretion to refuse to hear the declaratory action. *Id.* at \*2.

The Indiana court's **[\*7]** decision to refuse to hear the case on discretionary grounds was based on the Seventh Circuit's opinion in *Tempco Electric Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746 (7th Cir. 1987). *Tempco* was factually similar to *Genentech* except that it involved trademarks instead of patents. In *Tempco,* the Seventh Circuit upheld a district court's dismissal of a first-filed declaratory judgment action because it wanted to discourage what it considered to be an unseemly race to the courthouse in order to secure choice of forum. *Id.* at 750. Following *Tempco,* the district court in *Genentech* dismissed the declaratory judgment action. *Genentech, Inc. v. Eli Lilly and Co., supra,* 1993 U.S. App. LEXIS 16127, 1993 WL 236563 at \*3.

The Federal Circuit reversed, expressly declining to apply *Tempco* in patent cases. The court stated:

> We decline to apply *Tempco Electric* to patent cases. Such a rule would automatically grant the patentee the choice of forum, whether the patentee had sought--or sought to avoid--judicial resolution of the controversy. **HN6**This shift of relationship between **[\*8]** litigants is contrary to the purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist.

*Genentech, Inc. v. Eli Lilly and Co., supra,* 1993 U.S. App. LEXIS 16127, 1993 WL 236563 at \*4.

The facts of the case at bar are similar to those of *Genentech.* After an explicit charge that its product infringed NordicTrack's patent, Roadmaster filed a declaratory judgment action in this court to resolve the controversy. NordicTrack subsequently filed an infringement action in Minnesota and moved this court to dismiss the declaratory judgment action. On these facts *Genentech* dictates that the forum of the first-filed action be favored.

NordicTrack argues that the first-filed rule of *Genentech* is not applicable in this case because Roadmaster has allegedly engaged in "forum shopping." Def.'s Mem. in Resp. to Pl.'s Supplemental Mem. at 3. The *Genentech* court did note that the forum of the first-filed action will not be favored if forum shopping was the sole motive for filing in that district. NordicTrack argues that this is **[\*9]** the situation here.

NordicTrack is mistaken. **HN7**Forum shopping, as condemned in *Genentech,* ² is seeking out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another. On the other hand, filing suit in a forum that is *convenient* to the party filing is not the type of forum shopping denounced in *Genentech.* A party has the right to file suit in any district where jurisdiction and venue are proper. If filing in a district that is more convenient to the plaintiff than to the defendant is enough to open the plaintiff up to a charge of

forum shopping, then the exception would swallow the rule. To protect itself from dismissal in favor of a subsequently filed action, a plaintiff would have to file in the forum most convenient to the defendant.

## FOOTNOTES

2 *Genentech* mentions forum shopping without elaboration as to what activity falls within its definition. *Genentech* cites *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-83 (Fed. Cir. 1989), which cites *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2nd Cir. 1969), which in turn cites to *Rayco Mfg. Co. v. Chicopee Mfg. Co.*, 148 F. Supp. 588 (S.D.N.Y. 1957), where there is a discussion of what is meant by forum shopping. *See also Christianson v. Colt Indus. Operating Corp.*, 798 F.2d 1051, 1058 (7th Cir. 1986); *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 878 (Fed. Cir. 1983).

**[*10]** NordicTrack has made no allegation that Roadmaster filed in this district because it is more likely to hold the '795 patent invalid or that the law governing any of the other claims is more favorable to Roadmaster. Therefore, the forum shopping exception does not apply. I recommend that the motion to dismiss the declaratory judgment action be denied.

## Motion To Transfer

Roadmaster request the court to transfer this case to the United States District Court for the District of Minnesota. *HN8*⚓28 U.S.C. § 1404(a) provides that a federal district court may transfer a suit filed with proper venue to another district court where venue is proper 3 "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

## FOOTNOTES

3 Neither party disputes that venue is proper in this district or in Minnesota.

*HN9*⚓

Section 1404(a) requires the district court to weigh three factors when considering a transfer of venue: (1) the convenience **[*11]** of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986). The party requesting the transfer must show the "balance of factors weighs strongly in its favor." *Gaylord v. Keene Corp.,* 1987 U.S. Dist. LEXIS 489, 1987 WL 5906 *1 (N.D. Ill. 1987). For the reasons stated below, the motion should be denied.

## A. Convenience of the Parties

NordicTrack asserts that the District of Minnesota is a more convenient forum for parties. There is no question that it is a more convenient forum for NordicTrack whose home office is in Minnesota. However, *HN10*⚓the movant has the burden of showing the transferee forum is "clearly more convenient" in total, not just that it is more convenient to itself. *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 219-20. *HN11*⚓The plaintiff is entitled to choose any proper forum and the court should not upset that choice merely to shift rather than eliminate inconvenience. *Ameritech Mobile Communications, Inc. v. Cellular Communications Corp.,* 664 F. Supp. 1175, 1182 (N.D. ILL. 1987); **[*12]** *Store Decor Div. of JAS Int'l. v. Stylex Worldwide Indus. Ltd.,* 767 F. Supp. 181, 185 (N.D. Ill 1989). In balancing the conveniences of each forum, the plaintiff's choice of forum is entitled to considerable weight unless none of the challenged conduct occurred in the forum. *Oce-Indus., Inc. v. Coleman,* 487 F. Supp. 548, 553 (N.D. Ill. 1980). 4

**FOOTNOTES**

4 The parties disagree about the amount of deference the court should give Roadmaster's choice of forum. NordicTrack argues that because Roadmaster's principal place of business is not in the Northern District of Illinois, its choice of forum is "entitled to only minimal deference." Def.'s Mot. at 8. Roadmaster argues that its choice of forum is entitled to substantial weight and that this is especially true because it is a resident of the Northern District within the meaning of the venue statute, 28 U.S.C. 1391(c). Pl.'s Opp'n to Def.'s Mot. at 10.

Both cite *Store Decor Div. of JAS Int'l. v. Stylex Worldwide Indus. Ltd., supra,* 767 F. Supp. at 185 for support. *Store Decor* states that the plaintiff's choice of forum should be given substantial weight, "especially where . . . the plaintiff is a resident of the District in which it filed suit." *Id.* Roadmaster correctly points out that ^HN12^ the venue statute defines the residence of a corporation as including districts where it is subject to personal jurisdiction. 28 U.S.C. 1391 (c). However, NordicTrack argues that *Store Decor* distinguished between "residence" as it relates to plaintiff's choice of forum and "residence" as it relates to proper venue. Def.'s Reply Mem. at 8. The relevant sentence of *Store Decor* indicates that the plaintiff's choice of forum should be given substantial weight. And, if the plaintiff is a resident of that district, then its choice should be given "especially" substantial weight. *Store Decor Div. of JAS Int'l. v. Stylex Worldwide Indus. Ltd., supra,* 767 F. Supp. at 185.

[*13] NordicTrack asserts that the only apparent reason this case was filed in this district is because Roadmaster's attorneys reside in this district. NordicTrack correctly points out that ^HN13^ convenience of counsel is not a factor properly considered under § 1404(a). *Koos, Inc. v. Performance Indus., Inc.,* 747 F. Supp. 487, 490 (N.D. Ill. 1990). Roadmaster states, however, that it has employees with knowledge relating to the suit in Olney, Illinois and Delevane, Wisconsin (approximately 75 miles from Chicago). Pl.'s Opp'n to Def.'s Mot. at 3. Roadmaster conducts a great deal of business in Chicago, and asserts that the trip from Olney to Chicago is short and convenient, often done by charter air flight. On the other hand, a trip to Minneapolis requires a two-and-one-half to three hour drive from Olney to St. Louis or Indianapolis to catch a flight to Minneapolis (or presumably a flight to Chicago to catch a second flight to Minneapolis). The result, according to Roadmaster, is that travel to and from Minneapolis consumes an entire day, whereas Roadmaster employees can travel to Chicago, conduct business and travel back to Olney the same day. Pl.'s Opp'n to [*14] Def.'s Mot. at 3-4.

The inconvenience to NordicTrack employees coming to Chicago is slight as compared to that of Roadmaster employees traveling to Minneapolis. Minneapolis is a short flight away from Chicago. NordicTrack's offices are in Chaska, Minnesota, very close to Minneapolis. Thus, it is simple and easy for NordicTrack employees to fly to Chicago. 5

**FOOTNOTES**

5 The court also notes that pursuing this case in the Southern District of Illinois would still require Roadmaster employees to make approximately a two-and-one-half hour drive to East St. Louis or a two hour drive to Benton to get to the federal courthouse. The fact of the matter is that this suit is inconvenient for Roadmaster no matter where it is brought. This court is reluctant to heap additional inconvenience onto Roadmaster by using the justification that Roadmaster would be inconvenienced in the first instance anyway.

NordicTrack asserts that because none, or few, of the documents are located in this district, this weighs in favor of transfer. There is [*15] some authority for weighing this as a factor. *Koos, Inc.*

*v. Performance Indus., Inc., supra,* 747 F. Supp. at 491. However, there is also authority that indicates it is not to be weighed heavily. *Hako Minuteman, Inc v. Advance Machine Co.,* 1990 U.S. Dist. LEXIS 5532, 1990 WL 70845 at *2 (N.D. Ill 1990); *Associated Mills, Inc. v. Rush-Hampton Indus.,* 588 F. Supp. 1164 (N.D. Ill. 1984) (the photocopying of documents is always necessary no matter where the lawsuit is to be tried, and their transmittal is often not a really serious burden).

Thus, though transfer to the Minnesota forum would reduce the inconvenience to Nordictrack, it would also increase the inconvenience to Roadmaster. Nordictrack has failed to demonstrate that the Minnesota forum would be clearly more convenient for the parties. A transfer to Minnesota would merely shift the burden of inconvenience from Nordictrack to Roadmaster.

**B. Convenience of the Witnesses**

The convenience to the witnesses seems to be almost evenly balanced. Presumably each company can assure the testimony of its employees and thus, the above convenience **[*16]** of the parties analysis applies to those witnesses. NordicTrack states that the inventor of the '795 patent, Mr. Pauls, and the attorney who prepared the patent application, reside in Minnesota. Def.'s Mot. at 9. It has not specified what testimony either of these witnesses would offer, however. *HN14* A party seeking transfer "must clearly specify the key witnesses to be called" and the general nature of their testimony. *General Portland Cement Co. v. Perry,* 204 F.2d 316, 320 (7th Cir. 1953); *Household Reinsurance Co. Ltd. v. Travelers Insurance Co.,* 1991 U.S. Dist. LEXIS 8737, 1991 WL 119121 at *7 (N.D. Ill. 1991).

Roadmaster states that two buyers for Sears attended meetings where the design and appearance of the Vitamaster were discussed: Ron Frieson and Bruce Abrams. Ron Frieson still works for Sears in the Chicago area. Bruce Abrams lives in Florida. Roadmaster also states that James Eckmann of Eckmann Associates, Inc., Roadmaster's manufacturer's representative, was also involved in meetings where the appearance and design of the Vitamaster was discussed. Pl.'s Opp'n to Def.'s Mot. at 4-5. He works in the Chicago area. **[*17]** For Eckmann and Frieson, Chicago is more convenient. For Abrams, Chicago and Minneapolis are probably equally inconvenient.

Roadmaster maintains that it worked with a wood vendor in Toledo, Ohio in selecting the type of wood and finish for the Vitamaster. *Id.* at 5. The court doubts there is a significant difference in the inconvenience to this person between flying to Minneapolis or flying to Chicago. The same thing is true of potential witnesses for Roadmaster who live in Indianapolis that aided Roadmaster in developing the advertising campaign and those who helped prepare the video that accompanies each Vitamaster. *Id.*

In total, Roadmaster indicates there are two potential nonparty witnesses who live in the Chicago area. NordicTrack points to Mr. Pauls and his lawyer who live in the Minneapolis area but has not stated what the necessity for their testimony would be. I conclude that neither the number of witnesses nor the relative importance of their potential testimony indicates that a transfer of venue would clearly increase the convenience to the witnesses.

**C. Interests of Justice**

This element of the Section 1404(a) analysis focuses primarily on the efficient functioning **[*18]** of the courts. *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 221. *HN15* In determining which forum will best serve the interests of justice courts look to many factors: which forum will be able to compel nonparty witnesses' testimony, *Store Decor Div. of JAS Int'l. v. Stylex Worldwide Indus. Ltd., supra,* 767 F. Supp. at 184; whether the plaintiff's choice of forum bears any connection to events underlying the suit, *Koos, Inc. v. Performance Indus., Inc., supra,* 747 F. Supp. at 491; which forum will best conserve judicial resources, *id.* at 491; and which forum can best insure a timely trial date. *Medi USA, L.P. v. Jobst Inst., Inc.,* 791 F. Supp. 208, 211 (N.D. Ill. 1992).

In this case, transferring venue will inhibit the ability to insure that nonparty witnesses' testimony

will be available at trial. As stated above, James Eckmann and Ron Frieson live in the Chicago area. If the case is transferred, the Minnesota court will not have the power to assure their presence at trial. The potential witnesses for Roadmaster who live in Indianapolis **[*19]** and in Toledo are not within the reach of this court. However, neither are they within the reach of the Minnesota court. Therefore, a transfer would not serve the interests of justice.

NordicTrack argues that the interests of justice will be better served by a transfer because "the underlying events bear little connection with this forum." NordicTrack's Motion at 10 (citing *Koos, Inc. v. Performance Indus., Inc., supra,* 747 F. Supp. at 491; *Virgin Air Inc. v. Virgin Atlantic Airways Ltd.,* 1992 U.S. Dist. LEXIS 5544, 1992 WL 73522 (N.D. Ill. 1992). However, both cases cited by NordicTrack are factually dissimilar to the facts in this case. In *Virgin Air,* the plaintiff's contacts with Illinois were minimal. The plaintiff was a United Kingdom corporation and only 4.5% of its passengers were Illinois residents. *Id.* In *Koos,* the plaintiff, a Wisconsin corporation, admitted that it had no more significant contact with the Northern District of Illinois than with any other district where it had distributed its advertising literature at issue in the case. *Koos, Inc. v. Performance Indus., Inc., supra,* 747 F. Supp. at 491. **[*20]** This is not the case at bar. Roadmaster is an Illinois corporation. The majority of its sales are made in Chicago. 6 Thus, a significant part of the alleged patent infringement occurred in this district. *Hako v. Minuteman, Inc., v. Advance Machine Co.,* 1990 U.S. Dist. LEXIS 5532, 1990 WL 70845 at *2. Roadmaster had meetings in Chicago with potential buyers where the eventual appearance of the machine was the subject of the meeting. Thus, decisions having to do with the alleged trade dress infringement were formulated here. Consequently, the underlying facts of the case do have a significant connection to this forum.

## FOOTNOTES

6 NordicTrack's letter of February 15, 1993 demands that Roadmaster cease manufacture and/or sale of all Vitamaster machines.

NordicTrack argues that the Minnesota forum will conserve judicial resources because Roadmaster can assert its claims in the form of counterclaims in Minnesota. Certainly this is true, but NordicTrack is equally able to file counterclaims in this **[*21]** case. "Federal *HN16* courts have, as a principle of sound judicial administration, given priority to the first suit filed, absent a balance of convenience in favor of the second action or special circumstances compelling priority for the second case." *Medi USA, L.P. v. Jobst Inst., Inc., supra,* 791 F. Supp. 208, 211. The preceding discussion shows that in this case neither the balance of convenience nor any special circumstances exist that compel priority for the second filed case in Minnesota.

Lastly, *HN17* the availability of the alternative courts for trial is a consideration to be weighed in the balance of factors. *Medi USA, L.P. v. Jobst Inst., Inc., supra,* 791 F. Supp. at 211. In this case, this factor weighs equally or slightly against transfer. This court has set a trial date for February 14, 1994. The Minnesota court has set trial for April 1, 1994, only about seven weeks later. Considering the length of time that will have already passed by February of 1994, seven weeks is not very significant.

Thus, the interests of justice would not be served by a change of venue. I recommend that the motion for transfer be denied.

## [*22] Motion To Stay

NordicTrack requests the court, barring a grant of its motion to dismiss or motion to change venue, to stay this proceeding pending the outcome of a suit filed by NordicTrack in the United States District Court for the District of Minnesota involving the same legal issues as this suit. NordicTrack does not specifically make any arguments concerning a stay separate from its arguments for

dismissal and transfer. For the reasons discussed above, I recommend the motion be denied.

## Conclusion

For the reasons stated above, I recommend that NordicTrack's motion to dismiss, or in the alternative transfer or stay Roadmaster's declaratory judgment action be denied.

ELAINE E. BUCKLO

United States Magistrate Judge

Dated: September 20, 1993.

Service: **Get by LEXSEE®**
Citation: **29 U.S.P.Q.2D (BNA) 1699, 1701**
View: **Full**
Date/Time: **Tuesday, November 13, 2007 - 5:02 PM EST**

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 **LexisNexis**⋅   About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Appendix 3

January 30, 1941

Mr. Eli Lilly
Mr. Rhodehenel
Mr. Ratter
Mr. D. R. Miller
Dr. Rice
Mr. R. W. Wheeler
Mr. W. J. Rice
Research File

## TRIP REPORT

### Meeting of Representatives of a Group of

### Drug Manufacturers Interested in Stilbestrol

### Hotel Washington, Washington, D. C.

### January 28, 1941

This meeting was called by Mr. Carson P. Frailey, Executive Vice President of the A. D. M. A. as a consequence of the meeting of various representatives with Dr. James J. Durrett and Mr. W. J. Campbell of the Federal Food and Drug Administration in Washington on December 30, 1940. The purpose of the present meeting was to resurvey the available scientific evidence regarding Stilbestrol and to decide what procedure would quickest and most effectively satisfy the Food and Drug Administration with regard to Stilbestrol. The companies represented were:

| | |
|---|---|
| Eli Lilly and Company | Dr. D. C. Hines |
| E. E. Squibb and Sons | Dr. J. A. Herrell<br>Dr.        Church |
| Finthrop Chemical Company | Dr. F. J. Stockman<br>Dr. J. B. Rice |
| Herck & Co., Inc. | Dr. J. H. Carlicle |
| Abbott Laboratories | Mr. Edgar B. Carter |
| The Upjohn Company | Dr. R. Clifford Upjohn |
| Sharp & Dohns, Inc. | Dr. W. A. Foirer |
| John Wyoth & Brother, Inc. | Mr. Ambrose Haasberger, Jr. |
| Charles E. Froust & Co. | Dr. E. Losinski |
| Ayoret, McKenna & Barrison, Ltd. | Mr. Hutchinson |
| A. D. M. A. | Mr. Carson P. Frailey |

- 2 -

Dr. E. A. Sharp of Parke, Davis and Company, and Mr. W. D. O'Connell
of George A. Broon and Company, Inc., were reported to have desired
to come but found themselves unable.

The preliminary discussion was concerned with the attitude of the
Administration, and it was the consensus of opinion emphasized
particularly by Mr. Frailey and Dr. Stockman that the Administra-
tion was extremely desirous of receiving the scientific evidence
on competitive items such as Stilbestrol in the form of a joint
master application containing the scientific evidence from all of
the interested companies. Dr. Stockman pointed out that this pro-
cedure in the case of sulfathiasole had proven very satisfactory
from the point of view of the Administration and the firms involved.

When comments made by Dr. Durrett and Mr. Campbell individually
to various of the persons present were repeated and compared, it be-
came evident that in the case of Stilbestrol the Administration
will insist on extremely detailed case reports and that most of the
articles which have so far been published are inadequate in this
respect. The consensus of opinion was that Stilbestrol will not be
approved until: 1) statements are furnished from the leading
"experts" in the country opining the safety of Stilbestrol and
advocating its release; and 2) sufficiently detailed case reports
and laboratory studies are submitted to provide an obvious basis for
the opinions.

It was agreed that sufficient experimental work had already been
done, that most clinicians were favorable, and that the question
was largely one of obtaining the opinions and case reports in the
proper form. Certain clinicians in New York City seem to be the
only ones opposing the release of Stilbestrol at the present time
and it was felt that if the evidence furnished by other clinicians
could all be presented to them they might alter their stands. Dr.
Stockman and Dr. Rice reported some success in this direction al-
ready in the case of Dr. Ephraim Shorr.

It was also reported that Dr. Durrett had stated emphatically that
the approval of one application would          the approval of all
those on file providing that each applicant could show the identity
of his product with that approved. All the representatives were
willing and anxious to follow the plan of filing a joint applica-
tion with two exceptions. The representatives of Squibb could
promise only that they would pool the data obtained since the last
filing of their application. The matter of pooling information ob-
tained previously was subject to the approval of Dr. John Anderson.
I was not in a position to assure the group of our cooperation and
stated so frankly. It was agreed that none of those joining the
group for joint filing would file an application previous to the
filing of the joint application.

I was chosen temporary chairman of the meeting and despite my pointing

- 3 -

out my possible inability to serve further was made permanent
chairman of the meeting and of the committee which was there ap-
pointed for the purpose of actually getting together the material
for submission. Other members of this committee were Dr. J. A.
Herrell of R. R. Squibb and Sons, Dr. J. B. Rice of Winthrop Chem-
ical Company, and Dr. E. Clifford Upjohn, of The Upjohn Company.
Squibb and Winthrop are apparently extremely anxious to get Stil-
bestrol on the market, so that I feel certain there will be no
dilatory tactics within this committee.

Following the meeting, the small committee met and outlined a
detailed program for gathering the necessary information. This
was expected to involve personal contact with each of twenty-four
men and groups in Boston, New York City, Philadelphia, Baltimore,
Chicago, Madison, St. Louis, and Rochester, Minnesota, the cities
mentioned by Dr. Durrett as containing the key men. It was planned
that the preliminary data would be submitted to me by March 1.

Appendix 4

LEXSEE 2000 U.S. DIST. LEXIS 20370

**KARIN A. BENTZ, et al., Plaintiffs, vs. REED ELSEVIER. INC., et al., Defendants.**

Case No. C-3-00-350

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*2000 U.S. Dist. LEXIS 20370*

December 5, 2000, Decided
December 5, 2000, Filed

**DISPOSITION:** [*1] PRO SE MOTION OF PLAINTIFF KEVIN RAMES TO DISMISS COMPLAINT WITHOUT PREJUDICE (DOC. # 23) OVERRULED; MOTION OF DEFENDANT REED ELSEVIER, INC., FOR AN ORDER OF CONDITIONAL DISMISSAL, WITHOUT PREJUDICE, AND FOR AN ORDER TO SHOW CAUSE WHY PLAINTIFFS AND THEIR COUNSEL HELD IN CIVIL CONTEMPT AND HAVE SANCTIONS IMPOSED UPON THEM (DOC. # 24) SUSTAINED IN PART AND OVERRULED IN PART; MOTION OF DEFENDANTS THOMSON CORPORATION AND WEST PUBLISHING COMPANY FOR AN ORDER OF CONDITIONAL DISMISSAL, WITHOUT PREJUDICE, AND FOR THE IMPOSITION OF SANCTIONS ON PLAINTIFFS AND THEIR COUNSEL (DOC. # 25) SUSTAINED IN PART AND OVERRULED IN PART; JUDGMENT ENTERED DISMISSING CAPTIONED CAUSE, WITHOUT PREJUDICE AND SUBJECT TO CONDITIONS IN PART AND WITH PREJUDICE IN PART.

**COUNSEL:** For Plaintiffs: Paul L. Ruskin/Kevin Rames.

For Defendants: Charles J. Faruki/Michael T. Mervis. Jonathan Hollingsworth/James Rittinger.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINION BY:** WALTER HERBERT RICE

**OPINION**

DECISION AND ENTRY OVERRULING PRO SE MOTION OF PLAINTIFF KEVIN RAMES TO DISMISS COMPLAINT WITHOUT PREJUDICE (DOC. # 23): DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF DEFENDANT REED [*2] ELSEVIER. INC., FOR AN ORDER OF CONDITIONAL DISMISSAL, WITHOUT PREJUDICE, AND FOR AN ORDER TO SHOW CAUSE WHY PLAINTIFFS AND THEIR COUNSEL SHOULD NOT BE HELD IN CIVIL CONTEMPT AND HAVE SANCTIONS IMPOSED UPON THEM (DOC. # 24): DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF DEFENDANTS THOMSON CORPORATION AND WEST PUBLISHING COMPANY FOR AN ORDER OF CONDITIONAL DISMISSAL, WITHOUT PREJUDICE, AND FOR THE IMPOSITION OF SANCTIONS ON PLAINTIFFS AND THEIR COUNSEL (DOC. # 25); JUDGMENT TO BE ENTERED DISMISSING CAPTIONED CAUSE, WITHOUT PREJUDICE AND SUBJECT TO CONDITIONS IN PART AND WITH PREJUDICE IN PART; TERMINATION ENTRY

Paul Ruskin ("Ruskin"). an attorney whose offices are located in New York City, filed this lawsuit in the United States District Court for the Southern District of New York, on behalf of Karin Bentz ("Bentz") and Kevin Rames ("Rames"), two attorneys who reside in the Virgin Islands, alleging that the Defendants had violated federal antitrust and copyright statutes. This litigation was assigned to Judge Richard Berman. On March 31, 2000. counsel for Defendant Reed Elsevier, Inc. ("REI"), wrote to Judge Berman, in accordance with practices established [*3] by that judicial officer, requesting a pre-motion conference concerning a motion he desired to file, requesting that the court transfer this lawsuit to the United States District Court for the Southern District of Ohio, pursuant to *28 U.S.C. § 1404(a). See* Doc. # 24 at Ex. 1. On April 14, 2000, Judge Berman conducted the requested conference. During that conference. Ruskin indicated that he would not consent to such a transfer and that he would file a memorandum in opposition on behalf of his clients. Judge Berman permitted REI to file a mo-

tion to transfer and established a briefing schedule. Accordingly, REI filed such a motion (*see* Doc. # 5), and Defendants Thomson Corporation and West Publishing Company (collectively "Thomson") filed an affidavit in support thereof. *See* Doc. # 8. Notwithstanding Ruskin's previous statement that a motion to transfer would be opposed, no Plaintiffs' memorandum in opposition was filed. [1] On June 15, 2000, Judge Berman sustained REI's unopposed motion seeking the transfer of this litigation to the United States District Court for the Southern District of Ohio. *See* Doc. # 12.

> 1    In his declaration, Michael Mervis, counsel for REI, states that when a memorandum on behalf of the Plaintiffs was not filed, he telephoned Ruskin, who indicated that he would not be filing any papers in opposition. According to Mervis, Ruskin explained that he had been conferring with a number of other attorneys who were interested in becoming co-counsel, that he and putative co-counsel intended to convert this litigation into a class action and that they did not care where it was litigated.

[*4]    After this lawsuit had been transferred, this Court conducted a preliminary pretrial conference with counsel on August 16, 2000. During that conference, it became apparent that neither Plaintiffs nor their counsel had any interest in prosecuting this litigation before this Court. As a consequence, the Court directed Ruskin to enter an appearance, *pro hac vice*, or barring that, for the Plaintiffs to obtain local counsel. In addition, the Court directed Plaintiffs to file a motion, pursuant to *Fed. R. Civ. P. 41(a)(2)*, requesting dismissal without prejudice, and further directed the parties to attempt to negotiate the terms and conditions of a dismissal entry. At the conclusion of that telephone conference, this Court made certain that Ruskin understood what it expected him to do.

Neither Ruskin nor local counsel has entered an appearance on behalf of Plaintiffs. Rather, Rames filed a pro se motion, requesting that this Court dismiss this litigation without prejudice and without conditions. *See* Doc. # 23. In response, REI has filed a motion with which it requests that this Court dismiss this litigation, without prejudice and subject to the conditions that, if either or both [*5] of the Plaintiffs or their counsel, on behalf of the Plaintiffs or anyone other party, initiate another action against the Defendants under the antitrust or copyright laws, such action be brought in the United States District Court for the Southern District of Ohio, Western Division, at Dayton. *See* Doc. # 24. REI also requests the Court to enter an order directing Plaintiffs and their counsel to show cause why they should not be held in civil contempt, for having failed to abide by the orders it issued during the August 16th pretrial confer-

ence; and that it order Ruskin to pay an unspecified amount of attorney's fees to it, pursuant to *28 U.S.C. § 1927*. [2] *Id.* Thomson has filed a motion with which it requests similar relief and, further, asks that the Court dismiss the Plaintiffs' Second Claim for Relief with prejudice. *See* Doc. # 25. In response to those motions, Ruskin has filed a memorandum in which he argues that this Court is without personal jurisdiction over him and that, therefore, it cannot impose any of the requested sanctions upon him. *See* Doc. # 27.

> 2    REI has also requested that this Court permit it to serve interrogatories on Rames. The purpose of those interrogatories is to test certain statements contained in his pro se motion seeking dismissal of this litigation without prejudice. The Court will decline to permit REI to serve the proposed interrogatories. For reasons set forth below, the Court imposes the conditions for dismissal without prejudice requested by REI. Therefore, it overrules Rames pro se motion, with which he requested an unconditional dismissal without prejudice. As a consequence, the Court sees no purpose in permitting REI to serve interrogatories upon Rames.

[*6]    On October 13, 2000, the Court conducted a telephone conference call with counsel and Rames. During that call, counsel for the Defendants represented that the Plaintiffs had agreed to the conditions of dismissal which Defendants had requested with their motions. Rames did not contradict that statement. [3] At the conclusion of that telephone conference call, the Court indicated that it would rule upon the pending motions, which it does herein. As a means of analysis, the Court will initially address the motion filed by Rames and the Defendants' motions, as they relate to the Plaintiffs, following which it will turn to the Defendants' motions as they relate to Ruskin.

> 3    Ruskin, however, is most decidedly opposed to the imposition of any conditions of dismissal which would limit the venue in which he could file a similar lawsuit on behalf of plaintiffs other than Bentz and Rames.

### I. Plaintiffs

The Defendants request the following as a condition of the dismissal of the Plaintiffs' claims, without prejudice, [*7] to wit: an order of this Court that, if either or both of the Plaintiffs should file a similar suit against them, such a lawsuit must be commenced in the United States District Court for the Southern District of Ohio, Western Division, at Dayton. In addition, Thomson requests that this Court dismiss the Plaintiffs' Second

2000 U.S. Dist. LEXIS 20370, *

Claim for Relief with prejudice. As a means of analysis, the Court will address these two requests in the above order.

For reasons which follow, this Court will require, as a term of a dismissal without prejudice, that any future action brought by either or both of the Plaintiffs against either one or more or all of the Defendants, alleging a violation of federal antitrust laws predicated upon the same events giving rise to this litigation, [4] be brought in the United States District Court for the Southern District of Ohio, Western Division, at Dayton. [5] This condition applies regardless of whether one or both of the Plaintiffs seeks relief in his or her individual capacity or in a representative capacity as the named plaintiff in a putative class action.

> 4   As is explained below, the Court dismisses the Plaintiffs' claims based upon federal copyright statutes, with prejudice.

[*8]

> 5   Given that this Court imposes conditions on the dismissal of this litigation, it overrules Rames Motion to Dismiss Complaint Without Prejudice (Doc. # 23), since he requested that this litigation be dismissed without conditions.

Shortly after this litigation was initiated, Judge Berman, at REI's request, joined in by Thomson, transferred the captioned matter to this Court in accordance with § 1404(a). Having gone to the expense and effort to convince Judge Berman that the resolution of the Plaintiffs claims in the Southern District of Ohio would foster the convenience of the parties and the witnesses and the interests of justice, the Defendants should not have to fight that battle again. Other courts have conditioned a dismissal without prejudice upon the stipulation that the lawsuit be re-filed, if at all, in the court to which the litigation had been transferred under § 1404(a). See RMD Concessions, L.L.C. v. Westfield Corp., 194 F.R.D. 241 (E.D.Va. 2000) (imposing such a condition, because dismissal without prejudice should not be used to undo decisions made prior [*9] to dismissal). See also Pittsburgh Jaycees v. United States Jaycees, 89 F.R.D. 166, 168 (W.D.Pa. 1981) (plaintiffs were required as a condition of voluntary dismissal to re-file the suit, if at all, in the same United States District Court to which it had been removed from state court); Scholl v. Felmont Oil Corp., 327 F.2d 697, 699 (6th Cir. 1964) (dismissing appeal from voluntary dismissal without prejudice, since condition that plaintiff re-file the case, if at all, in the same court was not "unreasonable").

Accordingly, the Court sustains the Defendants motions, to the extent that, with them, they request that the Court impose venue restrictions as a condition of dismissal without prejudice (i.e., any future action brought by either or both of the Plaintiffs against either one or more or all of the Defendants, alleging a violation of federal antitrust laws predicated upon the same events giving rise to this litigation, either in his or her individual capacity or in a representative capacity as the named plaintiff in a putative class action, must be filed in the United States District Court for the Southern District of Ohio, Western Division, at [*10] Dayton).

With their Second Claim, the Plaintiffs have alleged that the Defendants committed copyright misuse. During the October 13th conference call, Rames did not contradict the statement by Thomson's counsel that the Plaintiffs agreed to the dismissal of their Second Claim with prejudice. [6] Therefore, the Court sustains this branch of Thomson's motion and will dismiss the Plaintiffs' Second Claim for Relief, alleging copyright misuse, with prejudice.

> 6   The other Plaintiff herein, Bentz, did not participate in that conference call; however, Rames agreed to report to her about the issues discussed and to tell her to provide her thoughts to the Court, by way of a letter with copies to counsel. The Court has not received such a letter. If Bentz objects to the dismissal of the Second Claim for Relief, with prejudice, she must file a motion for relief from judgment, within the time provided by Fed. R. Civ. P. 59(e).

In addition, the Defendants request that this Court enter a order, directing the Plaintiffs [*11] to show cause why they should not be held in civil contempt for their failure to abide by the orders which this Court orally made during the August 16th conference call. In Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996), the Sixth Circuit indicated that to hold a party in civil contempt, a court must find, by clear and convincing evidence, that the party "violated a definite and specific order of the court requiring [him] to perform or refrain from performing a particular act or acts with knowledge of the court's order." Id. at 720 (internal quotation marks and citation omitted). Given that neither Plaintiff participated in the August 16th conference call and further, since this Court did not journalize the results of that call, this Court could not find that the Plaintiffs violated definite and specific orders issued by this Court. Accordingly, the Court declines to issue the requested order, directing the Plaintiffs to show cause why they should not be held in civil contempt, and overrules this branch of the Defendants' motions. [7]

> 7   Thomson also requests that this Court, as a condition of voluntary dismissal without prejudice, order the Plaintiffs to pay its costs and attorney's fees. Although a court may condition the

dismissal of a lawsuit without prejudice upon the payment of attorney's fees and costs, this Court will decline to do so herein. The Sixth Circuit has stressed that, when making a party pay costs and attorney's fees as a condition of such a dismissal, the court should focus on wasted costs. *Duffy v. Ford Motor Co., 218 F.3d 623 (6th Cir. 2000)*. Herein, Thomson has failed to identify what costs and attorney's fees were wasted in this litigation. It bears emphasis that there is no indication that Thomson had engaged in any discovery or that it had filed any motions, prior to the one which the Court addresses herein.

### [*12] II. Ruskin

As an initial matter, Ruskin argues that this Court is without personal jurisdiction over him, since he has not purposefully availed himself of the privilege of conducting affairs within the state of Ohio. For present purposes, this Court assumes that, if Ruskin were a defendant who had been sued in this Court, it would not be permissible to exercise personal jurisdiction over him. [8] However, Ruskin is not a defendant who has been haled before a distant court by a plaintiff; rather, he is an attorney who filed suit on behalf of two clients in the Southern District of New York, only to have that litigation transferred to this Court, pursuant to *§ 1404(a)*. Any lawsuit which is filed in federal court can be transferred to any other judicial district in which "it might have been brought." *28 U.S.C. § 1404(a)*. The Sixth Circuit has interpreted that phrase as meaning that a case can be transferred to a judicial district where venue is proper and personal jurisdiction can be exercised over the defendants. *Lothschuetz v. Carpenter, 898 F.2d 1200, 1208 (6th Cir. 1990)*. As Judge Berman noted in his transfer order, venue is proper [*13] in this district, and the Defendants are subject to personal jurisdiction in the Southern District of Ohio. Therefore, the possibility that this lawsuit would be transferred to this judicial district has existed since the Complaint was filed.

> 8    Moreover, this Court does not hold that Ruskin subjected himself to the jurisdiction of this Court by participating in the two telephone conferences or by filing his memorandum challenging this Court's personal jurisdiction over him.

Moreover, by signing the Plaintiffs' Complaint, Ruskin indicated that he was their attorney of record. *See Fed. R. Civ. P. 11(a)* (noting that every paper must be signed by at least one attorney of record). The transfer of this case did not, by operation of law, terminate Ruskin's status as counsel of record for the Plaintiffs. That point is amply demonstrated by examining *Vanbeever v. DeWolf,*

*528 F.2d 932 (3rd Cir. 1976)*. Therein, the plaintiffs filed suit against the defendant in the United States District Court [*14] for the District of Connecticut. The defendant obtained counsel who represented him in that court. Subsequently, the lawsuit was transferred to the United States District Court for the District of the Virgin Islands. No attorney entered an appearance on behalf of the defendant in the transferee court. Thereafter, the transferee court informed the parties and counsel of the trial date solely through notice in a local legal publication. When neither the defendant nor counsel representing him appeared at the trial, the District Court conducted an *ex parte* proceeding and awarded substantial compensatory and punitive damages in favor of the plaintiffs. After the defendant had unsuccessfully attempted to have that judgment vacated, he appealed to the Third Circuit, which concluded that the judgment against the defendant was void, since he had not been given notice of the trial date. Of particular relevance herein is the appellate court's discussion of the fact that, although he had not entered an appearance in the lawsuit after it had been transferred, the attorney who had represented the defendant in District of Connecticut remained counsel of record and that he should have been provided [*15] notice of the trial date. Similarly, although Ruskin has not entered appearance in this Court (despite being ordered by the Court to do so), he remains counsel of record in this litigation. It is axiomatic that a court has jurisdiction over counsel of record in litigation before it.

In sum, Ruskin voluntarily became counsel of record in this litigation, when he filed the Complaint on behalf of the Plaintiffs. Since this lawsuit might have been brought in this judicial district, the possibility of a transfer to the Southern District of Ohio has existed since the inception of this litigation. Ruskin's status as counsel of record was not terminated by the transfer. Therefore, this Court can exercise personal jurisdiction over him.

As an additional argument in support of his contention that this Court cannot exercise personal over him, Ruskin relies upon the Local Rules for the Southern District of Ohio. Under S.D. Ohio Civ. R. 83.5(a), all parties, other than those appearing pro se, must be represented by an attorney who is a member in good standing of both the bar of the Southern District of Ohio and the bar of the Supreme Court of Ohio. S.D. Ohio Civ. R. 83.5(d) authorizes an attorney, [*16] who is not eligible to become a member of the bar of the Southern District of Ohio, to appear *pro hac vice*. Ruskin points out that he is not a member in good standing of either the bar of the Southern District of Ohio or the Supreme Court of Ohio and, further, that he has not moved for admission *pro hac vice* in this litigation. As a consequence, Ruskin reasons that he could not have appeared as counsel for the Plaintiffs and that, therefore, this Court is without personal

jurisdiction over him. This Court cannot agree. Although the Local Rules may have served as the basis for this Court preventing Ruskin from representing the Plaintiffs. the language of those Rules does not indicate that the Court is without personal jurisdiction over him.

The Defendants request that this Court condition the dismissal of this litigation without prejudice, upon the stipulation that any further litigation brought by Ruskin against either or both of them. whether on behalf of the Plaintiffs herein or anyone else. be filed in the Southern District of Ohio, Western Division. at Dayton. The Defendants point out that Ruskin previously indicated that he anticipated seeking to maintain this litigation [*17] as a class action. According to the Defendants, such a condition is necessary in order to protect the integrity of Judge Berman's transfer order. since. without it, Ruskin would be free to file a new class action in the Southern District of New York and. thus, could avoid that order. This Court will decline to impose that requested condition, at least insofar as same would bar suit against Defendants on behalf of anyone but either or both Plaintiffs. [9] Judge Berman found, in the context of a lawsuit filed in the Southern District of New York by two Plaintiffs who practice law in the Virgin Islands. that the convenience of the parties and the witnesses and the interests of justice warranted a transfer to this Court. Since the Complaint herein does not allege that this lawsuit can be maintained as a class action. Judge Berman did not indicate that he was addressing the issue of whether an identical lawsuit, filed as a class action, would properly be transferred to this judicial district. Nor did that judicial officer purport to address the issue of whether a similar lawsuit filed on behalf of anyone, other than two lawyers who resided in the Virgin Islands and had minimal connections [*18] with the Southern District of New York, would properly be transferred pursuant to *§ 1404(a)*. Therefore. it is neither necessary nor proper to limit Ruskin to filing a future lawsuit, on behalf of plaintiffs other than the two named herein, to the Southern District of Ohio. Western Division, at Dayton. in order to protect the integrity of Judge Berman's order.

> 9  Of course, if such a new lawsuit is filed and one or both of the Plaintiffs herein is named as a plaintiff. that lawsuit must be filed in the Southern District of Ohio, Western Division, at Dayton.

Accordingly, the Court overrules the branches of the Defendants' motions, with which they seek to limit the venue in which Ruskin could file a similar lawsuit on behalf of Plaintiffs other than either or both of Plaintiffs herein.

The Defendants also request that this Court enter an order requiring Ruskin to show cause why he should not be held in civil contempt for failing to abide by the orders issued by this Court during its August 16th conference [*19] call with counsel. For reasons which follow, this Court will decline to enter the requested order. The Court begins its analysis by reviewing the standards which are applicable to requests that a party be held in civil contempt.

In *McMahan & Co. v. Po Folks, Inc., 206 F.3d 627 (6th Cir. 2000)*, the Sixth Circuit noted that "the primary purpose of a civil contempt order is to compel obedience to a court order and compensate for injuries caused by non-compliance," and that "an award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated." *Id. at 634* (internal quotation marks and citations omitted). As is indicated above. before a court may find one in civil contempt, that court must find, by clear and convincing evidence, that such person violated a definite and specific court order requiring him to perform or to refrain from performing a particular act or acts. *Rolex Watch, 74 F.3d at 720*. Willfulness, however. is not an element of civil contempt: therefore, the intent of a party to disobey a court order is irrelevant to the validity of a contempt finding. *Id*.

This Court ordered [*20] Ruskin to enter an appearance. *pro hac vice*, or barring that. for the Plaintiffs to obtain local counsel to represent them in this litigation. At the conclusion of that hearing, the Court made certain that Ruskin understood what was expected of him. Although Ruskin indicated that he understood the Court's directives, he has failed to comply. He has not entered an appearance, *pro hac vice*, nor has local counsel entered an appearance for his clients. Thus, this Court could find, by clear and convincing evidence, that Ruskin has violated a specific and definite order of this Court, directing him to perform an act. Nevertheless. keeping in mind that a primary purpose of civil contempt is to compensate the party which has been harmed by the non-compliance of the alleged contemnor, [10] this will decline to enter an order. directing Ruskin to show cause why he should not be held in civil contempt. Filing the motions which the Court addresses herein is the only possible injury caused to the Defendants as a result of Ruskin's failure to comply with the order made during the August 16th telephone conference. With those motions, however, the Defendants have sought relief in addition to [*21] the dismissal of this litigation without prejudice. They have requested that the Court impose conditions on the dismissal, only some of which have been approved by the Court. In addition, Thomson has requested that the Court dismiss the Plaintiffs' Second Claim for Relief, with prejudice. There is no indication that Ruskin would have voluntarily agreed to these conditions, if he had entered an appearance as directed by the Court. On the contrary, Ruskin indicated in an e-mail to REI's counsel that he

would not agree to limiting his right to practice law as a condition of dismissal. Consequently, this Court cannot conclude that Ruskin's failure to abide by this Court's order has caused the Defendants to suffer an injury. Moreover, as discussed below. the Defendants have also requested that the Court award them attorney's fees for actions which occurred before this litigation was transferred. There is no link between that request and Ruskin's failure to abide by this Court's order.

> 10  Another purpose of civil contempt is to compel compliance with a court order. Given that the Court dismisses this litigation herein. there is no need to compel Ruskin's further compliance at this point.

[*22]  Accordingly. the Court overrules the branches of the Defendants' motions with which they request that the Court enter an order directing Ruskin to show cause why he should not be held in civil contempt.

Having declined to enter that requested order. the Court is, however, compelled to comment on what it deems to be entirely inappropriate behavior by an attorney. Quite simply. Ruskin's failure to comply with this Court's specific order is far below the type of professional conduct that is expected of any attorney. The Court assumes that Ruskin's blatant and unprofessional disregard of its order was based on the premise that the order was unenforceable, since the Court was without personal jurisdiction over him. If the Court's assumption is correct, Ruskin's remedy was to file a motion for reconsideration. raising that argument. rather than merely to ignore a definite and specific court order. Should Ruskin ever seek to appear *pro hac vice* before this Court. his unprofessional conduct in this litigation will weigh heavily upon the Court's consideration of such a request.

The Defendants argue that, pursuant to *28 U.S.C. § 1927*. Ruskin should be required [*23] to compensate them for the attorney's fees they incurred to obtain the transfer of this litigation to this Court. According to the Defendants, Ruskin acted vexatiously, unreasonably and in bad faith by filing this litigation in the Southern District of New York. given the absence of a nexus between that venue and the parties and actions giving rise to this litigation. As a means of analysis, the Court will initially will review the standards which govern the award of attorney's fees under *§ 1927*, following which it will turn to the Defendants' request.

*Section 1927* provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof

who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Sixth Circuit has indicated that a District Court may impose sanctions upon an attorney, pursuant to *§ 1927*, "where the attorney's conduct amounts to a serious and studied disregard for the orderly processes of justice" and that "sanctions are warranted when an [*24] attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Cook v. American S.S. Co., 134 F.3d 771, 774 (6th Cir. 1998)* (internal quotation marks and citations omitted). The Sixth Circuit has stressed that the standard for awarding attorney's fees under *§ 1927* is an objective one. *Ridder v. City of Springfield, 109 F.3d 288, 298 (6th Cir. 1997), cert. denied, 522 U.S. 1046, 139 L. Ed. 2d 634, 118 S. Ct. 687 (1998)*.

Under *28 U.S.C. § 1391(a)(1)*, venue for this litigation was proper in any judicial district in which the Defendants resided. The Defendants are corporations; therefore, for purposes of venue, they are deemed to be residents of any judicial district in which they were subject to personal jurisdiction at the time the litigation was initiated. *28 U.S.C. § 1391(c)*. The Defendants did not raise the affirmative defense of lack of personal jurisdiction when they filed their Answers in the Southern District of New [*25] York. *See* Docs. # # 9 and 11. The Defendants admitted in those pleadings that they did substantial business and maintained offices within that judicial district. Consequently. it is apparent that personal jurisdiction could have been exercised over the Defendants in the Southern District of New York and that, therefore, venue was proper in that judicial district. Indeed, REI implicitly conceded that such venue was proper, by requesting a transfer to this Court pursuant to *§ 1404(a)*. *See Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)* (noting that a transfer pursuant to *§ 1404(a)* is permissible only when venue is proper in the transferor court and that court can exercise personal jurisdiction over the defendants). Therefore, it is apparent that the Defendants are asking this Court to require Ruskin to pay the attorney's fees they incurred to secure the transfer of this litigation, even though, in accordance with *§ 1391*, venue was proper in the Southern District of New York. In the absence of any indication that Ruskin filed this lawsuit in the Southern District of New York for the sole purpose of causing inconvenience and additional expense to the Defendants, [*26] this Court concludes that he did not

act either unreasonably or vexatiously by initiating this litigation in a statutorily authorized judicial district. Congress has anticipated that civil cases will be filed in inconvenient venues, by enacting *§ 1404(a)*, which provides a venue transfer mechanism. Accordingly. the Court overrules the Defendants' motions to the extent that they request an award of attorney's fees pursuant to *§ 1927*, because Ruskin filed this litigation in the Southern District of New York. [11]

> 11   In support of this branch of their motions. the Defendants have relied upon *Laine v. Morton Thiokol, Inc., 124 F.R.D. 625 (N.D.Ill. 1989).* Therein, plaintiff's counsel filed suit in the Northern District of Illinois, against Morton Thiokol and three of its employees. Although Morton Thiokol's corporate headquarters was located in that judicial district, the employees were residents of Utah. In addition, the events giving rise to that litigation had occurred in Utah. During a pretrial conference. the court raised the issue of whether personal jurisdiction could be exercised over the individual defendants and pointed out the absence of a link between the Northern District of Illinois and the events giving rise to the litigation. The court also cautioned plaintiff's counsel that he seemed to be engaging in "forum-shopping with a vengeance," which "ought to be discouraged with all the vigor at the court's disposal." *Id. at 627-28.* Thereafter. the plaintiff dismissed the three individual defendants from the lawsuit, and Morton Thiokol sought and was granted a transfer to Utah. After transferring the litigation, the transferor court awarded attorney's fees to Morton Thiokol. pursuant to *Fed. R. Civ. P. 11* and *§*

*1927.* Herein. Ruskin did not name as defendants, individuals over whom *in personam* jurisdiction was lacking in the Southern District of New York. Moreover, there is no indication that Judge Berman cautioned Ruskin in a manner similar to the warnings given in *Laine.* Therefore, that decision is distinguishable from the present litigation.

[*27]   Accordingly, judgment is to be entered in favor of Defendants and against Plaintiffs, dismissing their First Claim for Relief (alleging violations of federal antitrust laws) without prejudice and their Second Claim for Relief (alleging violations of federal copyright laws) with prejudice. The dismissal without prejudice of the Plaintiffs' First Claim for Relief is subject to the following condition. to wit: any future action, brought by either or both of the Plaintiffs (whether in an individual capacity or as the named plaintiff in a putative class action) against either one or more or all of the Defendants, alleging a violation of federal antitrust laws, predicated upon the same events giving rise to this litigation, must be filed in the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division. at Dayton.

December 5, 2000

/s/

WALTER HERBERT RICE, CHIEF JUDGE

UNITED STATES DISTRICT COURT

Appendix 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARRIE DIMANCHE and
STEVE DIMANCHE,

Plaintiffs,

v.

Civil Action No.  03-0236 (JDB)

ELI LILLY AND COMPANY,

Defendant.

ORDER

Carrie and Steve Dimanche ("plaintiffs") filed this action in the Superior Court for

the District of Columbia seeking compensatory and punitive relief for injuries associated with

Mrs. Dimanche's alleged in utero exposure to diethylstilbestrol ("DES"). Eli Lilly and Company

("defendant") removed the case to this Court on February 13, 2003. After discovery had begun,

defendant moved to transfer the case to the District of Massachusetts, where plaintiffs reside, or

alternatively, to the District of Connecticut, where the events giving rise to their injuries allegedly

occurred. Following eight other judges of this Court who have denied similar motions in DES

cases against defendant, the Court denies defendant's motion to transfer.

Pursuant to 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses,

in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought." A party seeking a transfer must show that the

"balance of convenience of the parties and witnesses and the interest of justice are in [its] favor."

Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (quoting Consol. Metal

-1-

Prods., Inc. v. Am. Petroleum Inst., 569 F. Supp. 773, 774 (D.D.C. 1983)). Factors to be considered in determining whether to grant a motion to transfer include ease of access to sources of proof, the availability of compulsory process to compel the attendance of unwilling witnesses, the amount of expense for willing witnesses, and other practical aspects of expeditiously and conveniently conducting a trial. See SEC v. Page Airways, 464 F. Supp. 461, 463 (D.D.C. 1978). Furthermore, district courts have a "local interest in deciding local controversies at home." Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). If the particular controversy has meaningful ties to the plaintiff's chosen forum and the plaintiff is a resident of that forum, the plaintiff's choice is given substantial deference, see Wilderness Soc'y v. Babbit, 104 F. Supp. 2d 10, 12-13 (D.D.C. 2000), and the moving party "bear[s] a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." Pain v. United Tech. Corp., 637 F.2d 775, 784 (D.C. Cir. 1980). But where the lawsuit has no factual nexus with the chosen forum, the plaintiff's election may be accorded less weight. See Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981); Trout Unlimited, 944 F. Supp. at 17; Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001).

Here, even if plaintiffs' choice of forum is shown little deference, defendant has failed to demonstrate that the convenience of the parties and witnesses and the interest of justice would be served by a transfer of venue. Plaintiffs' chosen forum is, indeed, neither their home jurisdiction nor the site of the principal events giving rise to their claims. But plaintiffs submit that their claims have a factual nexus to the District of Columbia in that defendant has engaged in lobbying and other efforts to promote DES here. Additionally, while the substantive law of Connecticut will govern this case, plaintiffs note that the case is likely to pose issues of District of

-2-

Columbia procedural law. And although many of the fact witnesses reside in Massachusetts or Connecticut, defendant does not dispute that the expert witnesses in this case hail from New Jersey, Alabama, Maryland, Texas, Arkansas, and Pennsylvania. Defendant's motion would be more compelling if the anticipated witnesses were more geographically clustered around the proposed alternative venues. Finally, any concerns about the availability of compulsory process in this jurisdiction are mitigated by the fact that plaintiffs and defendant both have counsel in the District of Columbia experienced in handling this type of litigation, and that those counsel have cooperated in numerous other DES cases here with respect to making witnesses and documents readily available.

Thus, upon consideration of defendant's motion to transfer and plaintiffs' opposition thereto, and having assessed the convenience of the parties and witnesses as well as the interest of justice, it is hereby

ORDERED that defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is DENIED.

/s/
JOHN D. BATES
United States District Judge

Signed this 17ᵗʰ day of October, 2003.

-3-

Copies to:

**Aaron M. Levine**
AARON M. LEVINE & ASSOCIATES, P.A.
1320 19th Street, NW
Suite 500
Washington, DC 20036
(202) 833-8040
(202) 833-8046
aaronlevinelaw@aol.com

**Lawrence Hedrick Martin**
FOLEY HOAG LLP
1747 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
(202) 223-1200
(202) 785-6687
lmartin@foleyhoag.com

Appendix 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CELIA ROING, DIANE MULLEN,      )
and ELAINE PHILBRICK,           )
                                )
            Plaintiffs,          )      Civil Action No. 02-2211 (JDB)
                                )
      v.                        )
                                )
ELI LILLY AND COMPANY,          )
                                )
            Defendant.          )

## ORDER

Plaintiffs, who all reside in Massachusetts, have filed this diversity action alleging they

were exposed in utero to diethylstilbestrol ("DES") in Massachusetts. Defendant Eli Lilly and

Company ("defendant") has moved to transfer the case to the District of Massachusetts, pursuant

to 28 U.S.C. § 1404(a), asserting that Massachusetts is a more convenient forum than the District

of Columbia, the action could have been brought in Massachusetts originally, the action has no

connection to the District of Columbia, and transfer thus would be in the interest of justice.

Following six other judges of this Court who have denied similar motions in DES cases

against Eli Lilly, the Court denies defendant's motion. The Court agrees that this action could

have been brought in the District of Massachusetts. However, the convenience of the parties and

witnesses, and the interest of justice, do not warrant transfer. See 28 U.S.C. §1404(a).

Plaintiffs' choice of forum is entitled to some weight, although it is given less deference

when the chosen forum is not the plaintiff's home forum. See Piper Aircraft v. Reyno, 454 U.S.

235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On the other

hand, defendant has engaged in some lobbying and other efforts related to DES in the District of

Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly, and even

has been the forum of choice by Eli Lilly for its litigation against insurers regarding coverage for

DES claims.[1] The location of fact and particularly expert witnesses all around the country does

not clearly favor Massachusetts over the District of Columbia. Finally, it is undisputed that

plaintiffs and defendant both have counsel in the District of Columbia experienced in handling

this type of litigation, and that those counsel have cooperated in numerous other DES cases in the

District of Columbia with respect to making witnesses and documents (including medical

records) readily available. In short, the relevant factors do not weigh clearly in favor of transfer

to the District of Massachusetts.

Accordingly, upon consideration of defendant's motion to transfer and plaintiffs'

opposition thereto, and having assessed the convenience of the parties and witnesses as well as

the interest of justice, it is this _____ day of January, 2003, hereby

ORDERED that defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is

DENIED.

JOHN D. BATES
United States District Judge

---

[1] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the
District of Columbia courts against allegations that it was engaged in forum shopping.

-2-

Appendix 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
HILLARY BLANK and MARC BLANK,  )
                              )
     Plaintiffs,             )
                              )
v.                           )   Civil Action No. 02-1976 (RWR)
                              )
ELI LILLY AND COMPANY,       )
                              )
     Defendant.              )
                              )
```

## MEMORANDUM OPINION AND ORDER

Plaintiffs Hillary Blank and Marc Blank filed this diversity action alleging that Ms. Blank was exposed *in utero* to diethylstilbestrol ("DES"). Defendant Eli Lilly and Company ("Eli Lilly") has moved to transfer the case to the District of Massachusetts. Because defendant has failed to establish that the convenience of the parties and the witnesses and the interests of justice favor transfer to Massachusetts, defendant's motion will be denied.

### BACKGROUND

Plaintiffs are residents of New Jersey. Eli Lilly is an Indiana pharmaceutical corporation which manufactured and sold DES throughout the United States. Ms. Blank alleges that her mother took DES during pregnancy.

Ms. Blank was born in Massachusetts in 1967. She alleges that, as a result of her mother's use of DES during pregnancy,

- 2 -

she has suffered physical injuries including reproductive

malfunction and infertility.  Ms. Blank also alleges that she has

suffered depression, anxiety and emotional distress.

### DISCUSSION

Defendant has moved to transfer this case to Massachusetts

pursuant to 28 U.S.C. § 1404(a)(2000), which provides that "[f]or

the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any

other district or division where it might have been brought."

The moving defendant "bears the burden of demonstrating that

transfer pursuant to Section 1404(a) is warranted."  Gemological

Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71

(D.D.C. 2001).  Section 1404(a) grants district courts broad

discretion to transfer cases, but they must "adjudicate such

motions according to an 'individualized, case-by-case

consideration of convenience and fairness.'"  Gemological

Institute, 145 F. Supp. 2d at 71 (citing Stewart Organization,

Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

The Court must first determine whether venue and personal

jurisdiction are proper in the transferee district.  Lamont v.

Haig, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978); see also Relf v.

Gasch, 511 F.2d 804, 806 (D.C. Cir. 1975) (holding that the

- 3 -

district court may transfer a case only to a judicial district where the case might have been brought).

Once a court makes this determination, it must then "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." <u>Wilderness Society v. Babbitt</u>, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). On the private side of the balance, these factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the districts; and (6) the ease of access to sources of proof. <u>Id.</u> The factors on the public side of the balance include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of both the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. <u>Id.</u>

I.   <u>Venue in the District of Massachusetts</u>

"A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought . . . in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .." 28 U.S.C.

- 4 -

§ 1391(a)(2). Plaintiff alleges that her *in utero* exposure to
DES occurred during her mother's pregnancy in Massachusetts.

A federal court in Massachusetts would be able to assert
personal jurisdiction over Eli Lilly based on plaintiff's
allegations that the company sold DES to plaintiff's mother in
Massachusetts. See Mass. Gen. Laws ch. 223A, § 3 (Massachusetts
long-arm statute governing torts allegedly committed in
Massachusetts). Because venue and personal jurisdiction would be
proper in the District of Massachusetts, this case is one which
might have been brought there.

II.  Private Factors

Typically, the plaintiff's choice of forum is given
considerable weight, but it is entitled to "substantially less
deference when the forum preferred by the plaintiff is not his
home forum." Boers v. United States, 133 F. Supp. 2d 64, 65
(D.D.C. 2001) (citing Piper Aircraft v. Reyno, 454 U.S. 235,
255-56 (1981)). In this case, plaintiffs are not residents of
their chosen forum, but plaintiffs argue that much of defendant's
lobbying efforts before the Food and Drug Administration ("FDA")
occurred in the District of Columbia. Defendant's choice of
another forum is undermined by the fact that defendant chose the
District of Columbia as the forum for its own litigation against
insurers regarding coverage for DES claims and opposed the

- 5 -

insurers' motion to transfer the case to another forum. <u>See</u> Eli
Lilly's Memorandum in Opposition to Motion to Transfer, Exh. 4 to
Plaintiffs' Opposition to Defendant's Motion to Transfer. The
balance tips slightly in favor of this district, then, when
weighing the parties' choices of fora.

Defendant maintains that plaintiffs' claim arose in
Massachusetts where Ms. Blank's <i>in utero</i> exposure occurred.
Plaintiffs argue that their claim also arose in part from Eli
Lilly's lobbying efforts in the District of Columbia to obtain
FDA approval for DES. This factor favors neither district.

Defendant has not shown that the convenience of the parties
and their witnesses favors transfer to Massachusetts. There is
only one witness who lives in Massachusetts and that witness will
appear without subpoena at a mutually-convenient location. At
least one of plaintiffs' expert witnesses is in this district.
No medical records of Ms. Blank's are in Massachusetts. There
has been no showing that holding trial in the District of
Columbia would impede the parties' access to evidence.

Defendant has failed to show that the private factors weigh
in favor of transferring this case to Massachusetts.

III. <u>Public Factors</u>

The "interests of justice are best served by having a case
decided by the federal court in the state whose laws govern the

- 6 -

interests at stake." <u>Kafack v. Primerica Life Insurance Co.</u>, 934
F. Supp. 3, 8 (D.D.C. 1996). In this case, however, it has yet
to be determined which state or district's law will govern the
dispute. There is no evidence regarding the relative congestion
of the district courts of the District of Columbia and
Massachusetts, and neither the District of Columbia nor
Massachusetts has a strong local interest in this controversy.
Defendant has failed to show that the public factors favor
transfer.

## CONCLUSION

Defendant has failed to show that the convenience of the
parties and the witnesses and the interests of justice favor
transfer to Massachusetts. Accordingly, it is hereby

ORDERED that defendant's motion to transfer [7] be, and
hereby is, DENIED.

SIGNED this 13th day of December, 2002.


RICHARD W. ROBERTS
United States District Judge

Appendix 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LORI ANN FASTINO,

        Plaintiff,

        v.

ELI LILLY AND COMPANY,

        Defendant.

Civil Action 02-02210 (HHK)

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lori Ann Fastino ("Fastino"), brings this diversity action for damages arising from her alleged exposure *in utero* to diethylstilbestrol ("DES"). Presently before this court is defendant Eli Lilly and Company's ("Eli Lilly") motion to transfer this case to the District of Massachusetts [#6]. Upon consideration of defendant's motion, the opposition thereto, and the record of this case, the court concludes that defendant's motion to transfer must be denied.

### I. BACKGROUND INFORMATION

Fastino is a resident of Rhode Island. Eli Lilly is an Indiana pharmaceutical corporation which manufactured, marketed, and sold DES throughout the United States. Fastino alleges that sometime between 1967 and 1968, her mother ingested DES while she was pregnant with Fastino pursuant to her physician's prescription. Fastino alleges that as a result of her mother's use of DES during pregnancy, she has suffered physical injuries including reproductive malfunction and infertility.

## II. ANALYSIS

### A.    Legal Standard for Motion to Transfer

Eli Lilly has moved to transfer this case to Massachusetts pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving defendant "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted." *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001). Section 1404(a) grants district courts broad discretion to transfer cases, but they must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The court must first determine whether the action could have been brought originally in the District of Massachusetts. The court must consider whether venue and personal jurisdiction are proper in the transferee district. *Lamont v. Haig*, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978); *see Relf v. Gasch*, 511 F.2d 804, 806-07 (D.C. Cir. 1975). Once a court makes this determination, it must then "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). The private interest factors include: (1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the districts, and (6) the ease of access to sources of proof. *Id.* The public interest factors include: (1) the transferee district's

2

familiarity with the governing law, (2) the relative congestion of both the transferor and transferee courts, and (3) the local interest in deciding local controversies at home. *Id.*

**B.    Jurisdiction and Venue in the District of Massachusetts**

**1.    Subject Matter Jurisdiction**

The District of Massachusetts has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship. Fastino is a resident of Rhode Island; Eli Lilly is incorporated and has its principal place of business in Indiana. Eli Lilly does not contest the amount in controversy requirement at this time. Thus, the District of Massachusetts would have subject matter jurisdiction.

**2.    Personal Jurisdiction**

A federal court in Massachusetts would be able to assert personal jurisdiction over Eli Lilly based on Fastino's allegations that the company sold DES to Fastino's mother in Massachusetts. The Massachusetts long-arm statute extends to torts allegedly committed in Massachusetts. *See* MASS. GEN. LAWS ch. 223A, § 3.

**3.    Venue**

"A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought . . . in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). Fastino alleges that her *in utero* exposure to DES occurred during her mother's pregnancy in Massachusetts.

Because subject matter jurisdiction, personal jurisdiction, and venue would be proper in the District of Massachusetts, this case is one which might have been brought there.

3

C.    **Private Interest Factors**

The court now turns to the private interest factors. Typically, the plaintiff's choice of forum is given considerable weight, but it is entitled to "substantially less deference when the forum preferred by the plaintiff is not his home forum." *Boers v. United States*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). Because Fastino is not a resident of the District of Columbia, the court gives less deference to her choice of forum. Eli Lilly's choice of another forum, however, is undermined by the fact that Eli Lilly previously chose the District of Columbia as the forum for its own litigation against its insurers regarding coverage for DES claims and opposed the insurers' motion to transfer the case to another forum. *See Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710 (D.C. Cir. 1986); Ex. 2 to Pl.'s Opp'n. The balance tips slightly in favor of this district, then, when weighing the parties' choices of fora.

Eli Lilly maintains that Fastino's claim arose in Massachusetts where her *in utero* exposure occurred. This factor favors the District of Massachusetts.

Eli Lilly has not shown that the convenience of the parties and their witnesses favors transfer to Massachusetts. Eli Lilly argues that the relevant treating physicians and pharmacists of Fastino and her mother during the pregnancy, as well as relevant medical records, are in Massachusetts. Fastino represents, however, that Fastino's mother and her treating physician are both deceased, and that medical records and witnesses will be voluntarily produced in the District of Columbia without need for subpoena. Fastino's expert witnesses are located in Maryland, Texas, Pennsylvania, and Alabama; Eli Lilly's experts are located in Alabama, Maryland, and

4

New Jersey. There has been no showing that holding trial in the District of Columbia would impede the parties' access to evidence.

The court concludes that Eli Lilly has failed to show that the private factors weigh in favor of transferring this case to Massachusetts.

**D.    Public Factors**

The court now turns to the public interest factors. The "interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996). In this case, Massachusetts product liability law would govern the dispute. There is no evidence regarding the relative congestion of the district courts of the District of Columbia and Massachusetts. Massachusetts has an interest in determining this controversy because the alleged tort occurred in Massachusetts. The District of Columbia also has an interest in the controversy because it is where Eli Lilly's lobbying efforts to gain approval of DES and the original industry-wide promotion of DES occurred. *See* Ex. 3 to Pl.'s Opp'n. In addition, substantial litigation concerning DES has occurred in this district in the past. *See, e.g.*, *Shields v. Eli Lilly & Co.*, 895 F.2d 1463 (D.C. Cir. 1990); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418 (D.C. Cir. 1988); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710 (D.C. Cir. 1986). Therefore, the court concludes that Eli Lilly has failed to show that the public factors favor transfer.

### III. CONCLUSION

Although this action could have been brought in the District of Massachusetts, the convenience of the parties and the witnesses and the interests of justice do not favor transfer to Massachusetts. Therefore, this court concludes that defendant's motion to transfer must be DENIED.

### ORDER

Accordingly, it is this 8th day of October, 2003, hereby:

**ORDERED**, that defendant's motion to transfer [#6] is **DENIED.**

Henry H. Kennedy, Jr.
United States District Judge

6

# Appendix 9

APPENDIX 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELI LILLY AND COMPANY,          )
                                )
                 Plaintiff      )
                                )
        v.                      )  Civil Action No. 62-1163
                                )  Judge Norma Holloway Johnson
THE HOME INSURANCE COMPANY, et al. )
                                )
                 Defendants     )
                                )

PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO MOTION TO TRANSFER

Peter C. Ward
Michael A. Nardolilli
BAKER & DANIELS
1920 N Street, N.W.
Washington, D.C.  20036
(202) 785-1565

Theodore R. Boehm
Christopher G. Scanlon
BAKER & DANIELS
810 Fletcher Trust Building
Indianapolis, Indiana  46204
(317) 636-4535

Attorneys for Eli Lilly and Company

Attorneys for Eli Li

Dated:  Washington, D.C.
        July 1, 1982
Date.

Forum shopping is no more an evil than any other
tactical determination a party makes in its behalf.
Any competent lawyer chooses a forum with his or
her client's interests in mind. This is undoubtedly
why Justice Jackson [in Gulf Oil Corp. v. Gilbert,
330 U.S. 501, 67 S.Ct. 839 (1947)] made clear that
a party had to do more than forum shop to justify
invoking forum non conveniens; the choice of forum
must have been made 'with some harassment' in mind
to have justified dismissal of the action.

Cheeseman v. Carey, 485 F. Supp. 203, 215 (S.D. N.Y. 1980),

remanded on other grounds, 623 F.2d 1387 (2d Cir. 1980).

Obviously, by their accusations of "forum shopping,"

defendants hope to divert the Court's attention from the

relevant considerations of convenience and justice to the

irrelevant matter of Lilly's reasons for bringing suit in

this district.[1]

These same charges were made by defendant Aetna

Casualty and Surety Company in the Owens-Illinois case.

Quite properly, the court ignored Aetna's allegations in

reaching its decision not to grant transfer. Lilly's right

to litigate in this forum is afforded by the applicable venue

statute. Wiren v. Laws, 194 F.2d at 875. Moreover, Lilly's

---

[1]    Contrary to defendants' assertions, courts
have not penalized plaintiffs for selecting forums
with favorable laws. The relevant policy consid-
erations are established by Van Dusen v. Barrack,
376 U.S. 612, 84 S. Ct. 805 (1964), the leading
case on the subject, which actually "protects the
plaintiff in his right to bring his action in the
state in which the law is most advantageous to
him, so long as defendant is subject to suit
there * * *." 1 J. Moore, Moore's Federal Practice
¶ 0.145 [4.-5] at 1608 (2d ed. 1982) (footnote
omitted). At the same time the Court in Van Dusen
recognized that § 1404(a) itself could be used as
a forum-shopping device by a defendant dissatisfied
with the law of the original forum. By holding
that the transferee court must apply the same sub-
stantive law as would the transferor court, Van Dusen
sought only to protect plaintiffs from § 1404(a)
forum-shopping defendants. The Court appropriately
did not seek to penalize plaintiffs who merely
exercise rights afforded by the venue statutes
themselves. See Wiren v. Laws, 194 F.2d at 875.

-14-

shows what common sense tells one.[10/]    The District of
Columbia is a center of international dimensions easily
accessible from all points, including Europe. The same is
not true of Indianapolis. It is positively absurd to believe
otherwise.

Defendants have not come forth with any facts to
support their position that Indianapolis would be a more
convenient forum for them. Therefore, they have failed to
carry their burden of proof. Clearly, for most defendants
(the 50 or so located in the "East" or in Europe),
Washington, D.C. provides a more convenient forum. The
twelve defendants located in Illinois, Omaha, St. Paul and
Wausau are going to have to travel by air to arrive at either
Indianapolis or Washington, D.C., and have better service to
Washington. In any event, no defendant has shown any specific
hardship encountered by litigation in the District of Columbia
which would be eased by transfer to Indiana.

In short, the "convenience" to which defendants
refer is nothing more than a desire to avoid the court of

---

[10/]    The following flight schedule should be com-
pared with the schedule presented in Defendants'
Memo., p. 12 (footnote). Such a comparison clearly
shows that there is greater ease of access to
Washington, D.C. than to Indianapolis:

| Area | Daily Flights To and From D.C. |
|---|---|
| Seattle, WA | 59 |
| San Francisco, CA | 83 |
| Los Angeles, CA | 107 |
| Omaha, NE | 45 |
| St. Paul, MI | 30 |
| Kansas City, MO | 52 |
| Wausau, WI | 19 |
| Springfield, IL | 26 |
| Chicago, IL | 54 |
| Richmond, VA | 45 |
| Philadelphia, PA | 72 |
| New York City, NY | 104 |
| Hartford, CO | 23 |
| Boston, MA | 45 |

Appendix 10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
* * * * * * * * * * * * * * * * * * * * * * * * *
LISA M. DEAN and JEFFREY R. DEAN        *
                                        *
and                                     *
                                        *
LYNN ALISON BACKNER and                 *
JAMES STEVEN BACKNER                    *
                                        *   CIVIL ACTION 1:06CV01375
                                        *
                Plaintiffs,             *   JUDGE: Emmet G. Sullivan
                                        *
        vs.                             *
                                        *
ELI LILLY AND COMPANY,                  *
                                        *
                Defendant.              *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## REPLY IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S
## MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

Plaintiffs' Opposition to Defendant Eli Lilly and Company's Motion to Transfer

("Plaintiffs' Opposition") does not dispute that this case has substantial connections to the

District of Massachusetts and no relevant connection to the District of Columbia. Specifically,

the alleged events giving rise to plaintiffs' claims, including the alleged prescription, purchase

and ingestion of DES and the majority of the diagnosis and treatment of plaintiffs Lisa Dean and

Lynn Backner's alleged injuries occurred in the District of Massachusetts. Additionally, the

overwhelming majority of all of the non-expert witnesses in this case, including plaintiffs,

plaintiffs' father, and plaintiffs' treating physicians, reside in the District of Massachusetts.

Plaintiffs' arguments regarding factors such as travel convenience for plaintiffs' experts, Lilly's

previous litigation of an insurance claim in the District of Columbia and Lilly's governmental

contacts here have no significant bearing on transfer under 28 U.S.C. § 1404(a), and have been

Plaintiffs' argument that plaintiffs' father – a Massachusetts resident, as revealed in plaintiff's responses to interrogatories and admitted by plaintiffs in their Opposition at 3 – is equally inconvenienced traveling to Massachusetts as to the District of Columbia for depositions and trial is wholly un-persuasive. Courts consider the convenience of witnesses under a section 1404 analysis "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 94 (D.D.C. 2005). The supposed fact that plaintiffs' father has a winter home in Florida does not make the District of Columbia a more convenient forum than the District of Massachusetts.[3] Though plaintiffs argue in their Opposition that, depending on the time of year, their father will be more inconvenienced by having to travel to his residence in Massachusetts than to the District of Columbia, plaintiffs never assert that their father will actually be unavailable for trial in Massachusetts.[4]

Plaintiffs' argument that two of the treating physicians in this case are not subject to this court's subpoena power similarly does not suggest that the District of Columbia – which has subpoena power over <u>no</u> fact witnesses – is a better forum for this case than the District of Massachusetts. Indeed, plaintiffs do not dispute Lilly's claim that, whereas all but two of plaintiffs' treating physicians are subject to the subpoena power of the District of Massachusetts, <u>none</u> of them are subject to this Court's subpoena power. *See* Memorandum in Support of Lilly's Motion to Transfer at 7-8.

---

[3]    In fact, it is more likely that plaintiffs' father will voluntarily appear to testify in support of his daughters' case sans a subpoena than any of plaintiffs' treating doctors, who are likely to be less willing to testify at depositions and trial than plaintiffs' own father. Accordingly, the ability of the District of Massachusetts to subpoena plaintiffs' treating doctors is a more important consideration in this case than the supposed inconvenience of plaintiffs' father, a Massachusetts resident, if he were asked to provide testimony in the District of Massachusetts.

[4]    On the contrary, plaintiffs assure Lilly and the court that they will voluntarily produce all of plaintiffs' family in this case. *See* Opposition at 4-5.

137136v1